IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CA No. 5:18-cv-219-D

LAURA PONTONES, on behalf of herself          )
and all others similarly situated,            )
                                              )
     *Plaintiff,*                               )
                                              )
     v.                                        )
                                              )
SAN JOSE RESTAURANT,                          )
INCORPORATED; SAN JOSE                        )
MANAGEMENT, INC., d/b/a SAN JOSE              )
MEXICAN RESTAURANT AND SPORTS                 )
CANTINA; SAN JOSE MEXICAN                     )
RESTAURANT #2 OF LUMBERTON, INC.;             )
SAN JOSE MEXICAN RESTAURANT OF                )
ELIZABETHTOWN, INC.; SAN JOSE                 )
MEXICAN RESTAURANT OF N.C. INC.;              )
SAN JOSE MEXICAN RESTAURANT OF                )
PEMBROKE, NC, INC.; SANJOSE                   )
MEXICAN RESTAURANT OF RALEIGH                 )
INC.; SAN JOSE MEXICAN RESTAURANT             )
OF SHALLOTTE, INC.; SAN JOSE OF               )
ROCKY MOUNT #2 INC., d/b/a SAN JOSE           )
TACOS AND TEQUILA; SAN JOSE OF                )
ZEBULON, INC.; SAN JOSE OF ROANOKE            )
RAPIDS, INC.; SAN JOSE WAKEFIELD,             )
INC., d/b/a SAN JOSE MEX AND TEQUILA          )
BAR; PLAZA AZTECA RALEIGH, INC.,              )
d/b/a SAN JOSE TACOS AND TEQUILA;             )
HECTOR FLORES; ALBERTO FLORES;                )
JOSUE FLORES; JOSE PEREZ; VICENTE             )
PEREZ; PABLO MEZA; EDGARDO                    )
FLORES; and EDGAR FLORES,                     )
                                              )
     *Defendants.*                             )

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
CONDITIONAL CERTIFICATION PURSUANT TO THE FAIR LABOR
STANDARDS ACT, AND FOR CLASS CERTIFICATION UNDER FED. R. CIV. P. 23**

**TABLE OF CONTENTS**

I.         INTRODUCTION .................................................................................... 1

II.       FACTUAL BACKGROUND .................................................................. 4

      A.     Defendants Have An Established History Of Violating State And Federal Wage And Hour Laws In A Manner Consistent With Plaintiffs' Allegations. ......................................................................................... 4

           1.     Defendants' Operations Constitute A Single Common Enterprise with A Common Business Purpose............................................... 4

           2.     Despite Several Opportunities To Correct Violative Wage Practices, Defendants Refuse To Comply With Wage And Hour Law And Continue To Dismiss USDOL's Compliance Directives............................ 4

      B.     The Named Plaintiff, Early Opt-in Plaintiff, and Putative Plaintiffs Are Similarly Situated to One Another Regardless of the Location in Which They Worked. ....................................................................................... 7

      C.     Plaintiff and Putative Plaintiffs are Similarly Situated Because As Servers, They Worked Under the Same Illegal Payment Scheme That Failed to Properly Track Hours or Pay for Any Hours Worked. ............................ 7

      D.     The Putative Class Includes at Least 100 Other Servers Who Deserve the Protections of the FLSA......................................................................... 9

III.      LEGAL ARGUMENT......................................................................... 10

      A.     Conditional and class certification and court-authorized notice are warranted............................................................................................ 10

           1.     A Lenient Standard Is Applied for Conditional Certification and Court-Facilitated Notice in FLSA Collective Actions............................... 11

           2.     Plaintiff Has Amply Met His Burden of Production and Made a Modest Factual Showing That a Group of Similarly Situated Individuals Exists.................................................................... 12

           3.     Plaintiff Sufficiently Establishes That the Class Members And She

ii

Are Similarly Situated With Respect to Their Job Duties. ......................... 12

B.     Plaintiffs and The Class Members Are Similarly Situated With Respect to Their FLSA Claims. ....................................................................................... 13

C.     Plaintiff's Case is Appropriate for Court-Facilitated Notice. ........................... 14

       1.     Plaintiff's Proposed Judicial Notice is Accurate and Informative. ............. 15

       2.     An Updated List of Putative Class Members is Necessary to Facilitate Notice. ....................................................................................... 15

       3.     Defendants Should Post the Court-Approved Notice and Consent Forms at Each Place of Employment. .......................................................... 16

       4.     Plaintiff Should be Able to Send Employees the Proposed Notice via Email and/or Text Message, in Addition to Regular Mail. .................. 17

D.     Plaintiff's NCWHA Claims Should Be Certified As A Class Action Under Fed. R. Civ. P. 23(A) And (B)(3) ..................................................................... 18

       1.     The Proposed Class is Sufficiently Numerous. ........................................... 18

       2.     The Proposed Class Satisfies the Commonality and Typicality Requirements of Fed. R. Civ. P. 23(a)(2) and (a)(3). ................................. 19

       3.     Named Plaintiff Pontones And Her Counsel Will Fairly Adequately Protect the Interests of the Class. .................................................................. 22

       4.     The Proposed Class Satisfies the Requirements of Rule 23(b)(3). ............. 23

IV.        CONCLUSION .................................................................................................. 27

# **TABLE OF AUTHORITIES**

## Cases

*Alderoty v. Maxim Healthcare Servs., Inc.*,
   2015 WL 5675527 (D. Md. Sept. 23, 2015) ........................................................... 17

*Alonso v. Uncle Jack's Steakhouse, Inc.*,
   648 F. Supp. 2d 484 (S.D.N.Y. 2009) .................................................................... 3

*Amchem Prods. v. Windsor*,
   521 U.S. at 623  (1997) ................................................................................... 23, 25

*Beasley v. Custom Commc'ns, Inc.*,
   2016 WL 5468255 (E.D.N.C. Sept. 28, 2016) ..................................................... 11

*Berber v. Hutchison Tree Serv.*,
   2018 WL 3869980 (E.D.N.C. Aug. 14, 2018) ...................................................... 10

*Bobbitt v. Broadband Interactive, Inc.*,
   2012 WL 1898636 (M.D. Fla. May 23, 2012) ...................................................... 17

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir. 1998) .................................................................... 20, 21, 22

*Brown v. Nucor Corp.*,
   576 F.3d 149 (4th Cir. 2009) ................................................................................ 20

*Bumgarner v. NCDOC*,
   276 F.R.D. 452 (E.D.N.C. 2011) .......................................................................... 20

*Butler v. DirectSAT USA, LLC*,
   876 F. Supp. 2d  560 (D. Md. 2012) ..................................................................... 17

*Byard v. Verizon W. Va., Inc.*,
   287 F.R.D. 365 (N.D. W. Va. 2012) ..................................................................... 16

*Calder v. GGC-Baltimore, LLC*,
   2013 WL 3441178 (D. Md. July 8, 2013) ............................................................ 17

*Calderon v. GEICO Gen. Ins. Co.*,
   2011 U.S. Dist. LEXIS 2815 (D. Md. Jan. 12, 2011) .......................................... 10

*Ceras-Campo v. WF P'ship*,
   2011 U.S. Dist. LEXIS 12688 (E.D.N.C. Feb. 9, 2011) ................................. 24, 25

*Cerrato v. Durham Public Schools Board of Education*,
   2017 WL 2983301 (M.D.N.C. March 17, 2017) .................................................. 12

*Clark v. Williamson*,
   2018 WL 1626305 (M.D.N.C. Mar. 30, 2018) ........................................................ 17

*Diaz v. Crosby Corp.,*
   2011 U.S. Dist. LEXIS 109616 (D. Md. Sept. 10, 2012) ............................................. 16

*Dornberger v. Metropolitan Life Ins. Co.*,
   182 F.R.D. 72 (S.D.N.Y. 1998) ............................................................................ 21

*Dorsey v. Greene Turtle Franchising Corp.*,
   2010 U.S. Dist. LEXIS 95971 (D. Md. Sept. 14, 2010) ............................................... 3

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
   177 F.R.D. 54 (D. Mass. 1997).............................................................................. 27

*East Texas Motor Freight System, Inc., v. Rodriguez*,
    431 U.S. 395 (1977) ........................................................................................... 21

*Eisen v. Carlisle & Jacquelin*,
   391 F.2d 555 (2d Cir. 1968) ................................................................................. 22

*Enriquez v. Cherry Hill Mkt Corp.*,
   2012 U.S. Dist.  LEXIS 17036 (E.D.N.Y Feb. 10, 2012) ......................................... 16

