IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CA No. 5:18-cv-219-D

| | | |
|---|---|---|
| LAURA PONTONES, on behalf of herself and all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) ) | |
| v. | ) ) ) | |
| SAN JOSE RESTAURANT, INCORPORATED; SAN JOSE MANAGEMENT, INC., d/b/a SAN JOSE MEXICAN RESTAURANT AND SPORTS CANTINA; SAN JOSE MEXICAN RESTAURANT #2 OF LUMBERTON, INC.; SAN JOSE MEXICAN RESTAURANT OF ELIZABETHTOWN, INC.; SAN JOSE MEXICAN RESTAURANT OF N.C. INC.; SAN JOSE MEXICAN RESTAURANT OF PEMBROKE, NC, INC.; SANJOSE MEXICAN RESTAURANT OF RALEIGH INC.; SAN JOSE MEXICAN RESTAURANT OF SHALLOTTE, INC.; SAN JOSE OF ROCKY MOUNT #2 INC., d/b/a SAN JOSE TACOS AND TEQUILA; SAN JOSE OF ZEBULON, INC.; SAN JOSE OF ROANOKE RAPIDS, INC.; SAN JOSE WAKEFIELD, INC., d/b/a SAN JOSE MEX AND TEQUILA BAR; PLAZA AZTECA RALEIGH, INC., d/b/a SAN JOSE TACOS AND TEQUILA; HECTOR FLORES; ALBERTO FLORES; JOSUE FLORES; JOSE PEREZ; VICENTE PEREZ; PABLO MEZA; EDGARDO FLORES; and EDGAR FLORES, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **DECLARATION OF LAURA PONTONES IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL AND/OR CLASS CERTIFICATION AND COURT-AUTHORIZED NOTICE UNDER SECTION 216(B) OF THE FAIR LABOR STANDARDS ACT AND CERTIFICATION PURSUANT TO R.23 OF THE FEDERAL RULES OF CIVIL PROCEDURE** |
| *Defendants.* | ) | |

**28 U.S.C. § 1746 DECLARATION OF LAURA PONTONES**

I, Laura Pontones, am over the age of 18, upon personal knowledge and under penalty of perjury, pursuant to 29 U.S.C. § 1746, state and declare that the following are true and correct:

1

## *Employment Factual Background*

1.      I worked as a server from approximately October 2, 2016 until January 22, 2017 at San Jose Restaurant – Brier Creek, located in Raleigh, NC.  From approximately January 23, 2017 to April 2017 and then again from approximately July 2017 until August 2017, I worked as a server at San Jose – Poyner Village, located in Raleigh, NC. During this time, my duties as a server included, but were not limited to, interacting with customers, taking orders, ensuring the food was prepared consistently with customers' requests, delivering food, cleaning up before/after customers, and completing occasional maintenance tasks.

## *Schedule and Recordkeeping*

2.      I typically worked five (5) days every week at each location. At San Jose – Brier Creek, I worked Tuesday through Saturday.  On Tuesdays and Thursdays, I typically worked from 3:00 p.m. to 10:00 p.m. and Wednesday through Saturday from 10:00 a.m. to 10:00 p.m. Therefore, I normally worked an average of 40 hours per week at the Brier Creek location.    At San Jose – Poyner Village, I worked Wednesday through Sunday from approximately 10:00 a.m. through 10:00 p.m.  As such, at the Poyner Village location, I typically worked approximately 50 hours per week.   I received a two (2) hour break in between shifts every day at both locations.

3.      At both locations, employees had access to a computer system to clock into and out of work. Servers were required to clock into the computer system, so Defendants would know who had arrived on time for each shift.  However, because neither I nor any other servers were paid an hourly wage for any hours worked, we never needed to rely on the timeclock to track our hours worked and were not required to clock out at the end of the shift.

4.      In other words, San Jose did not have a policy or practice of having servers punch a time clock or use timesheets for recording our hours worked.  As such, I was not provided an

2

opportunity to accurately record all of my hours worked or given access to any timesheets reflecting the hours I worked or paystubs, documenting any wages for the hours I worked. Moreover, there was also no record maintained on any servers' cash tips received from customers. Only tips received from credit card transactions were submitted in the system.

*Compensation*

5.     During my time at both San Jose – Poyner Village and San Jose – Brier Creek, I received no wages for any of my hours worked.  My only income came from customers' tips.

6.     Though I was not required to participate in a tip pool, a portion of my tips from each shift was deducted and given to the restaurant in order to offset business expenses. At the end of each shift, I was required to pay a percentage of all credit card and cash purchases made by customers, usually three percent (3%) of such sales.  It was explained to me that this deduction was intended to cover the wages of the chip and busboy personnel; however, this percentage was deducted from my tips regardless of whether a customer paid in cash or with a credit card. It was also Defendants' policy and practice to require wait staff to tip out each bartender a flat rate. At San Jose - Brier Creek, servers were expected to pay each bartenders a flat rate of twelve (12) dollars every Friday, Saturday and Sunday. At the San Jose- Poyner Village, Defendants' required servers to tip out each bartender eight (8) dollars every Friday, Saturday, and Sunday.  I was never asked to authorize this type of deduction in writing.

7.     While I only worked at two (2) out of approximately eleven (11) restaurant locations for San Jose, I understood that servers at all locations worked for tips because servers sometimes transferred from one location to another, and we would all talk about only working for tips. Throughout my employment with Defendants I only received one check during my training period, for which I was paid $8.00 an hour. Otherwise with the exception of two (2) additional

3

checks with $0.00 wages, neither I nor any other servers received any compensation for regular hours or overtime hours worked nor did we receive any paystubs that reflected our hours worked. While I asked about this policy, and I heard other servers did as well, San Jose Defendants, through owners or managers, advised you that if you did not like the policy or practice, you could simply leave, or they would fire you, if you did not agree. Since I needed the money, I accepted San Jose's policy.

### *Common Policies*

8.  From personally observing, working with, and talking to other servers at various restaurant locations, I know other servers were also subject to Defendants' scheduling requirements and worked similar overtime hours on a regular basis without receiving any pay or salary for all hours worked. Overall, myself and others were not paid any wages for the work we did while employed by Defendants.

9.  From personally observing, working with, and talking to other servers at various restaurant locations, I know other servers were also required to work primarily for tips and are required to pay 3% of their gross beverage and food sales to Defendants to help cover restaurant wages of non-wait staff.

10.  Defendants' policies injured me and other servers in the same way: We were not paid for any of the time we worked, whether minimum wage or overtime for any hours worked over 40 per week at time and one-half. Defendants simply paid us nothing. We are all victims of these policies.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on  04/25/2019 .

_____
Laura Pontones (Apr 25, 2019)

Laura Pontones

## **Translator Verification Form**

I, Michelle Romero, am fluent in English and Spanish. I swear and affirm under penalty

of perjury that I translated Plaintiff Laura Pontones' Declaration from Spanish to English.

04/25/19

Date

Michelle Romero