IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-219-D

| | | |
|---|---|---|
| LAURA PONTONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| SAN JOSE RESTAURANT | ) | |
| INCORPORATED, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On May 17, 2018, Laura Pontones ("Pontones" or "plaintiff"), on behalf of herself and similarly situated plaintiffs, filed a complaint against a group of allegedly related Mexican restaurants for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), and the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, et seq. ("NCWHA") [D.E. 1]. On June 11, 2018, Pontones amended her complaint [D.E. 7]. On April 26, 2019, Pontones moved for conditional class certification under section 216(b) of the FLSA and Rule 23 of the Federal Rules of Civil Procedure [D.E. 66] and filed a memorandum in support [D.E. 67]. On May 17, 2019, defendants responded in opposition [D.E. 68] and filed various exhibits [D.E. 69, 70]. On June 5, 2019, Pontones replied [D.E. 75] and filed additional declarations [D.E. 73, 74]. As explained below, the court grants Pontones's motion for conditional class certification concerning both claims.

I.

Pontones is a former server. See Am. Compl. [D.E. 7] ¶ 1, 14. She sues San Jose Restaurant Incorporated; San Jose Management, Inc., d/b/a San Jose Mexican Restaurant and Sports Cantina;

San Jose Mexican Restaurant #2 of Lumberton, Inc.; San Jose Mexican Restaurant of Elizabethtown, Inc.; San Jose Mexican Restaurant of N.C. Inc.; San Jose Mexican Restaurant of Pembroke, NC, Inc.; San Jose Mexican Restaurant of Raleigh Inc.; San Jose Mexican Restaurant of Shallotte, Inc.; San Jose of Rocky Mount #2 Inc., d/b/a San Jose Tacos and Tequila; San Jose of Zebulon, Inc.; San Jose of Roanoke Rapids, Inc.; San Jose Wakefield, Inc., d/b/a San Jose Mex and Tequila Bar; Plaza Azteca Raleigh, Inc., d/b/a San Jose Tacos and Tequila; Hector Flores; Alberto Flores; Josue Flores; Jose Perez; Vicente Perez; Pablo Meza; Edgardo Flores; and Edgar Flores (collectively, "defendants") for unpaid minimum wages and overtime compensation. See id.

Defendants own and operate Mexican restaurants in North Carolina, Virginia, and South Carolina. See id. ¶ 46. From about October 2, 2016, to January 22, 2017, Pontones worked as a server at the Brier Creek location in Raleigh, North Carolina. See id. ¶ 47. From January 23, 2017, until April 2017 and again from July 2017 to August 2017, Pontones worked at the Triangle Town Center Mall location in Raleigh, North Carolina. See id. Pontones did not supervise other employees and performed the normal duties of a server. See id. ¶¶ 48–50. She worked Wednesday to Sunday. See id. ¶ 51. On Wednesdays and Thursdays, Pontones worked from 10 a.m. to 10 p.m. See id. On Fridays and Saturdays, Pontones worked from 10 a.m. to 11 p.m. See id. On Sundays, she worked from 5 p.m. to 10 p.m. See id. Each work day except Sunday, Pontones would take a two-hour unpaid break between shifts. See id. Pontones alleges that defendants controlled her work schedule and rate of pay. See id. ¶ 52.

According to Pontones, she and others similarly situated "were advised" that they would be paid an hourly wage less than the minimum wage required under FLSA, plus tips. See id. ¶ 53. But Pontones only received a check for her first week of training (at $8.00 per hour) and "one to two"

2

checks for $0.00. See id. Otherwise, Pontones alleges that she did not receive wages or check stubs that documented the hours she worked or the wages she earned. See id. Pontones also claims that the defendants deducted a fixed percentage of all credit and cash purchases made by customers from her earnings, usually about 3%, regardless of whether a customer paid in cash or by card. See id. ¶¶ 54–55, 57. She alleges that defendants used this deduction to pay their operating expenses. See id. ¶ 56. She also alleges that defendants did not operate a tip pool. See id. ¶ 58.