*Gaxiola v. Williams Seafood of Arapahoe, Inc.*,
   776 F. Supp. 2d 117 (E.D.N.C. 2011)........................................................... 18, 19, 24

*Gen. Tel. Co. of the Southwest v. Falcon*,
   457 U.S.  147 (U.S. 1982) ................................................................................... 19

*Guan Ming Lin v. Benihana Nat'l Corp.*,
   2011 U.S. Dist. LEXIS 58587 (S.D.N.Y. Apr. 20, 2011)........................................... 3

*Gulf Oil  Co. v. Bernard*,
   452 U.S. 89 (1981)............................................................................................. 26

*Haggart v.  United States*,
   89 Fed. Cl. 523 (Fed. Cl. 2009)............................................................................. 24

*Harper v. Lovett's Buffet, Inc.*,
   185 F.R.D. 358 (M.D. Ala. 1999) .......................................................................... 3

*Harris v . Smithfield Packing Co.*,
   2011  WL 4443024 (E.D.N.C. Sept. 23, 2011)............................................... 18, 21, 24

*Haywood v. Barnes*,
   109 F.R.D.  568  (E.D.N.C.  1986).......................................................................... 20

*Hoffman* v. *Sbarro, Inc.*,

    982 F. Supp. 249 (S.D. N.Y. 1997) ............................................................................ 12

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165, 170 (1989) ................................................................ 10, 14, 15, 17

*Horne v. Smithfield Packing Co.*,
    2011 WL 4443034 (E.D.N.C. Sept. 23, 2011) ........................................... 18, 21, 24

*Huaman v. Ojos Locos Sports Cantina LLC*,
    2014 U.S. Dist. LEXIS 114675 (N.D. Tex. Aug. 19, 2014) ................................... 3

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) .................................................................... 22

*Irvine v. Destination Wild Dunes Mgmt., Inc.*,
    132 F. Supp. 3d 707 (D.S.C. 2015) ............................................................. 18

*Jimenez-Orozco v. Baker Roofing Co.*,
    2007 U.S. Dist. LEXIS 93860 (E.D.N.C. Dec. 21, 2007) ................................ 21, 26

*Kidwell v. Transp. Com. Int'l Union*,
    946 F.2d 283 (4th Cir. 1991) .................................................................... 19

*Kirkpatrick v. Cardinal Innovations Healthcare Sols.*,
    2017 WL 3841858 (M.D.N.C. Sept. 1, 2017) .................................................. 11

*LaFleur v. Dollar Tree Stores, Inc.*,
    30 F. Supp. 3d 463 (E.D. Va. 2014) ............................................................ 13

*Long v. CPI Sec. Sys., Inc.*,
    292 F.R.D. 296 (W.D.N.C. 2013) ............................................................... 17

*Lujan v. Cabana Mgmt.*,
    2011 U.S. Dist. LEXIS 9542 (E.D.N.Y. Feb. 1, 2011) ......................................... 3

*Lynch v. United Servs. Auto. Ass'n*,
    491 F. Supp. 2d 357 (S.D.N.Y. 2007) ................................................... 11, 12, 14

*Martinez-Hernandez v. Butterball, LLC*,
    2008 U.S. Dist. LEXIS 111931 (E.D.N.C. Nov. 14, 2008) .............................. 18, 21, 24

*McLaurin et al v. Prestage Foods, Inc.*,
    271 F.R.D. 465 (E.D.N.C. 2010) ........................................................... passim

*Mitchel v. Crosby Corp.*,
    2012 WL 4005535 (D. Md. Sept. 10, 2012) ........................................... 13, 18, 24

*Mitchell v. Smithfield Packing Co.*,
    2011 WL 4442973 (E.D.N.C. Sept. 23, 2011) .................................................. 21

*Montoya v. S.C.C.P. Painting Contractors, Inc.*,
    2008 WL 554114 (D.Md. Feb.26, 2008)...................................................... 11

*Olvera-Morales v. Intern. Labor Mgmt Corp.*,
    246 F.R.D. 250 (M.D.N.C. 2007) .......................................................... 22

*Palma v. Metropcs Wireless, Inc.*,
    2014 WL 235478 (M.D. Fla. Jan 22, 2014)............................................... 17

*Pedigo v. 3003 S. Lamar, LLP*,
    666 F. Supp. 2d 693 (W.D. Tex. 2009) ...................................................... 3

*Quintanilla v. A&R Demolition, Inc.*,
    2005 U.S. Dist. LEXIS 34033 (S.D. Tex. Aug. 30, 2005) ...................................... 14

*Regan v. City of Charleston*,
    2014 WL 3530135 (D.S.C. July 16, 2014) ............................................... 11

*Rehberg v. Flowers Foods, Inc.*,
    2013 WL 1190290 (W.D.N.C. Mar. 22, 2013).................................................. 14, 16

*Rodger v. Electronic Data Systems Corp.*,
    160 F.R.D. 532 (E.D.N.C. 1995)............................................................ 19

*Romero v. Mountaire Farms, Inc.*,
    796 F. Supp. 2d 700 (E.D.N.C. 2011)............................................... passim

*Ruiz v. Monterey of Lusby, Inc.*,
    2014 U.S. Dist. LEXIS 61791 (D. Md. May 5, 2014) .......................................... 3

*Sandoval-Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*,
    2017 WL 4322404 (E.D.N.C. Sept. 28, 2017).............................................. 10

*Sheffield v. BB&T Corp.*,
    2017 WL 1831091 (E.D.N.C. May 4, 2017) .................................................... 11, 12

*Smith v. Lowe's Cos.*,
    2005 U.S. Dist. LEXIS 9763 (S.D. Ohio May 11, 2005)......................................... 14

*Velasquez-Monterrosa v. Mi Casita Restaurants*,
    2016 WL 1703351 (E.D.N.C. Apr. 27, 2016) .............................................. 2

*Visco v. Aiken County*,
    974 F. Supp. 2d 908 (D.S.C. 2013).......................................................... 14

*Wal-Mart Stores Inc., v. Dukes*,
    131 S. Ct. 2541 (2011)..................................................................... 20

*Williams v. G4S Secure Sols. (USA) Inc.*,

  2018 WL 565718 (M.D.N.C. Jan. 24, 2018) .............................................................. 11

*Williams v. XE Services LLC,*
  2011 WL 52353 (E.D.N.C. Jan. 4, 2011) ................................................................. 12

## Statutes

29 U.S.C. § 216 (b) .................................................................................................. 2, 3, 10

N.C. Gen. Stat. § 95-25.1 ......................................................................................... 2, 20

N.C. Gen. Stat. § 95-25.6 ............................................................................................ 18

## Other Authorities

Fed. R. Civ P 23 (a)(1) ............................................................................................ 18, 19

Fed. R. Civ. P. 23 (a)(3) ................................................................................................ 21

Fed. R. Civ. P. 23 ......................................................................................................... 18

Fed. R. Civ. P. 23 (a) ................................................................................................. 2, 18

Fed. R. Civ. P. 23 (a)(2) ........................................................................................... 19, 20

Fed. R. Civ. P. 23 (a)(4) ........................................................................................... 22, 23

Fed. R. Civ. P. 23 (b)(3) ................................................................................................. 2

Fed. R. Civ. P. 23(b) ..................................................................................................... 23

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 23, 25

## Treatises

Newberg, Newberg on Class Actions § 4.32 at 4-125 (3d ed. 1992) ........................... 26

## Regulations

29 C.F.R. § 516.2 ........................................................................................................... 1

## I.    **INTRODUCTION**[1]

The Fair Labor Standards Act ("FLSA") was passed in **1938** in order to achieve the rapid elimination of detrimental labor conditions. 29 U.S.C § 202.   To achieve this important public policy objective, the FLSA requires that employers pay employees at least the federal minimum wage for all hours worked and overtime pay for hours worked in excess of 40 hours per week.  29 U.S.C.  § 207(a)(1).  In addition, the FLSA mandates that employers keep and  maintain accurate records of all hours worked for each employee.  *See* 29 C.F.R. § 516.2 (emphasis added).  **Since 1997**, the policies and practices of San Jose Restaurants throughout North Carolina ("San Jose" and collectively with the above-named Defendants, "Defendants") have been scrutinized,  investigated, and litigated as failing to comply with the clear statutory requirements of the FLSA  and the North Carolina Wage and Hour Act ("NCWHA").[2]

This case, thus, presents the  unique circumstances of a group of Defendants who have settled one collective/class action, had findings levied against  them by both the U.S. Department of Labor ("USDOL") and the NC Department of Labor, and now face claims from Named Plaintiff on behalf of herself and others similarly situated, who brings forth allegations nearly identical to  those brought by previous employees and in accord with the findings of government investigators.  *See e.g.*, Dkt 1; Dkt. 1-2, at 53-55; Ex. A-1, A-2, A-3, USDOL  Investigative Reports.  In the continued pursuit of public and private relief,  Plaintiff brings this Motion for Conditional and Class Certification (the "Motion") under the FLSA and the NCWHA on behalf  of the many employees

---

[1] In support of her motion, Plaintiff submits the USDOL's Investigative Narrative Reports ("USDOL Investigative Report"), attached hereto as Ex. A; true and correct copy of the December 18, 2018 deposition of Hector Flores ("Flores Depo.") attached hereto as Ex. B; Defendants' Restaurant Menus ("Menus"), attached hereto as Ex. C; Defendants' Secretary of State Filings for all restaurants ("Secretary of State Filings"), attached hereto as Exhibit D; the declaration of Laura Pontones ("Pontones Decl."), attached hereto as Exhibit E.