From 2014 until 2016, the United States Department of Labor, Wage and Hour Division, investigated defendants and found "numerous violations," including failure to pay overtime pay, failing to pay minimum wage by requiring waiters to work for tips alone, failing to maintain required time and payroll records, and falsifying payroll documents. See id. ¶ 59. Pontones alleges that the defendants continued their practices after the federal investigation. See id. ¶ 60. In 2006 and 2007, and again from late 2017 until early 2018, the North Carolina Department of Labor also investigated defendants. See id. ¶ 61. The first investigation did not result in any findings because defendants did not comply. See id. The second investigation resulted in the assessment of civil penalties. See id.

Pontones provides evidence of the U.S. Department of Labor's investigations. See Ex. A [D.E. 67-1]. These investigations resulted in the assessment of significant back-wages against the San Jose restaurants owed to approximately 125 employees. See id. at 167–69; Flores Dep. [D.E. 67-2] 14. Some of these employees were servers. See Flores Dep. [D.E. 67-2] 15.

On March 10, 2016, a group of plaintiffs filed a collective action under FLSA in this court against defendants. See Galvan v. San Jose Mexican Rest. of NC, Inc., No. 7:16-CV-39-FL, 2016 WL 6205783, at *1 (E.D.N.C. Oct. 24, 2016) (unpublished). The Galvan plaintiffs alleged mirroring

3

FLSA claims, but did not allege any state law claims. See id. On October 24, 2016, Judge Flanagan granted plaintiffs' motion for conditional class certification under section 216(b) of the FLSA. See id. at *3. On March 2, 2018, the parties settled the litigation. See Galvan v. San Jose Mexican Rest. of N.C., Inc., No. 7:16-CV-39-FL, [D.E. 46] (E.D.N.C. Mar. 2, 2018). Pontones claims that defendants continued their unlawful wage practices after the settlement. See Am. Compl. [D.E. 7] ¶ 63.

Pontones submits Hector Flores's deposition of December 18, 2018. Flores testified that the individual store managers essentially operate the different San Jose locations without much if any oversight from the owners. See Flores Dep. [D.E. 67-2] 12–13. He also admitted that the Department of Labor found that the San Jose restaurants had failed to pay servers anything besides tips, which resulted in minimum wage and overtime violations like those that Pontones alleges. See id. at 15. Flores, however, did not know what policies and practices existed at the restaurants. See id. at 27, 29, 37–38. Flores also testified that he personally had done nothing to remedy the violations at the San Jose restaurants and that the managers were responsible for bringing the restaurants into compliance after the Department of Labor's investigations. See id. at 40.

Pontones seeks to bring a collective action under section 216(b) of FLSA for:

> All current and/or former servers of Defendants whose primary duty is/was non-exempt work, who were not paid minimum wage and/or overtime, and who are/were subjected to deductions of a fixed percentage of all credit and cash purchases made by Defendants' customers, . . . within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b).

Compl. [D.E. 1] ¶ 65(a). Pontones alleges that defendants did not pay the putative members of the FLSA collective action the legally required minimum wage or overtime rate of time and that defendants took deductions from their salaries improperly. See id. ¶ 66; Pontones Decl. [D.E. 73]

4

¶ 1 (naming specific individuals with whom Pontones worked). Pontones also offers evidence that these policies applied to servers at other locations. See Enriquez Decl. [D.E. 74] ¶¶ 10–13.

Pontones also seeks to certify a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of the following proposed class:

> All current and/or former employees of Defendants in North Carolina whose primary duty is/was non-exempt work, who are/were not paid for all of their hours worked, including promised regular and/or overtime wages, and who are/were subjected to unlawful deductions of a fixed percentage of all credit and cash purchases made by Defendants' customers, at any time within the two (2) year period prior to the filing of this lawsuit.

Compl. [D.E. 1] ¶ 73(a).