[2] *See Arellano v. San Jose Restaurants*, CA No:.7:16cv00039-FL at 7 ¶ 36.

affected by Defendants' continued and persistent companywide policy, practice, and decision to forego any payment of wages for servers and requiring servers to rely solely on tips for compensation while also taking deductions from the servers' earned tips.[3] Defendants' policies continue to violate the FLSA and the NCWHA, N.C. Gen. Stat. §§ 95-25.1, *et seq*.

Plaintiff's Motion requests that the Court conditionally certify this case as an FLSA collective action under the <u>lenient</u> standards of Section 216(b), so that Plaintiff may send timely notice of this lawsuit to other similarly situated individuals.[4] Plaintiff also moves for class certification of her NCWHA class claims under Fed. R. Civ. P. 23(a) and (b)(3). Plaintiff has met the lenient burden for collective action certification applicable at this early stage of the litigation as well as the applicable standards for class certification under Rule 23. Moreover, named Plaintiff asserts that Defendants continue to engage in these illegal practices as to all servers at *all* North Carolina restaurant locations, and these assertions are supported by the Complaint, consent(s) already filed with the Court, and by Defendant Hector Flores' sworn testimony. As such, the Motion should be granted. *See Velasquez-Monterrosa v. Mi Casita Restaurants,* No. 5:14-CV-448-BO, 2016 WL 1703351, at *3 (E.D.N.C. Apr. 27, 2016) ("[P]laintiff and opt-in plaintiff's testimony is writ large by the testimony of defendant Juan Macias, who stated that while Mi Casita lacked a formal overtime policy, the salary system, policies, and practices would have been consistent across all Mi Casita locations.").[5]

---

[3] Similarly, Defendants' policies and practices also included misappropriation of tips in violation of 13 N.C.A.C. 12. 0303(c), given Defendants' policy of deducting between 3% and 5% of their gross sales in food and beverage every day, from Plaintiffs' tips to pay other individuals whom worked at Defendants' restaurants. Ex. A-3, USDOL Investigative Report, at 21.

[4] The FLSA statute of limitations runs from the date an individual opts into the case. Consequently, for former employees who are no longer being subjected to the illegal practice, every day without Notice is a day's pay they lose forever. Plaintiffs therefore request an expedited determination of this Motion.

[5] Repeatedly, courts have authorized notice to restaurant employees across the country in collective

The FLSA collective action putative/potential class members are:

    a.  All current and/or former servers of Defendants whose primary duty is/was non-exempt work, who were not paid minimum wage and/or overtime, and who are/were subjected to deductions of a fixed percentage of all credit and cash purchases made by Defendants' customers, which brought their wages below the minimum wage, at any time within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b).

The NCWHA class action putative/potential class members are:

    b.  All current and/or former employees of Defendants in North Carolina whose primary duty is/was non-exempt work, who are/were not paid for all of their hours worked, including promised regular and/or overtime wages, and who are/were subjected to unlawful deductions of a fixed percentage of all credit and cash purchases made by Defendants' customers, at any time within the two (2) year period prior to the filing of this lawsuit.

*See* Dkt. 7 Amend. Compl. ¶ 7.

---

actions seeking unpaid minimum wage and/or overtime hours worked. *See Ruiz v. Monterey of Lusby, Inc*., 2014 U.S. Dist. LEXIS 61791 (D. Md. May 5, 2014) (certifying, based on plaintiff affidavits, a class of employees which included kitchen employees improperly paid a non-fixed salary and denied overtime without minimum wage or overtime payments); *Dorsey v. Greene Turtle Franchising Corp.*, 2010 U.S. Dist. LEXIS 95971 (D. Md. Sept. 14, 2010) (granting conditional certification to restaurant employees based upon allegations in the complaint and plaintiffs' affidavits); *Lujan v. Cabana Mgmt.*, 2011 U.S. Dist. LEXIS 9542 (E.D.N.Y. Feb. 1, 2011) (conditionally certifying a collective action for employees at numerous restaurant locations based on affidavits showing a common policy of illegal compensation practices); *Harper v. Lovett's Buffet, Inc*., 185 F.R.D. 358 (M.D. Ala. 1999) (conditionally certifying a collective action for employees of a restaurant location based on employee affidavits in support of allegations that Plaintiffs were not paid for all hours worked); *Guan Ming Lin v. Benihana Nat'l Corp*., 2011 U.S. Dist. LEXIS 58587 (S.D.N.Y. Apr. 20, 2011) (granting conditional certification to restaurant employees who alleged that defendants took advantage of off-the-clock work); *Pedigo v. 3003 S. Lamar, LLP*, 666 F. Supp. 2d 693 (W.D. Tex. 2009) (conditionally certifying a collective action for restaurant employees who were denied overtime wages); *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484 (S.D.N.Y. 2009) (granting certification and notice to restaurant employees who alleged unpaid minimum wage and overtime violations); *see also Huaman v. Ojos Locos Sports Cantina LLC*, 2014 U.S. Dist. LEXIS 114675 (N.D. Tex. Aug. 19, 2014) (certifying, based on plaintiff's affidavits, a class of servers who were not paid minimum wage or were not paid overtime at a rate of one and one-half times their regular hourly rate).

## II.    <u>FACTUAL BACKGROUND</u>

### A. Defendants Have An Established History Of Violating State And Federal Wage And Hour Laws In A Manner Consistent With Plaintiffs' Allegations.

#### 1. <u>Defendants' Operations Constitute A Single Common Enterprise with A Common Business Purpose.</u>

All Defendant San Jose Restaurants are part of a larger family business that operate under the same or similar name, offer the same or similar menu and specialty food options based on family recipes, maintain the same or similar décor, and share the same basic grouping of officers and owners. *See* Ex. B, Flores Depo., at 14:7-49:22 (explaining the ownership percentages for family members of all restaurants); *id.* at 86:9-23; Ex. C, Menus; Ex. D, Secretary of State Filings. In **2011** the Department of Labor ("DOL") initiated an investigation into Defendants' Shallotte, NC restaurant operation (the "DOL investigation"), followed by a series of subsequent investigations through March 21, 2014 of *all* Defendants' operations.[6] As a result of this latter investigation into Defendants' ten restaurant locations, the DOL determined that, given the common control and common business purpose, all restaurants constitute a *single* enterprise. Ex. A-3, USDOL Investigative Report, at 46 (specifically identifying restaurants found to be part of the common enterprise). Defendants' counsel did not object to these findings. *Id.* at 50-51 (summarizing Narrative Findings from the Department of Labor provided to Defendants Hector Flores, Edgar Flores, Josue Flores and their counsel regarding a "common, single enterprise" finding).[7]

#### 2. <u>Despite Several Opportunities To Correct Violative Wage Practices, Defendants Refuse To Comply With Wage And Hour Law And Continue To Dismiss USDOL's Compliance Directives.</u>

---

[6] Pursuant to the Freedom of Information Act ("FOIA"), Plaintiff was able to obtain reports on DOL's investigations of Defendants' restaurants. *See* Ex. H (DOL Cover Letter regarding Plaintiff's FOIA request).

[7] DOL held its final conference (to discuss the Agency's findings with Defendants) on July 10, 2015 and within the relevant time period of this action.