## II.

The FLSA requires employers to pay non-exempt employees a minimum wage and overtime wage. See 29 U.S.C. §§ 206–07; Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 356–57 (4th Cir. 2011); Romero v. H.B. Auto. Grp., Inc., No. 11 Civ. 386(CM), 2012 WL 1514810, at *5–7 (S.D.N.Y. May 1, 2012) (unpublished). Under the FLSA, employees can bring suit on behalf of themselves and other similarly situated employees against employers for unpaid overtime and other claims. See 29 U.S.C. § 216(b). This collective action process enables similarly situated employees to pool resources and promote judicial efficiency. See, e.g., Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 158 (S.D.N.Y. 2014); Faust v. Comcast Cable Commc'ns Mgmt., LLC, No. WMN–10–2336, 2011 WL 5244421, at *2 (D. Md. Nov. 1, 2011) (unpublished). The FLSA is a special form of collective action, separate from class actions under Rule 23 of the Federal Rules of Civil Procedure. See 29 U.S.C. § 216(b). For example, unlike class actions under Rule 23(b)(3), in which class members are bound by the judgment unless they opt out of the class, collective FLSA

actions require plaintiffs to give "consent in writing to become such a party." Id. Thus, FLSA collective-action plaintiffs must be "similarly situated" and opt in to the class by filing consent with the court. See id.; Sandoval-Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc., No. 5:13-CV-810-D, 2017 WL 4322404, at *4 (E.D.N.C. Sept. 28, 2017) (unpublished); Rosinbaum v. Flowers Foods, Inc., 238 F. Supp. 3d 738, 743 (E.D.N.C. 2017); Jackson, 298 F.R.D. at 158.

Courts generally follow a two-stage process in determining whether to grant certification for a collective action under section 216(b). See, e.g., Sandoval-Zelaya, 2017 WL 4322404, at *5; Rosinbaum, 238 F. Supp. 3d at 743; Faust, 2011 WL 5244421, at *2; Williams v. XE Servs., LLC, No. 2:09-CV-59-D, 2011 WL 52353, at *2 (E.D.N.C. Jan. 4, 2011) (unpublished). "In the first stage, sometimes referred to as the 'notice stage,' the court makes a threshold determination of whether the plaintiffs have demonstrated that potential class members are 'similarly situated,' such that court-facilitated notice to the putative class members would be appropriate." Faust, 2011 WL 5244421, at *2 (quotation omitted); see Sandoval-Zelaya, 2017 WL 4322404, at *5; Rosinbaum, 238 F. Supp. 3d at 743; McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465, 469 (E.D.N.C. 2010); Parker v. Smithfield Packing Co., No. 7:07-CV-176-H, 2010 WL 11565605, at *3 (E.D.N.C. Aug. 23, 2010) (unpublished), report and recommendation adopted by 2010 WL 11565686 (E.D.N.C. Sept. 27, 2010) (unpublished). The second stage generally occurs after discovery and requires the court to engage in a fact-intensive inquiry to determine whether the putative class is "similarly situated" and whether certification is appropriate. See, e.g., Sandoval-Zelaya, 2017 WL 4322404, at *5; Faust, 2011 WL 5244421, at *2. The defendant typically initiates the second stage by moving for "decertification" of the class. See, e.g., Faust, 2011 WL 5244421, at *2.

The notice stage does not require a demanding evidentiary showing, but instead requires only

"substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." McLaurin, 271 F.R.D. at 469 (quotation omitted); see Sandoval-Zelaya, 2017 WL 4322404, at *4–5; Rosinbaum, 238 F. Supp. 3d at 743; Faust, 2011 WL 5244421, at *2. The FLSA collective-action standard is considerably less stringent than the standard for class certification under Federal Rule of Civil Procedure 23. See, e.g., Jackson, 298 F.R.D. at 158. Plaintiffs may rely on pleadings, affidavits, and declarations to satisfy the FLSA collective-action requirement. See, e.g., id.; Romero, 2012 WL 1514810, at *9; XE Servs., 2011 WL 52353, at *3. Under the FLSA, "plaintiffs must submit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exist." Faust, 2011 WL 5244421, at *2 (quotation omitted); see XE Servs., 2011 WL 52353, at *3; Purdham v. Fairfax Cty. Pub. Sch., 629 F. Supp. 2d 544, 548–49 (E.D. Va. 2009).