As a result of the most recent investigation, the Department of Labor found that Defendants owed over $500,000.00 in back wages to over 100 employees. *Id*. at 169. Furthermore, the DOL found that Defendants had maintained falsified payroll records. *Id* at 19. In fact, even in this action, there is a strong suspicion that these documents are also falsified, given that many of the payroll records repeatedly result in zero wages. *See* Dkt. 50-9 (wages typically equal tax deductions). While the payroll records appeared to show that employees were paid minimum and overtime wages, including that tipped employees were paid $2.13 per hour and that tips earned were properly recorded, the records were falsified as *both* employees and even Defendants Hector Flores and Edgar Flores confirmed that of all 10 locations, only *one* of their location was in compliance. *See id.* (Edgar and Hector Flores admitting that other than the Shallotte, NC location, all others were not in compliance).

On or about July 10, 2015 (and within the relevant time period in *this* matter), Defendants signed an Agreement with the USDOL, agreeing to pay over $500,000 in back wages and comply prospectively with labor requirements. *Id*. at 24. Defendants **promised** that moving forward they would do the following:

1. Strictly control the hours by use of a time clock for all their employees;
2. Strictly control and report all servers' tips;
3. There would be a traditional cash wage payment of at least $2.13 per hour to all tipped employees (in lieu of not paying them anything and having them work exclusively for tips only);
4. Tipped employees would receive a check stub in all instances even if that check stub showed a net zero amount because of taxes paid;
5. Overtime compensation would be paid to tipped employees at the rate of one and one-half the minimum wage for all hours worked; and
6. There would no longer be any salaried kitchen employees. All kitchen employees would be paid by the hour and be paid applicable overtime for hours over 40 per week.

*See id.*

Nevertheless, despite these promises to the USDOL and Defendants subsequently making payments towards owed back wages, Defendants continued to abandon their legal obligations as employers. Defendants' utter disregard for both state and federal wage and hour laws is clearly evident through (1) subsequent complaints raised with the NCDOL in 2017;[8] (2) 2016 litigation in *Arellano v. San Jose Restaurants* CA No:; 7:16cv00039-FL; and (3) *this* 2018 action where the named Plaintiff worked at *two* of Defendants' separate locations as a server, asserting that Defendants still fail to pay servers *any* wages whatsoever, fail to record employees' hours worked, and charge servers a 3% to 5% percent for total daily food and beverage sales.

After settling these previous investigations and the *Arellano* litigation, the record corroborates Defendants' continued failure to pay minimum and overtime wages to servers at all locations.[9] During the course of Defendant Hector Flores' deposition and despite his presence at the DOL final conference, he refused to testify about Defendants' current pay practices at all locations.[10] Significantly, Defendant Hector Flores acknowledges that the same violations continue to result in investigations and lawsuits. Ex. B, Flores Depo. at 142:1-143:3. Moreover, his repeated, "I don't know anything, and I leave everything to the managers, including how to pay employees," suggests that he understands the seriousness of Defendants' continued

---

[8] *See* Dkt. 1-2 at 70-72 (NCDOL investigative findings for San Jose's Wilson, NC restaurant initiated by Bianca Avalos – for Defendants' failure to pay her minimum wage as a server and NCDOL's findings also revealed that Defendants still did not maintain accurate records of hours worked, tips paid, etc.).

[9] *See* Ex. B, Flores Depo. at 6:3-7:11 (admitting a previous USDOL investigation resulted in a settlement); *id*. at 45:9-20 (admitting none of the owners of Defendants' restaurants have educated themselves on complying with federal and state wage and hour laws, which is completely false given that DOL thoroughly educated Defendants at a July 10, 2015 conference (less than three years from the filing of this action) where Defendants Hector and Edgar Flores, their Counsel, and several DOL officials were present, including a DOL attorney). *See* Ex. A-3, at 20-25.

[10] *See* Ex. B, Flores Depo. at 143:7-144:18 (admitting he cannot be bothered with the technicalities of paying all of the employees).

violations and egregious behavior, and for this reason deflects responsibility to management of the restaurants. *Id.* at 101:21-103:22; *id.* at 133:7-135:1. There is no question that such a response is disingenuous given the multiple DOL and the NCDOL investigations and previous litigation. Bottom line, his failure to unequivocally respond one way or the other regarding pay practices supports Plaintiff Pontones's allegations that Defendants' illegal pay practices are still in effect. *Id.* at 153:21-154:16 (*recognizing the owners have no knowledge that corrective changes were made following the USDOL investigation*).

## B. The Named Plaintiff, Early Opt-in Plaintiff, and Putative Plaintiffs Are Similarly Situated to One Another Regardless of the Location in Which They Worked.

The tipped employees employed by Defendants do the same duties and work under the same policies and practices regardless of the location served. Defendants readily admit this fact. Named Plaintiff, Early Opt-in Plaintiffs, and the putative Plaintiffs do the same thing regardless of restaurant location. Ex. E, Pontones Decl. at ¶ 1. Explicitly, though, the Named Plaintiff worked in two different locations as a server, (during her employment), she performed the same duties and never received an hourly wage. Ex. E, Pontones Decl. at ¶ 1, 5. Through her conversations with other servers at multiple locations, Name Plaintiff knows all servers, regardless of location, work primarily for tips and are required to pay Defendants 3% to 5% of gross sales. *Id.* at ¶ 6, 9.

## C. Plaintiff and Putative Plaintiffs are Similarly Situated Because As Servers, They Worked Under the Same Illegal Payment Scheme That Failed to Properly Track Hours or Pay for Any Hours Worked.

Plaintiffs explain that they were not required to or were not permitted to record their actual hours of work in the timekeeping system Defendants set up to feign compliance with the FLSA. *Id.* at ¶ 3. Plaintiffs' allegations are not one-sided but are corroborated by Defendant Hector Flores who admitted to the DOL that other than their location in Shallotte, NC, all other

locations were *not* in compliance.  Ex. A-3, USDOL Investigative Report, at 19.  Plaintiffs are not permitted to accurately track their hours, as their actual hours are either not recorded at all or they are required to sign blank timesheets so that Defendants can complete (i.e. falsify) documents on their behalf.  *See e.g.*, Exhibit E, Pontones Decl., ¶ 3-4 (explaining that while working at Defendants' two locations – Poyner Village or Raleigh - Brier Creek); *id.* (Pontones was never required to use the timekeeping system).

Following the DOL investigations, Defendants ostensibly promised to accurately record and properly pay for all hours worked.[11]  In practice, however, not only did this *not* happen, but Defendant Hector Flores' testimony revealed complete and utter apathy or simple denial that he had any knowledge of the continued violations by stating that he had no knowledge of anything going on at his restaurants, as he preferred to spend time with his animals.[12]  Ultimately, Defendants' apparent effort to track time and pay for hours worked appears to have been designed to fake compliance with the DOL's 2011 orders and to ensure Plaintiffs worked under the same illegal scheme as before.  *See* Ex. E, Pontones's Decl at ¶ 5 ("During my time at both San Jose – Poyner Village and San Jose – Brier Creek, I received no wages for any of my hours worked.  My only income came from customers' tips.")

Plaintiff Pontones worked as a server and, in this position, was supposed to record her actual hours of work and be paid a minimum of $2.13 per hour.  *See* Ex. A-3, at 23 (the DOL's narrative regarding Defendants' future compliance at p. 13).  However, according to Plaintiff Pontones, Defendants did not fulfill their promises to ensure compliance with all wage and hour

---

[11] *See* Ex. A-3, USDOL Investigative Report, at 24.
[12] *See* Ex. B, Flores Depo at 144:12-145:8. ("I go to the business maybe, like, once a month. And, like I say, I do more stuff on my house because I got all the—these—these animals and farm. And I don't—I don't go to the restaurants to work on it because I'm not a restaurant person.")

laws. *See e.g.*, Ex. E, Pontones Decl. ¶ 3-7; *see also* Dkt. 1-2, at 70 (showing unpaid wages as a server in Defendants' *Wilson* location were to be paid at $7.25 an hour).

Defendants cannot dispute Plaintiffs worked in excess of 40 hours a week. *Compare* Ex. E, Pontones Decl., at ¶ 2, 8 (stating she regularly worked more than 40 hours a week and other servers at other locations were required to the same scheduling requirements); Ex. A-3, USDOL Investigative Report, at 19 (determining Defendants' payroll records were falsified and inaccurate); *with* Ex. B, Flores Depo., at (establishing Defendants' produced time records for plaintiff with conflicting reports of hours worked). Plaintiff typically worked five days a week at both locations, often working at least a 10-hour shift each day. *Id.* All servers worked similar schedules and relied solely on tips for income. *See id.* at ¶ 8-9. Nevertheless, like the other putative plaintiffs working for Defendants, after the watchful eyes of the DOL looked away, Defendants made servers work for tips. *Id.* (all servers received only tips and no overtime). From personally seeing and communicating with potential class members, Plaintiff Pontones knows that these putative class members worked similar overtime hours without receipt of any pay or a salary for all hours worked. *Id.* It is through these observations and conversations that Plaintiff Pontones knows that they have the same primary interests in bringing this suit: to recover their unpaid wages, including the time and one-half premium for hours over 40 in a week. *Id.* at ¶ 10.