Separate entities that share control over an individual worker can be joint employers. See, e.g., Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298, 304–05 (4th Cir. 2006); Luna-Reyes v. RFI Constr., LLC, 109 F. Supp. 3d 744, 749 (M.D.N.C. 2015); 29 C.F.R. § 791.2(a). Joint employment exists when "(1) two or more persons or entities share, agree to allocate responsibility for, or otherwise codetermine the essential terms and conditions of a worker's employment and (2) the worker is an 'employee' within the meaning of the FLSA." Salinas v. Commercial Interiors, Inc., 848 F.3d 125, 140 n.8 (4th Cir. 2017). Step one of the analysis focuses on whether two or more entities are "not completely disassociated." Id. at 141–42; see 29 C.F.R. § 791.2(a). In making this determination, courts may consider six non-exhaustive factors:

> 1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;

7

(2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;

(3) The degree of permanency and duration of the relationship between the putative joint employers;

(4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

(5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

(6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

Salinas, 848 F.3d at 141–42. Although no factor is dispositive, one factor alone may be sufficient to find either for or against a joint employment relationship. See id. A court must assess joint employment "based upon the circumstances of the whole activity." Id. at 142 (quotation omitted).

As for Pontones's motion for conditional class certification under section 216(b), at this stage the court need only make "a threshold determination of whether the plaintiffs have demonstrated that potential class members are 'similarly situated,' such that court-facilitated notice to the putative class members would be appropriate." Faust, 2011 WL 5244421, at *2 (quotation omitted); see Sandoval-Zelaya, 2017 WL 4322404, at *5; Rosinbaum, 238 F. Supp. 3d at 743; McLaurin, 271 F.R.D. at 469. Thus, Pontones need only make "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." McLaurin, 271 F.R.D. at 469; see Sandoval-Zelaya, 2017 WL 4322404, at *4–5; Rosinbaum, 238 F. Supp. 3d at 743; Faust, 2011 WL 5244421, at *2. Pontones has met the standard required for court-facilitated notice to putative class

8

members under the FLSA. See, e.g., XE Servs., 2011 WL 52353, at *3–4. Specifically, Pontones has "made a sufficient factual showing that the [San Jose] defendants subjected putative class members to a common policy that violated FLSA" and raises "similar legal issues" under FLSA "arising from a similar factual setting." Berber v. Hutchison Tree Serv., No. 5:15-CV-143-D, 2018 WL 3869980, at *3 (E.D.N.C. Aug. 14, 2018) (unpublished); see, e.g., Velasquez-Monterrosa v. Mi Casita Rests., No. 5:14-CV-448-BO, 2016 WL 1703351, at *2–3 (E.D.N.C. Apr. 27, 2016) (unpublished). For example, Pontones claims that she worked with specific named individuals who stated that the other San Jose restaurants had the same pay policies and practices. See Pontones Decl. [D.E. 73] ¶ 1. Moreover, the opt-in plaintiff alleges similar claims. See Enriquez Decl. [D.E. 74] ¶¶ 10–13.

In opposition to this conclusion, defendants highlight that Pontones is the only named plaintiff. See [D.E. 68] 1. On June 5, 2019, however, Eduardo Torres Enriquez ("Enriquez") opted in as a plaintiff and alleged that he "was not paid for all compensable time that [he] worked," including overtime. [D.E. 72-1] 1–2; see Enriquez Decl. [D.E. 74] ¶¶ 10–13. Defendants also challenge the sufficiency of Pontones's declaration. See [D.E. 68] 1. On June 5, 2019, Pontones supplemented her declaration with further details, including names. See Pontones Decl. [D.E. 73] ¶ 1. Moreover, although defendants contest that they are joint employers, Pontones has made at least a minimal showing that the San Jose restaurants operate as joint employers. See Berber, 2018 WL 3869980, at *3–6; see Roman v. Guapos III, Inc., 970 F. Supp. 2d 407, 413–16 (D. Md. 2013).