In short, Defendants' policy to continue violating wage and hour laws resulted in Plaintiff and putative plaintiffs being paid no wages when they worked as servers or a salary which excludes overtime pay, and not according to their actual hours

of work.

### D. The Putative Class Includes at Least 100 Other Servers Who Deserve the Protections of the FLSA.

Defendants operate a chain of 10 Mexican food restaurants concentrated around the greater Lumberton, Raleigh, and Fayetteville, North Carolina areas. Defendants employ approximately 200 employees at a time and the putative class likely exceeds one-hundred (100) workers.[13]

## III.  LEGAL ARGUMENT

### A. Conditional and class certification and court-authorized notice are warranted.

Named Plaintiff seeks conditional certification and a Court-facilitated notice in this collective action for unpaid minimum wage and overtime under the FLSA, 29 U.S.C. § 216(b). This collective action procedure allows for efficient adjudication of similar claims, so "similarly situated" employees, whose claims are often small and not likely to be brought on an individual basis, may join together and pool their resources to prosecute their claims. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Three important features define an FLSA "collective action" under section 216(b). First, to participate in a collective action, an employee must "opt-in", and a written consent to join the suit must be filed with the court. *Id.* at 168; *see Sandoval-Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.,* No. 5:13-CV-810, 2017 WL 4322404, at *4 (E.D.N.C. Sept. 28, 2017); *Berber v. Hutchison Tree Serv.*, No. 5:15-CV-143-D, 2018 WL 3869980, at *2 (E.D.N.C. Aug. 14, 2018), *appeal dismissed sub nom. Berber v. Hutchinson Tree Serv.,* No. 18-2061, 2018 WL 7575706 (4th Cir. Oct. 5, 2018).

Second, the statute of limitations continues to run on each employee's claim until his/her individual opt-in form is filed with the court. *Calderon v. GEICO Gen. Ins. Co.,* 2011 WL 98197, 2011 U.S. Dist. LEXIS 2815, at * 21 (D. Md. Jan. 12, 2011); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 2007 U.S. Dist. LEXIS 32642, at *358, 15 Wage & Hour Cas. 2d (BNA)

---

[13] *See* Ex. A-3, USDOL Investigative Report, at 169 (stating approximately 122 employees alone were due back wages).

1096 (S.D.N.Y. 2007). Third, to serve the "broad remedial purpose" of the FLSA, courts can order notice to other potential similarly situated employees to inform them of this opportunity to "opt-in" to the case. *See McLaurin et al v. Prestage Foods, Inc.,* 271 F.R.D. 465 (E.D.N.C. 2010) ("the court typically authorizes plaintiff's counsel to provide putative class members with notice of lawsuit and right to opt-in"); *Montoya v. S.C.C.P. Painting Contractors, Inc.,* No. CCB–07–455, 2008 WL 554114, at *5 (D.Md. Feb.26, 2008) (same); *see also Regan v. City of Charleston,* 2014 WL 3530135, 2014 U.S. Dist. LEXIS 96317, at *10, (D.S.C. July 16, 2014) (same).

1. <u>A Lenient Standard Is Applied for Conditional Certification and Court-Facilitated Notice in FLSA Collective Actions.</u>

The Fourth Circuit uses a two-stage procedure for certification of collective actions. *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 2017 WL 3841858, at *4 (M.D.N.C. Sept. 1, 2017). At the first stage, the court "determines whether the employees' claims are similar enough to merit the distribution of court-approved notice to possible class members." *Id.; see also Sheffield v. BB&T Corp.*, 2017 WL 1831091, at *1–2 (E.D.N.C. May 4, 2017). Necessarily, the merits of the case are not evaluated at the conditional certification stage, nor does the court make determinations regarding the credibility of particular affiants. *Beasley v. Custom Commc'ns, Inc.*, 2016 WL 5468255, at *5 (E.D.N.C. Sept. 28, 2016); *Williams v. G4S Secure Sols. (USA) Inc.*, 2018 WL 565718, at *2 (M.D.N.C. Jan. 24, 2018) (internal quotations omitted). If the court finds the plaintiff and potential class members are "similarly situated," then the class is conditionally certified and notice of the action is sent to potential class members. *McLaurin*, 271 F.R.D. at 469. The second stage, referred to as the "decertification phase," is triggered by an employer's motion for decertification, usually after discovery has been concluded and when the matter is ready for trial. *Sheffield*, 2017 WL 1831091 at *2. At the decertification stage, the court examines the evidence

11

produced during discovery and revisits its factual determination as to whether the claimants are similarly situated. *Id.* If the claimants are similarly situated, the district court allows the representative action to proceed to trial. *Id.* In light of this two-tiered framework, courts have emphasized the "similarly situated" requirement is modest. *Sheffield*, 2017 WL 1831091 at *1 ("[A]t this initial stage, a lenient standard applies"). The court's analysis at this first stage, therefore, "typically results in 'conditional certification' of a representative class." *Cerrato v. Durham Public Schools Board of Education*, 2017 WL 2983301 at *5 (M.D.N.C. March 17, 2017).

2. Plaintiff Has Amply Met His Burden of Production and Made a Modest Factual Showing That a Group of Similarly Situated Individuals Exists.

To meet this burden, Plaintiffs must demonstrate the existence of a "factual nexus between the [named plaintiff's] situation and that of the other current and former [employees]." *Hoffman* v. *Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D. N.Y. 1997). This burden is accordingly "limited," "minimal," "lenient," and "not a stringent one." *Lynch*, 491 F. Supp. 2d at 368. Here, in addition to the detailed allegations in the Original Complaint, Plaintiff's motion is supported by declaration(s), Defendant Flores' deposition testimony, and a sample of documents produced by Defendants that are demonstrably falsified given Plaintiff's declaration and a history of falsifying the same. Ex. A-3, USDOL Investigative Report, at 20; Ex. B, Flores Depo., at 145:6-151:6; Ex. E, Pontones Decl., at ¶ 4. North Carolina district courts have authorized notice to putative class members based on much less. *See, e.g., Williams v. XE Services LLC,* 2011 WL 52353, at *10-11 (E.D.N.C. Jan. 4, 2011) (granting certification on basis of two of named plaintiffs' affidavits).

3. Plaintiff Sufficiently Establishes That the Class Members And She Are Similarly Situated With Respect to Their Job Duties.

Conditional certification under the FLSA is appropriate under the facts of this case because the evidence far exceeds that which is necessary to meet the low "similarly situated" standard, as all of the putative class members were not compensated any wages for hours worked, whether minimum

wage or overtime. Plaintiffs meet their standard through the evidence presented in support of this Motion, most obviously through the deposition testimony of Defendant Hector Flores, who while personally involved in the DOL investigations, suggested during his deposition that he simply had no involvement and acknowledged the violations persisted despite DOL investigations into how employees were paid. *See* II.A, *supra.* Plaintiffs have therefore established a factual nexus between themselves and the putative class members regarding the duties they performed.

### B. Plaintiffs and The Class Members Are Similarly Situated With Respect to Their FLSA Claims.

This lawsuit challenges a companywide practice that has previously been found to violate the FLSA: Defendants paid Plaintiff and putative Plaintiffs nothing for any hours worked, whether regular or overtime. Moreover, despite Defendants' production of payroll records, Plaintiff's declarations confirm that they were not paid at all for any hours worked. In other words, Defendants failed to keep proper records and any records Defendants have produced were falsified. *See* Ex. A-3, USDOL Investigative Report; *see also* II.A, *supra.* This is the very type of claim that Fourth Circuit courts have already recognized is appropriate for conditional certification. *See e.g.*, *Mitchel v. Crosby Corp.,* 2012 WL 4005535, at *14 (D. Md. Sept. 10, 2012) (granting conditional certification where plaintiffs affirmed in their declarations that defendants maintained a common policy not to pay overtime hours and instructed Plaintiffs not to record all of their work on timesheets); *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 472 (E.D. Va. 2014) *motion to certify appeal denied*, No. 2:12-CV-00363, 2014 WL 2121721 (E.D. Va. May 20, 2014) *and reconsideration denied*, No. 2:12-CV-00363, 2014 WL 2121563 (E.D. Va. May 20, 2014) (conditional certification appropriate based on allegations that plaintiffs could not review or adjust actual hours worked in company's timekeeping system).