As for defendants' remaining arguments (e.g., that wages were applied to offset taxes owed), those arguments "appear to be attacking the merits of plaintiffs' claims rather than addressing the similarly situated standard" under FLSA. Williams, 2011 WL 52353, at *4. Thus, the court rejects

9

those arguments and grant Pontones's motion for certification and notice under FLSA.[1]

### III.

Pontones moves for class certification of her NCWHA claim under Rule 23. The standard required to meet the certification requirements of Federal Rule of Civil Procedure 23 is more stringent than the standard for conditional certification under the FLSA. See Callari v. Blackman Plumbing Supply, Inc., 307 F.R.D. 67, 74 (E.D.N.Y. 2015); Williams, 2011 WL 52353, at *2 n.2. Indeed, when examining a motion for class certification under Rule 23, the court may consider the merits of plaintiff's underlying claim to the extent such inquiry informs whether plaintiff satisfies Rule 23 prerequisites. See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 465–66

---

[1] Defendants also appear to challenge Pontones's standing under Article III to sue all of the San Jose restaurants. See [D.E. 68] 13–14. A class action plaintiff must have suffered injury personally, and cannot predicate Article III standing upon the injuries of putative class members. See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc., 892 F.3d 613, 619–20 (4th Cir. 2018); Beck v. McDonald, 848 F.3d 262, 269–70 (4th Cir. 2017); Pashby v. Delia, 709 F.3d 307, 316 (4th Cir. 2013); see also Warth v. Seldin, 422 U.S. 490, 502 (1975). Pontones alleges that defendants violated her rights under FLSA and the NCWHA by not paying her minimum wage, by not paying her overtime, and by illegally deducting amounts from her wages. Thus, Pontones has sufficiently alleged an injury in fact for Article III purposes, and has standing to bring this action as a collective or class action plaintiff.

The court acknowledges that some courts have held that FLSA collective action plaintiffs lack Article III standing to sue defendants who did not employ them. See, e.g., Crumbling v. Miyabi Murrells Inlet, LLC, 192 F. Supp. 3d 640, 646–47 (D. S.C. 2016); Roman, 970 F. Supp. 2d at 413–16. However, because Pontones has plausibly alleged that the San Jose restaurants operate as joint employers under Salinas, these cases are distinguishable. Cf. Crumbling, 192 F. Supp. 3d at 646–47 ("Here, Plaintiffs have not alleged any kind of joint employment theory that would confer standing against all of the defendants."). Moreover, it is unclear whether "determining whether a defendant is an 'employer' under the FLSA is a jurisdictional fact," rather than simply an element of a FLSA claim. Luna-Reyes v. RFI Const., LLC, 57 F. Supp. 3d 495, 500–01 (M.D.N.C. 2014); see also Fort Bend Cty. v. Davis, 139 S. Ct. 1843, 1848–50 (2019); Arbaugh v. Y & H Corp., 546 U.S. 500, 516 (2006). In any event, Pontones has Article III standing to sue the San Jose restaurants.

(2013); Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351–52 (2011).

Under Federal Rule of Civil Procedure 23(a), class certification is appropriate if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If a plaintiff has satisfied the Rule 23(a) prerequisites, the plaintiff then also must show that "class certification is proper under one of the subdivisions of Rule 23(b)." McLaurin, 271 F.R.D. at 475; see Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).

Pontones seeks to certify a Rule 23(b)(3) class. Rule 23(b)(3) allows a class action to be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). If Pontones satisfies the requirements of Rule 23(a), she also must then satisfy the two components of Rule 23(b)(3): (1) predominance and (2) superiority. See Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006).

A.