## C. Plaintiff's Case is Appropriate for Court-Facilitated Notice.

The U.S. Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving *accurate* and *timely* notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170. District courts are thereby encouraged to become involved in the notice process early, to insure "*timely*, *accurate*, and *informative*" notice and to help maintain control of the litigation. *Id*. at 171-72; *Rehberg v. Flowers Foods, Inc.*, 2013 WL 1190290, 2013 U.S. Dist. LEXIS 40337 at *5-6 (W.D.N.C. Mar. 22, 2013); *Calderon*, 2011 WL 98197 at *20. This case is appropriate for a Court-approved notice for three over-arching reasons. First, prompt Court-action is needed because claims of the potential opt-in plaintiffs are being extinguished or diminished due to the running of the statute of limitations on their claims. *Id.* at 21; *Visco v. Aiken County,* 974 F. Supp. 2d 908 (D.S.C. 2013). Courts have recognized that, unlike Rule 23 class actions, the statute of limitations for those who have not filed consent forms is not tolled with the commencement of this action. *See Lynch,* 2007 U.S. Dist. LEXIS 32642, at *371.[14]

Second, at this early stage, judicial notice provides all putative class members with an opportunity to pursue their claims in one forum, creating the significant judicial economies recognized in *Hoffmann-La Roche*. *See Lynch,* 2007 U.S. Dist. LEXIS 32642, at *371. Indeed, because similar—if not identical—issues of law and fact exist amongst all of the putative class members, one action benefits the judicial system by resolving this case collectively at least through the discovery phase. *Hoffmann-La Roche*, 493 at 170. Namely, with her motion,

---

[14] *See also Smith v. Lowe's Cos.*, 2005 U.S. Dist. LEXIS 9763, at *6, 2005 WL 6742234 (S.D. Ohio May 11, 2005); *see also Quintanilla v. A&R Demolition, Inc.*, 2005 U.S. Dist. LEXIS 34033, at *50, 2005 WL 2095104 (S.D. Tex. Aug. 30, 2005).

named Plaintiff seeks to conditionally certify the FLSA collective action and to certify the North Carolina state law claims. *See McLaurin*, 271 F.R.D. at 469 ("where both the class and collective actions have been certified, notice covering up to three years preceding the filing of the action is appropriate."). Third, this case is the product of an extensive history of violations. As set out in II.A-D, *supra*, the history and early facts of this case strongly suggest that Defendants' violations are willful. Because Defendants have been previously undeterred through the forced payment of back wages to a handful of prior plaintiffs, the Court must use its discretion to enforce long-standing federal law against a repeat offender.

1.  Plaintiff's Proposed Judicial Notice is Accurate and Informative.

Attached to the instant filing, is Plaintiff's proposed judicial notice and reminder notice, Exhibit F, and Plaintiff's proposed opt-in form and opt-out form, Exhibit G. The proposed notice describes the lawsuit, informs all individuals who have worked as servers at any of Defendants' restaurant locations, of their opportunity to "opt-in," and notifies them of the effect of their decision to "opt-in." *See* Ex. F. The proposed notice therefore achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action and should be adopted.

2.  An Updated List of Putative Class Members is Necessary to Facilitate Notice.

As discussed above, all putative class members whom Defendants employed since May 17, 2015 are "similarly situated" employees for FLSA purposes. Disclosure of their identity to Plaintiffs' counsel is accordingly necessary to provide these potential plaintiffs with notice of the action. *See Hoffmann-La Roche*, 493 U.S. at 170; *see also Calderon v. GEICO Gen. Ins. Co.*, 2011 WL 98197 at *27 (ordering production of list in electronic and importable format within fourteen days). Plaintiffs therefore request that Defendants be ordered to produce the following

within fourteen (14) days of the Court's Order: a list, in electronic, importable and native format (i.e., an Excel Spreadsheet is produced in its native Excel format), of all non-management servers whom Defendants employed since May 17, 2015 including their full name (last, middle, and first name, if available), job title, address, telephone number, email address, dates of employment, location of employment, and date of birth. Courts in the Fourth Circuit have established that Plaintiffs must "establish [] a need" for this type of information before it may be turned over[]…the return of the notice may establish such a need." *See Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365, 2012 U.S. Dist. LEXIS 152814, at *376 (N.D. W. Va. 2012). It is not uncommon in this Circuit for Courts to grant this information to Plaintiffs. *See Rehberg,* 2013 WL 1190290, at *7 (requiring production of names, last known addresses, telephone number, email addresses, dates of employment, job title, and last 4 digits of their Social Security number of potential opt-in plaintiffs).

3. <u>Defendants Should Post the Court-Approved Notice and Consent Forms at Each Place of Employment.</u>

In addition to mailing the notice, Plaintiffs seek to require Defendants to post the notice in both English and Spanish at each of their restaurants where the putative class members work or have worked during the relevant period. As North Carolina and other district courts have recognized, posting the notice in both languages is a reasonable and measured means to assuage the vagaries of notice by mail. *Diaz v. Crosby Corp.,* 2011 U.S. Dist. LEXIS 109616, at *8, 2011 WL 4498939 (D. Md. Sept. 10, 2012) (granting posting of notice, <u>in both English and Spanish</u>, at the class members' place of employment); *Rehberg,* 2013 WL 1190290, at *7 (ordering defendants to post notice to prospective class members at each of its warehouses); *Enriquez v. Cherry Hill Mkt Corp.*, No. 10-CV-5616 (FB), 2012 U.S. Dist. LEXIS 17036, at * 11, 2012 WL 440691 (E.D.N.Y Feb. 10, 2012) (granting posting of notice at employer's workplace.)

4. <u>Plaintiff Should be Able to Send Employees the Proposed Notice via Email and/or Text Message, in Addition to Regular Mail.</u>

Finally, Plaintiff proposes the notices and opt-in consent forms be sent via First Class Mail, e-mail, and text message to all current and former employees who have worked for Defendants at any of the North Carolina restaurant locations within the past three years, and the potential opt-in plaintiffs who desire to participate in this lawsuit be provided ninety days from the date of mailing in which to file their consent forms. This time period is consistent with established practice under the FLSA. *See, e.g., Hoffmann-LaRoche*, 493 U.S. at 169; *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012) ("Notice periods may vary, but numerous courts around the country have authorized ninety-day opt-in periods for collective actions.")[15]

Courts have routinely authorized the issuance of notice by e-mail. *See, e.g., id.* at 575 ("with regard to the use of email to notify potential plaintiffs of this litigation, communication through email is now the norm"); *Clark v. Williamson*, 2018 WL 1626305, at *5 (M.D.N.C. Mar. 30, 2018) ("courts have routinely approved requests for home addresses and email addresses"); *Palma v. Metropcs Wireless, Inc.*, 2014 WL 235478, at *2 (M.D. Fla. Jan 22, 2014) (same); *Calder v. GGC-Baltimore, LLC*, 2013 WL 3441178, at *4 (D. Md. July 8, 2013) (same); *Alderoty v. Maxim Healthcare Servs., Inc.*, 2015 WL 5675527, at *14 (D. Md. Sept. 23, 2015) (same). A number of courts in recent years have also recognized notice by text message is an appropriate and

---

[15] Additionally, the three-year notice period is appropriate at this stage, since Plaintiff has alleged Defendant has willfully violated the FLSA. *See* Compl. ¶ 78; *Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 305 (W.D.N.C. 2013) (certifying a class of employees over a three-year period based on plaintiffs' allegation of a willful FLSA violation); *Bobbitt v. Broadband Interactive, Inc.*, 2012 WL 1898636, at *7 (M.D. Fla. May 23, 2012) ("[p]laintiffs have alleged in their amended complaint that BBI willfully violated the FLSA. At this early stage of the proceedings, the [c]ourt concludes that [p]laintiffs' allegation is sufficient to support their request for a three-year period in the [c]ourt-authorized notice.").

effective way of informing employees of their right to opt in to a case under the FLSA and have approved such notice. *See, e.g., Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015).  This has become a much more mobile society, with one's email address and cell phone number serving as the most consistent and reliable method of communication. ..").