As for numerosity, "[t]here is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied." Kelley v. Norfolk & W. Ry., 584 F.2d 34, 35 (4th Cir. 1978) (per curiam). "The issue is one primarily for the District Court, to be resolved in light of the facts and circumstances of the particular case." Id.; see Holsey v. Armour & Co., 743 F.2d 199, 217 (4th Cir. 1984). Pontones alleges that there are at least 100 putative class members. Defendants argue that, while Pontones could "theoretically" satisfy this requirement, she has not presented

11

sufficient evidence to do so. The court disagrees. See, e.g., Cypress v. Newport News & Gen. & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967) (en banc); Velasquez-Monterrosa, 2016 WL 1703351, at *4–5; McLaurin, 271 F.R.D. at 475. Thus, Pontones has satisfied numerosity.

B.

As for the second and third Rule 23(a) factors, "[t]he requirements for typicality and commonality often merge." Romero v. Mountaire Farms, Inc., 796 F. Supp. 2d 700, 714 (E.D.N.C. 2011) (quotation omitted); see Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982); Kidwell v. Transp. Commc'ns Int'l Union, 946 F.2d 283, 305 (4th Cir. 1991). Under the "commonality" requirement of Rule 23(a)(2), at least one common question of law or fact must exist among class members. See EQT Prod. Co. v. Adair, 764 F.3d 347, 360 (4th Cir. 2014); Brown v. Nucor Corp., 576 F.3d 149, 153 (4th Cir. 2009); Haywood v. Barnes, 109 F.R.D. 568, 577 (E.D.N.C. 1986). What matters to class certification, however, "is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." Wal-Mart Stores, Inc., 564 U.S. at 350 (quotation and emphasis omitted). Typicality exists if "the claims of the representative parties [are] typical of the claims of the class." Haywood, 109 F.R.D. at 578; see Soutter v. Equifax Info. Servs., LLC, 498 F. App'x 260, 264–65 (4th Cir. 2012) (unpublished); Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006). A claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." Beattie v. CenturyTel, Inc., 511 F.3d 554, 561 (6th Cir. 2007) (quotation omitted); see Romero, 796 F. Supp. 2d at 714. This requirement is "captured by the notion that as goes the claim of the named plaintiff, so go the claims of the class." Deiter, 436 F.3d

12

at 466 (quotation omitted); see Soutter, 498 F. App'x at 264–65; Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998).

As for typicality and commonality, Pontones alleges that defendants violated the NCWHA by taking unlawful deductions of a fixed percentage of all credit and cash purchases from employees' paychecks and by not paying regular or overtime wages to employees. See Compl. [D.E. 1] ¶ 15. Defendants respond that Pontones "is mistaken about most of the facts" and "offers nothing more than the bare assertion" that her alleged experiences were typical and common. [D.E. 68] 23.

A district court reviewing a motion for class certification may consider the merits of a class action plaintiff's underlying claims insofar as necessary to decide whether the plaintiff has met Rule 23(a)'s prerequisites. See Amgen Inc., 568 U.S. at 465–66; Wal-Mart Stores, Inc., 564 U.S. at 351–52. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." Wal-Mart Stores, Inc., 564 U.S. at 349–50 (emphasis added) (quotation omitted). "Rule 23 does not set forth a mere pleading standard[,]" but rather, "[a] party seeking class certification must affirmatively demonstrate his compliance" with Rule 23. Id. at 350. Unlike Wal-Mart Stores, Inc., however, "this case involves a uniform policy or practice of compensating employees" that defendants allegedly follow and that allegedly violates the NCWHA. Mitchell v. Smithfield Packing Co., No. 4:08-CV-182-H(1), 2011 WL 4442973, at *3 (E.D.N.C. Sept. 23, 2011) (unpublished); see, e.g., Berber, 2018 WL 3869980, at *7. This fact remains true even if, at a later stage, defendants ultimately prevail on the joint-employer issue. "Moreover, [Pontones's] and putative class members' claims are based on the same legal theory, a violation of N.C. Gen. Stat. § 95-25.6." Berber, 2018 WL 3869980, at *7; see Velasquez-Monterrosa, 2016 WL 1703351, at *5. Thus, Pontones has satisfied the commonality and typicality requirements.