### D. Plaintiff's NCWHA Claims Should Be Certified As A Class Action Under Fed. R. Civ. P. 23(A) And (B)(3)

Plaintiffs also seek class certification of their NCWHA claims given Defendants' failure to pay employees for all of their accrued and earned regular and overtime wages on their regular pay date violates N.C. Gen. Stat. §95-25.6. Rule 23 provides that this Court should certify a class where the plaintiffs satisfy the four elements of Rule 23(a) and one of the three requirements of Rule 23(b).  *See Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117, 2011 U.S. Dist. LEXIS 20473, *129-130, 17 Wage & Hour Cas. 2d (BNA) 1000 (E.D.N.C. 2011).  To obtain class certification under Rule 23, Plaintiffs must demonstrate that the requisite elements of subsection 23(a) are each satisfied: numerosity, commonality, typicality, and adequacy  of representation. *Id.*; *see also McLaurin*, 2010 U.S. Dist. LEXIS 119792, at *475; *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 713 (E.D.N.C. 2011); *Mitchel*, 2012 WL 4005535, at *6; *Horne v. Smithfield Packing Co.*, 2011 WL 4443034, at *6-7 (E.D.N.C. Sept. 23, 2011); *Harris v . Smithfield Packing Co.*, 2011  WL 4443024, at  *7 (E.D.N.C. Sept. 23, 2011);  and *Martinez-Hernandez v. Butterball, LLC*, 2008 U.S. Dist. LEXIS 111931, at *7-8 (E.D.N.C. Nov. 14, 2008).  Plaintiffs satisfy each element and as such, pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Named and putative plaintiffs.

### 1. The Proposed Class is Sufficiently Numerous

The numerosity requirement of Rule 23(a)(1) mandates that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23. No specific number of members is

necessary for class certification, and the decision must be based upon the particular facts of each case. *See Gaxiola*, 2011 U.S. Dist. LEXIS 20473, at *130, (citing *Rodger v. Electronic Data Systems Corp.*, 160 F.R.D. 532 (E.D.N.C. 1995)). While there is no numerical requirement for satisfying the numerosity requirement, courts have acknowledged that as few as forty (40) class members generally satisfies the numerosity requirement. *See McLaurin*, 2010 U.S. Dist. LEXIS 119792, at *17 ("given that the Fourth Circuit has held that a class of eighteen (18) people alone is sufficient to satisfy the numerosity requirement, the court rejects [defendant's] arguments and concludes that the numerosity requirement has been met.").

Here, there would be at least one hundred (100) class members.[16] As such, the numerosity requirement of Rule 23(a)(1) is easily satisfied.

  2. The Proposed Class Satisfies the Commonality and Typicality Requirements of Fed. R. Civ. P. 23(a)(2) and (a)(3).

Rule 23(a)(2) requires a determination that there are "questions of law or fact, common to the class" to unite the potential plaintiffs in the case. The analysis of commonality, typicality, and adequacy of representation requires a discussion of often overlapping facts, as the commonality and typicality requirements tend to merge. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (U.S. 1982). "Both serve as guideposts for determining whether … the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected." *See Kidwell v. Transp. Com. Int'l Union*, 946 F.2d 283, 305 (4th Cir. 1991) (quoting *id.*) Moreover, "the threshold requirements of commonality and typicality are not high. Rule 23(a) requires only that resolution of the common questions affect all or a substantial number of the class members." *See McLaurin*, 2010 U.S. Dist. LEXIS 119792,

---

[16] *See* Ex. A-3, USDOL Investigative Report (showing at least 122 employees were owed unpaid wages).

at *17 (citing *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009)). The commonality and typicality requirements may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998) ("we… do not suggest that the commonality and typicality elements of Rule 23 require that members of the class have identical factual and legal claims in all respects.").

As such, factual differences among individual claims will not defeat commonality provided the claims arise from a common nucleus of operative facts. *See Haywood v. Barnes*, 109 F.R.D. 568, 577 (E.D.N.C. 1986) (holding a common question is one which arises from a common nucleus of operative facts, regardless of whether underlying facts fluctuate and vary as to individual claimants); *see also Bumgarner v. NCDOC*, 276 F.R.D. 452, 2011 U.S. Dist. LEXIS 106926, at *457 (E.D.N.C. 2011). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores Inc., v. Dukes*, 131 S. Ct. 2541, 2551 (2011); Fed. R. Civ. P. 23(a)(2). Stated another way, there must be some "glue" that holds the claims together. *Wal-Mart Stores Inc.*, 131 S. Ct. at 2554. In determining whether this element is met in NCWHA wage claims, courts in this district tend to focus on whether the employer had company-wide wage policies that injured the proposed class. *See McLaurin*, 271 F.R.D. at 475.

The questions of law and fact in this case are common to the class and predominate over any questions affecting only individual class members—namely, whether Defendants have violated the NCWHA, N.C. Gen. Stat. § 95-25.1, *et seq*, upon which Plaintiffs' state law claims are premised, by not paying Plaintiffs all of their earned wages on their regular pay day, including, but not limited to, their accrued straight and overtime wages, in addition to, the illegal

wage deductions given the 3% charges pursuant to N.C. Gen. Stat. §§ 95-25.(6) and (8). The allegations contained in Plaintiff's Original Complaint and the supporting evidence before the Court establish that the principal questions of law and fact at issue in Plaintiff's wage claims against Defendants and the claims of other putative class members arise from a common nucleus of operative fact.[17]

The typicality requirement of Rule 23(a)(3) is met [when] the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members, notwithstanding factual distinctions between the claims of the named and unnamed putative class members and differences in the amount of damages claimed. *See Jimenez-Orozco v. Baker Roofing Co.*, 2007 U.S. Dist. LEXIS 93860, *at 11 (E.D.N.C. Dec. 21, 2007). The Supreme Court has held that the typicality requirement mandates that the class and the representatives "possess the same interests and suffer the same injury." *East Texas Motor Freight System, Inc., v. Rodriguez*, 431 U.S. 395, 403 (1977). Although there may be factual differences among the individual class members, the class members' claims arise from the same course of conduct. *Romero*, 796 F. Supp. 2d at 714 (citing *Broussard*, 155 F.3d 331, 341 (4th Cir. 1998)) ("We do not suggest that the commonality and typicality elements of R.23 require that members of the class have identical factual and legal claims in all respects.").[18] Plaintiffs satisfy the typicality requirement if their "allegations are not based on conduct unique" to them. *Dornberger v. Metropolitan Life Ins. Co.*, 182 F.R.D. 72, 81 (S.D.N.Y. 1998).

---

[17]Dkt. 1 at ¶ 44-63; Ex. D, Flores Depo. at 142:1-143:6; Ex. A-3, USDOL Investigative Report, at 18-23; Ex. E, Pontonez Decl. ¶ 8-10.
[18] *Mitchell v. Smithfield Packing Co.*, 2011 WL 4442973, at *5 (E.D.N.C. Sept. 23, 2011); *Horne*, 2011 WL 4443034, at *5, *Harris*, 2011 WL 4443024, at *5-6, and *Martinez-Hernandez*, 2008 U.S. Dist. LEXIS 111931, at *4.

Here, a comparison just of Plaintiff's asserted claims with opt-in and/or putative Plaintiffs, Defendants' sworn testimony, as well as USDOL and NCDOL findings show the typicality requirement is easily met. Ex. E, Pontones Decl. ¶ 8-10; Ex. D, Flores Depo. at 142:1-143:6; Ex. A-3, USDOL Investigative Report, at 18-23. Beyond Plaintiff, Early Opt-in Plaintiff, and/or the putative class members were also subject to Defendants' same unlawful policies that failed to pay them for hours actually worked and failed to pay proper regular, straight, and/or overtime wages on their regular pay date, in addition to the illegal deductions from their tips without proper authorization, violating the NCWHA.

3. Named Plaintiff Pontones And Her Counsel Will Fairly Adequately Protect the Interests of the Class.

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet this requirement, Plaintiffs must demonstrate that the named class representatives (1) "will vigorously prosecute the interests of the class through qualified counsel" and (2) that they have "common interests with unnamed members of the class." *Olvera-Morales v. Intern. Labor Mgmt Corp.*, 246 F.R.D. 250, 258 (M.D.N.C. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)). The importance of the adequacy requirement is based on the principle of due process which "requires that named plaintiffs possess undivided loyalties to absent class members." *Broussard,* 155 F.3d 331, 1998 U.S. App. LEXIS 20248, 41 Fed. R. Serv. 3d (Callaghan) 1151 (4th Cir. N.C.1998).

First, the class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *See Romero*, 796 F. Supp. 2d at 715 (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)). Plaintiff's counsel is qualified to be appointed as class counsel. The Law Offices of Gilda A. Hernandez, PLLC has extensive present and past experience litigating complex wage and hour class and collective actions and is therefore competent and

capable of conducting this litigation, as it is presently handling a number of wage and hour class actions in the State of North Carolina and elsewhere, further increasing expertise.