13

C.

As for the fourth requirement, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Amchem, 521 U.S. at 625–26 (alteration and quotation omitted); see In re Red Hat, Inc. Sec. Litig., 261 F.R.D. 83, 87 (E.D.N.C. 2009). The adequacy inquiry also "serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem, 521 U.S. at 625; see Beattie, 511 F.3d at 562. A conflict must be considered "fundamental" to defeat the adequacy requirement. Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 184 (3d Cir. 2012); see Sharp Farms v. Speaks, 917 F.3d 276, 294–98 (4th Cir. 2019); Ward v. Dixie Nat'l Life Ins. Co., 595 F.3d 164, 180 (4th Cir. 2010); Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 430–31 (4th Cir. 2003). "A conflict is not fundamental when . . . class members share common objectives and the same factual and legal positions and have the same interest in establishing the liability of defendants." Ward, 595 F.3d at 180 (quotation and alteration omitted); see Gunnells, 348 F.3d at 430–31. Moreover, in assessing the representative's adequacy, courts may consider several factors including "honesty, conscientiousness, and other affirmative personal qualities." Shiring v. Tier Techs., Inc., 244 F.R.D. 307, 315 (E.D. Va. 2007) (quotation omitted); see In re Red Hat, 261 F.R.D. at 87.

As for adequacy, defendants argue that Pontones's status as an illegal alien who lacks work authorization and her "false statements concerning wages, hours, tips, and recordkeeping" disqualify her as an adequate class representative. [D.E. 68] 27. Pontones responds that her immigration status is irrelevant under the NCWHA and that defendants do not identify any conflict. See [D.E. 75] 13–14.

14

Defendants concede that Pontones's immigration status does not per se render her inadequate under Rule 23(a). See [D.E. 68] 27; Montoya v. S.C.C.P. Painting Contractors, Inc., 530 F. Supp. 2d 746, 750 (D. Md. 2008); cf. N.C. Gen. Stat. § 95-25.2(4) (defining an "employee" in terms materially identical to the definition in FLSA). Moreover, defendants do not identify a fundamental conflict or explain why Pontones's possible false statements amount to a fundamental conflict. Furthermore, the interests of Pontones and the putative class members do not conflict. See, e.g., Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, No. 5:13-CV-810-F, 2015 WL 5703569, at *5 (E.D.N.C. Sept. 28, 2015) (unpublished). Thus, Pontones has satisfied the adequacy requirement.

D.

As for predominance, the predominance requirement is "far more demanding than Rule 23(a)'s commonality requirement and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Gariety v. Grant Thornton, LLP, 368 F.3d 356, 362 (4th Cir. 2004) (quotation omitted); see Amchem, 521 U.S. at 623–24; Gray v. Hearst Commc'ns, 444 F. App'x 698, 700–01 (4th Cir. 2011) (unpublished); Thorn, 445 F.3d at 319. The predominance inquiry focuses on the balance between individual and common issues. See Brown v. Nucor Corp., 785 F.3d 895, 917–21 (4th Cir. 2015); Myers v. Hertz Corp., 624 F.3d 537, 549 (2d Cir. 2010).

Common issues of law and fact have been held to predominate "where the same evidence would resolve the question of liability for all class members." Beaulieu v. EQ Indus. Servs., Inc., No. 5:06–CV–00400–BR, 2009 WL 2208131, at *20 (E.D.N.C. July 22, 2009) (unpublished); see Stillmock v. Weis Mkts., Inc., 385 F. App'x 267, 273 (4th Cir. 2010) (unpublished); Gunnells, 348 F.3d at 428; Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 40 (1st Cir. 2003). The predominance inquiry focuses on whether "common, aggregation-enabling, issues in the case are