Second, the proposed class representatives must be members of the class they purport to represent, and their interests must not be in conflict with those of the other class members. *See Romero*, 796 F. Supp. 2d at 715. There is no conflict or antagonistic interests of the named Plaintiff to the interest of any other class members. *Id.* The named Plaintiff has the same interests as all other class members: recovering all earned and accrued wages including, but not limited to regular, straight, or overtime wages for all uncompensated hours worked below and beyond forty (40) per week, and she has already presented sworn declarations to further these efforts and evincing her desire to advance these claims collectively. Plaintiff Laura Pontones and The Law Offices of Gilda A. Hernandez, PLLC will fairly and adequately represent the proposed class in accordance with Rule 23(a)(4).

### 4. The Proposed Class Satisfies the Requirements of Rule 23(b)(3).

If the prerequisites under Rule 23(a) are met, the action must then satisfy one of the three alternative sets of requirements under Rule 23(b). *Romero*, 796, F. Supp. 2d at 700. It requires (1) that the questions of law or fact common to the class members predominate over any questions affecting only individual members and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Id.* Here, Plaintiffs seek class certification under Rule 23(b)(3).

> *i. Common Questions of Law and Fact Predominate Over Any Individual Questions.*

The Rule 23(b) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. at 623 (1997). First, the questions of law or fact common to putative class members predominate over

any questions affecting only individual members. As discussed previously, the same basic factual circumstances apply to each putative class member. Courts in this circuit routinely hold that the predominance requirement has been met when the defendant has implemented a common, uniform policy. *See Martinez-Hernandez*, 2008 U.S. Dist. LEXIS 111931, at *13 (court found that the predominance requirement was met because defendant's use of a "GANG" time policy affected all of the putative class members); *see also Ceras-Campo v. WF P'ship,* 2011 U.S. Dist. LEXIS 12688, at *10 (E.D.N.C. Feb. 9, 2011) (court found contract class claims predominated over any questions affecting only individual class members); *see also Gaxiola,* 2011 U.S. Dist. LEXIS 20473, at *130 (same); *Harris*, 2011 WL 4443024, at *10 (court found predominance was met because claims involved a uniform policy or practice of compensating employees based on their scheduled shifts); *see also McLaurin*, 2010 U.S. Dist. LEXIS 119792, at *478 (court found predominance was met because defendant's use of a line time policy affected all of the putative class members); *Romero*, 796 F. Supp. 2d at 716 (court found predominance requirement was satisfied because the same operative facts underlying defendant's compensation system, also formed the basis of Plaintiffs' NCWHA claims); *Mitchel*, 2012 WL 4005535, at *9 (same); *Horne*, 2011 WL 4443034, at *8-9 (same).

Here, it is Defendants' uniform failure to pay current and former employees any wages for all the hours suffered or permitted to work. *See supra* § II.A. The individualized inquiries that may be required would be to determine damages, but such differences do not defeat class certification. *See Mitchel*, 2012 WL 4005535, at *9; *Horne*, 2011 WL 4443034, at *9 (same); *Harris* 2011 WL 4443024, at *10 (same). ("[D]ifferences in the amount of potential damages among putative class members will not alone prevent class certification") (quoting *Haggart v. United States*, 89 Fed. Cl. 523 (Fed. Cl. 2009)). Plaintiffs have accordingly met the

predominance requirement of Rule 23(b)(3).

> *ii. A Class Action Is The Superior Method For Litigating This Matter.*

The superiority question under Rule 23(b)(3) requires a court to consider whether a class action is superior to other methods of adjudication. The Court is to compare the possible alternatives to a class action and determine if any is superior to the proposed class action. The alternative to a class action litigation in this case would be individual lawsuits by each class member. *See Romero*, 796 F. Supp. 2d at 716. Based on the relatively small amount of individual wages claimed in this case, the putative class members would not have a great incentive or desire to bring individual suits against Defendants. *Id.* Even if the putative class members were inclined to pursue individual actions, there is no doubt this would be more burdensome on the class members, and it would likely be a less efficient use of judicial resources. *Id.*

Additionally, Courts in this District consider Rule 23(b)(3)'s four non-exclusive factors pertinent to the predominance and superiority determinations. The four factors are: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). *See Romero,* 796 F. Supp. 2d at 716*; see also Amchem Prods.*, 521 U.S. at 616.

With respect to the *first* factor, individualized lawsuits would be financially burdensome and many plaintiffs may not have the means or ability to prosecute their claims separately. On the other hand, the advantages of determining the common issues by means of a class action are evident, as all employees in the class could finalize their claims in one proceeding rather than in hundreds of individual suits. *See Ceras-Campo,* 2011 U.S. Dist. LEXIS 12688, at *10 (quoting

*Jimenez-Orozco*, 2007 U.S. Dist. LEXIS 93860, at *13-15 (finding that a class action is superior to other available methods for the fair and efficient adjudication of this controversy)). With respect to the *second* factor, none of the parties have indicated that there is any similar ongoing litigation by the class members against Defendants. In the instant case, putative class members all seek a common finding that Defendants have violated the NCWHA, specifically N.C. Gen. Stat. §§ 95-25.6, 95-25.8, and 95-25.13. There is no conflict within the class, and there are no individual aspects to render the parties within the class adverse to one another.

With respect to the *third* factor, Defendants' restaurants in North Carolina are located within this district and all the putative class members work or did work at Defendants' restaurants within the relevant period of time. The United States District Court for the Eastern District of North Carolina, Western Division will provide an excellent forum for this matter. Because individual adjudications could take up the dockets of several judges within this Court, there is no reason to further burden an overloaded court system when a single adjudication will simply and efficiently satisfy the claims of many. The Court must seek to effectuate the public policy expressed in Rule 23 in favor of having all similar cases "disposed of where feasible, in a single lawsuit." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 n. 11 (1981).

Finally, manageability compares the class action device to other methods of adjudicating the controversy only when management difficulties make a class action less fair and efficient than some other methods, such as individual interventions or consolidation of individual lawsuits, would a class action become improper. *See* Newberg, Newberg on Class Actions § 4.32 at 4-125 (3d ed. 1992). Plaintiffs believe that this class action would involve a minimum of 100 class members, so it is readily manageable, particularly when compared to classes in other larger and more complicated cases that have been managed successfully through settlement or

trial. *See  Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 62 (D. Mass. 1997) ("class consists of persons or entities who have had an ownership interest in one or more of approximately 1.8 million [insurance] policies"). Given the possible size and scope of this class,  joinder  and  intervention are not possible or superior alternatives.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the following relief: (1) conditional certification of this action as a representative collective action under the FLSA; (2) approval of the proposed FLSA notice of this action and the consent form in both English and Spanish; (3)  production of names, last known mailing addresses, alternate addresses, telephone numbers, email  addresses, and dates of employment of all Class  Members; (4) ability to distribute the Notice and Opt-in/out Forms via first class mail, email, and text message to all putative plaintiffs of the conditionally certified collective, with a reminder notice to be sent 45-days after the initial mailing to all non-responding putative plaintiffs as well as ability to post the Notice, along with the consent forms, in both English and Spanish at  each  of  Defendants' restaurant locations; and (5) designating named Plaintiff Class  Representative and Plaintiff's Counsel as Class Counsel; and (6) certifying this action as a class  action under Rule 23(a) and (b)(3) for the NCWHA claims.

Respectfully submitted, this April 26, 2019.

/s/ Gilda Adriana Hernandez
Gilda A. Hernandez (NCSB No. 36812)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Dr., Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2019, the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR CONDITIONAL CERTIFICATION PURSUANT TO THE FAIR LABOR STANDARDS ACT AND FOR CLASS CERTIFICATION UNDER FED. R. CIV. P. 23** was served in accordance with the Federal Rules of Civil Procedure on the following:

Henry W. Jones, Jr. (N.C. Bar No. 8343)
Lori Peoples Jones (N.C. Bar No. 32872)
Jordan Price Wall Gray Jones & Carlton, PLLC
P. O. Box 10669
1951 Clark Ave.
Raleigh, NC 27604
919-828-2501
919-834-8447 (fax)
hjones@jordanprice.com
ljones@jordanprice.com

James Larry Stine (GA Bar No.: 682555)
Wimberly, Lawson, Steckel, Schneider & Stine, P.C.
3400 Peachtree Rd., NE
Suite 400, Lenox Towers
Atlanta, GA 30326
404-365-0900
404-261-3707 (fax)
jls@wimlaw.com

*Attorneys for Defendants*

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Dr., Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
*Attorney for Plaintiff*