15

more prevalent or important than the non-common, aggregation-defeating, individual issues." Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) (quotation omitted). Individualized damages alone do not defeat predominance. See, e.g., Brown v. Electrolux Home Prods., Inc., 817 F.3d 1225, 1232, 1239 (11th Cir. 2016); Gunnells, 348 F.3d at 427–28; Smilow, 323 F.3d at 40; Hart v. Louisiana-Pac. Corp., No. 2:08-CV-47-BO, 2013 WL 12143171, at *2 (E.D.N.C. Mar. 29, 2013) (unpublished). Rather, a court may certify a class under Rule 23(b)(3) "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." Tyson Foods, Inc., 136 S. Ct. at 1045 (quotation omitted); see Crutchfield v. Sewerage & Water Bd., 829 F.3d 370, 376 (5th Cir. 2016).

Defendants highlight the differences among the San Jose restaurants, such as the existence of tip pools, different records, and different managers, and argue that there is "simply no cohesiveness in this proposed class." [D.E. 68] 28. Generally, however, when a plaintiff challenges his employer's policy concerning overtime pay, "the validity of that policy predominates over individual issues and class certification is appropriate." Dorman v. DHL Express (USA), Inc., No. 09-cv-99-bbc, 2010 WL 446071, at *3 (W.D. Wis. Feb. 3, 2010) (unpublished) (quotation omitted); see, e.g., Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 598–99 (2d Cir. 1986); Ramirez v. Riverbay Corp., 39 F. Supp. 3d 354, 368–69 (S.D.N.Y. 2014). Moreover, defendants' arguments ignore Pontones's joint employer allegations. "Neither the Fourth Circuit nor the North Carolina Supreme Court has examined whether the joint employment doctrine applies for purposes of liability under the NCWHA." Lima v. MH & WH, LLC, No. 5:14-CV-896-FL, 2019 WL 2602142, at *14 (E.D.N.C. Mar. 8, 2019) (unpublished). However, as the Lima court held, the NCWHA contains

"identical definitions of 'employer' and 'employee.'" Id. Accordingly, despite some differences among the San Jose restaurants, Pontones has satisfied Rule 23(b)(3)'s predominance requirement.

E.

As for the superiority requirement, Pontones must demonstrate that proceeding as a class "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); see Thorn, 445 F.3d at 319. In assessing superiority, courts should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); see Thorn, 445 F.3d at 319. Courts also should consider "whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." Stillmock, 385 F. App'x at 274 (quotation omitted).

The Rule 23(b)(3) factors support the conclusion that a class action is a superior method of adjudicating this dispute. See Fed. R. Civ. P. 23(b)(3); Thorn, 445 F.3d at 319; Berber, 2018 WL 3869980, at *9–10; Velasquez-Monterrosa, 2016 WL 1703351, at *6–7; Zelaya, 2015 WL 5703569, at *5–6. The first factor (i.e., the burden and expense of individual litigation, and the legal and practical difficulty of proving individual claims) makes it unlikely that individual class members could obtain the relief sought if they were forced to proceed on their own. As for the second factor, no individual claims are pending. As for the third factor, this court presents a desirable forum for litigating these claims. The claims arose in the Eastern District of North Carolina and many of the relevant records are in the Eastern District of North Carolina. See, e.g., Zelaya, 2015 WL 5703569,

17

at *5–6; Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 373 (S.D.N.Y. 2007). Finally, this court perceives no difficulty in managing this class action. Thus, Pontones has met the superiority requirement, and the court grants her motion for class certification concerning her NCWHA claim.

## IV.

In sum, the court GRANTS plaintiff's motion [D.E. 66] for conditional class certification and court-authorized notice concerning plaintiff's FLSA claim and for conditional class certification concerning her NCWHA claim. The parties shall meet and confer concerning future proceedings, the contents of the proposed notice, and submit a proposed schedule no later than December 6, 2019. The parties also shall participate in a court-hosted settlement conference with United States Magistrate Judge Gates.

SO ORDERED. This 31 day of October 2019.

JAMES C. DEVER III
United States District Judge