IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| LAURA PONTONES, on behalf of herself and all others similarly situated,<br><br>   *Plaintiff,*<br><br>  v.<br><br>SAN JOSE RESTAURANT, INCORPORATED; SAN JOSE MANAGEMENT, INC., d/b/a SAN JOSE MEXICAN RESTAURANT AND SPORTS CANTINA; SAN JOSE MEXICAN RESTAURANT #2 OF LUMBERTON, INC.; SAN JOSE MEXICAN RESTAURANT OF ELIZABETHTOWN, INC.; SAN JOSE MEXICAN RESTAURANT OF N.C. INC.; SAN JOSE MEXICAN RESTAURANT OF PEMBROKE, NC, INC.; SANJOSE MEXICAN RESTAURANT OF RALEIGH INC.; SAN JOSE MEXICAN RESTAURANT OF SHALLOTTE, INC.; SAN JOSE OF ROCKY MOUNT #2 INC., d/b/a SAN JOSE TACOS AND TEQUILA; SAN JOSE OF ZEBULON, INC.; SAN JOSE OF ROANOKE RAPIDS, INC.; SAN JOSE WAKEFIELD, INC., d/b/a SAN JOSE MEX AND TEQUILA BAR; PLAZA AZTECA RALEIGH, INC., d/b/a SAN JOSE TACOS AND TEQUILA; HECTOR FLORES; ALBERTO FLORES; JOSUE FLORES; JOSE PEREZ; VICENTE PEREZ; PABLO MEZA; EDGARDO FLORES; and EDGAR FLORES,<br><br>   *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 5:18-cv-219-D |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   STATEMENT OF FACTS ............................................................................. 2

III.  ARGUMENT ................................................................................................... 2

      A.    Standard for Summary Judgment .......................................................... 2

      B.    Corporate and Individual Defendants Jointly Employed Plaintiffs Under the
            Fair Labor Standards Act and the North Carolina Wage and Hour Act. ............... 3

      C.    Because Both Individual and Enterprise Coverage Exists, Plaintiffs Are
            Entitled to the Protections of the FLSA. ................................................ 8

            1.    A Common Enterprise Exists Irrespective of Any Distinct Corporate
                  Legal Entities. ........................................................................... 9

            2.    The Facts Overwhelmingly Support A Finding That Defendants
                  Constitute A Common Enterprise. ........................................... 11

            3.    The USDOL – Wage and Hour Division's Investigative Findings
                  Disclosed That Defendants Constitute A Single Common
                  Enterprise. ................................................................................. 12

      D.    Defendants' Are Liable Under the FLSA and NCWHA For All Unpaid
            Wages and Reimbursement of Unlawfully Deducted Tips. ................. 14

            1.    Defendants Failed to Maintain Required Records of Hours Worked
                  and Wages Earned by Plaintiff, Shifting the Burden of Proof from
                  Plaintiffs to Defendants. ........................................................... 14

            2.    Defendants Illegally Failed to Pay Plaintiffs Any Wages, Either as
                  Required for Tipped Employees Under the Tip Credit, or as
                  Required for All Other Covered Employees, and, as a Result, Must
                  Pay Full Minimum Wage. ......................................................... 17

            3.    Defendants Illegally Misappropriated Part of Plaintiffs' Tips to Pay
                  Other, Non-Tipped Employees. ................................................ 20

                  i.    Defendants Violated FLSA by Misappropriating Part of
                        Plaintiffs' Tips, and Defendants Cannot Succeed on a Claim
                        That This Practice Constituted a Valid Tip Pool. ............... 21

                  ii.   Defendants Violated the NCWHA by Misappropriating and
                        Illegally Deducting Part of Plaintiffs' Tips. ....................... 23

4.  Defendants Illegally Failed to Pay Plaintiffs Overtime Wages, as Required Under the FLSA and NCWHA. ................................................. 25

E.  Defendants Acted Willfully, Entitling Plaintiffs to Collect Damages Under a Three (3) Year Statute of Limitations Period. ..................................................... 26

1.  Because Defendants Cannot Establish That They Acted in Good Faith, Plaintiffs Are Entitled to Liquidated Damages Under the FLSA and NCWHA. ................................................................. 26

2.  Defendants Acted Willfully, Entitling Plaintiffs to Collect Damages Under a Three (3) Year Statute of Limitations Period. ............................ 28

IV.  CONCLUSION ................................................................................................. 29

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ............................................................................................. 2, 3

*Anderson v. Mt. Clemens Pottery Co.,*
   328 U.S. 680 (1946) ........................................................................................... passim

*Barcellona v. Tiffany English Pub, Inc.,*
   597 F.2d 464 (5th Cir. 1979) ............................................................................. 19, 20

*Bouchat v. Balt. Ravens Football Club,*
   346 F.3d 514 (4th Cir. 2003) ..................................................................................... 3

*Brock v. Hamad,*
   867 F.2d 804 (4th Cir. 1989) ............................................................................. 10, 11

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ............................................................................................. 2, 3

*Dole v. Elliott Travel & Tours, Inc.,*
   942 F.2d 962 (6th Cir. 1991) ................................................................................... 29

*Dole v. Odd Fellows Home Endowment Bd.,*
   912 F.2d 689 (4th Cir. 1990) ............................................................................. 10, 11

*Donovan v. Bel-Loc Diner, Inc.,*
   780 F.2d 1113 (4th Cir. 1985) ................................................................................. 27

*Doo Nam Yang v. ACBL Corp.*
   427 F. Supp. 2d 327 (S.D.N.Y. 2005) ...................................................................... 15

*Dorsey v. TGT Consulting, LLC,*
   888 F. Supp. 2d 670 (D. Md. 2012) ......................................................................... 18

*Dunlop v. Indus. Am. Corp.,*
   516 F.2d 498 (5th Cir. 1975) ..................................................................................... 9

*Folk v. Brennan,*
   414 U.S. 190 (1973) ................................................................................................... 3

*Garcia v. Frog Island Seafood, Inc.,*
   644 F. Supp. 2d 696 (E.D.N.C. 2009) ..................................................................... 24

*Gaxiola v. Williams Seafood of Arapahoe, Inc.,*
   776 F. Supp. 2d 117 (E.D.N.C. 2011) ............................................................... 27, 28

*Giegerich v. Watershed, LLC*,
    2016 U.S. Dist. LEXIS 39159 (D. Md. Mar. 24, 2016)...................................................... 10

*Gilbert v. Freshbikes, LLC*,
    32 F. Supp. 3d 594 (D. Md. 2014) .................................................................................... 11

*Gionfriddo v. Jason Zink, LLC*,
    769 F. Supp. 2d 880 (D. Md. 2011) ........................................................................... 11, 14

*Hedrick v. S. States Coop., Inc.*,
    2010 U.S. Dist. LEXIS 104495 (E.D.N.C. Sep. 29, 2010)................................................ 17

*Heng Chan v. Sung Yue Tung Corp.*,
    2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb. 1, 2007)................................................ 19, 20

*Herman v. Palo Grp. Foster Home, Inc.*,
    183 F.3d 468 (6th Cir. 1999) ............................................................................................ 29

*In re Apex Express Corp.*,
    190 F.3d 624 (4th Cir. 1999) .............................................................................................. 2

*In re Food Lion Effective Scheduling Litig.*,
    861 F. Supp. 1263 (E.D.N.C. 1994) ................................................................................. 29

*Ke v. Saigon Grill, Inc.*,
    595 F. Supp. 2d 240 (S.D.N.Y. 2008) ................................................................... 21, 22, 23

*Laborers' Int'l Union of N. Am., AFL-CIO v. Case Farms, Inc.*,
    127 N.C. App. 312 (1997) ............................................................................................ 6, 13

*Leverette v. Labor Works Int'l, LLC*,
    180 N.C. App. 102, 114 (2006) .................................................................................... 6, 13

*Lockwood v. Prince George's Cty.*,
    2000 U.S. App. LEXIS 15302 (4th Cir. June 29, 2000)..................................................... 27

*Marroquin v. Canales*,
    505 F. Supp. 2d 283 (D. Md. 2007).......................................................................... 14, 25, 26

*Marshall v. Sam Dell's Dodge Corp.*,
    451 F. Supp. 294 (N.D.N.Y. 1978).................................................................................. 28

*Martin v. Bedell*,
    955 F.2d 1029 (5th Cir. 1992) ............................................................................................ 8

*Martin v. Deiriggi*
    985 F.2d 129 (4th Cir. 1992) ..................................................................... 10, 11, 25, 26

*Martin v. Deiriggi,*
  985 F.2d 129 (4th Cir. 1992) ....................................................................... 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S 574 (1986) ............................................................................... 2, 3

*Mayhew v. Wells,*
  125 F.3d 216 (4th Cir. 1997) .............................................................. 27, 28

*McFeeley v. Jackson St. Entm't, LLC,*
  825 F.3d 235 (4th Cir. 2016) ............................................... 19, 20, 22, 26

*McLaughlin v. McGee Bros. Co.,*
  681 F. Supp. 1117 (W.D.N.C. 1988) ...................................................... 14

*McLaughlin v. Richland Shoe Co.,*
  486 U.S. 128 (1988) ................................................................................ 28

*Mendoza v. Mo's Fisherman Exch., Inc.,*
  2016 U.S. Dist. LEXIS 81764 (D. Md. June 22, 2016) ........................... 10

*Mumbower v. Callicott,*
  526 F.2d 1183 (8th Cir. 1975) .................................................. 14, 25, 26

*Myers v. Copper Cellar Corp.,*
  192 F.3d 546 (6th Cir. 1999) .................................................................. 22

*Nationwide Mut. Inc. Co. v. Darden,*
  503 U.S. 318 (1992) .................................................................................. 3

*Pearson v. Prof'l 50 States Prot., LLC,*
  2010 U.S. Dist. LEXIS 113859 (D. Md. Oct. 26, 2010) .......................... 11

*Pontones v. San Jose Rest. Inc.,*
  No. 19-445 (4th Cir. Nov. 14, 2019) ....................................................... 11

*Reich v. S. Md. Hosp.,*
  43 F.3d 949 (4th Cir. 1995) ................................................................... 14

*Reyes v. Remington Hybrid Seed Co.,*
  495 F.3d 403 (7th Cir. 2007) ................................................................... 5

*Richard v. Marriott Corp.,*
  549 F.2d 303 (4th Cir. 1977) ....................................................... 19, 27, 28

*Rivera v. Mo's Fisherman Exch., Inc.,*
  2018 WL 2020423 (D. Md. May 1, 2018) ............................................... 21

Case 5:18-cv-00219-D    Document 100    Filed 02/11/20    Page 6 of 41

*Rutherford Food Corp. v. McComb,*
    331 U.S. 722 (1947) ............................................................................................... 3

*Salinas v. Commercial Interiors, Inc.,*
    848 F.3d 125 (4th Cir. 2017) ......................................................................... 4, 5, 6

*Schultz v. Capital Int'l Sec., Inc.,*
    466 F.3d 298 (4th Cir. 2006) ................................................................................. 5

*Schultz v. Capital Int'l Sec., Inc.,*
    466 F.3d 298 (4th Cir. 2006) ............................................................................... 11

*Shultz v. Hinojosa,*
    432 F.2d 259 (5th Cir. 1970) ..................................................................... 21, 22, 23

*Steele v. Leasing Enters.,*
    826 F.3d 237 (5th Cir. 2016) ..................................................................... 19, 20, 21

*Strickland v. MICA Information Systems,*
    800 F. Supp. 1320 (M.D.N.C. 1992) .................................................................. 24

*Turner v. Human Genome Sciences, Inc.,*
    292 F. Supp. 2d 738 (D. Md. 2003) ............................................... 15, 17, 25, 26

*Tyson Foods, Inc. v. Bouaphakeo,*
    136 S. Ct. 1036 (2016) ................................................................................... 15, 17

*United States v. Diebold, Inc.,*
    369 U.S. 654 (1962) ............................................................................................... 2

*Walling v. Youngerman-Reynolds Hardwood Co.,*
    325 U.S. 419 (1945) ............................................................................................. 25

*Whitehead v. Sparrow Enter.,*
    167 N.C. App. 178, 605 S.E.2d 234 (2004) ...................................................... 17

*Williams v. Genex Servs., LLC,*
    809 F.3d 103 (4th Cir. 2015) ............................................................................... 25

*Williams v. Md. Office Relocators, LLC,*
    485 F. Supp. 2d 616 (D. Md. 2007) ................................................................... 29

**Statutes**

29 U.S.C. § 201 ........................................................................................................... 1

29 U.S.C. § 203 ................................................................................................... passim

29 U.S.C. § 203(m) ............................................................................................ passim

29 U.S.C. § 206 ........................................................................................... passim

29 U.S.C. § 207 ..................................................................................... 1, 8, 9, 25

29 U.S.C. § 211(c) ......................................................................................... 14, 15

29 U.S.C. § 216(b) ....................................................................................... 2, 26, 28

29 U.S.C. § 255(a) ............................................................................................ 2, 28

29 U.S.C. § 260 ................................................................................................ 27, 28

Fed. R. Civ. P. 23 ..................................................................................................... 1

N.C. Gen. Stat. § 95-25.2 ............................................................................ 6, 13, 18

N.C. Gen. Stat. § 95-25.22 ................................................................... 2, 26, 27, 28

N.C. Gen. Stat. § 95-25.6 .............................................................................. passim

N.C. Gen. Stat. § 95-25.8 .............................................................................. passim

N.C. Gen. Stat. §§ 95-25.1 ...................................................................................... 1

**Other Authorities**

Senate Report No. 145, 87th Cong., 1st Sess ........................................................ 9

Senate Report No. 1487, 89th Cong., 2d Sess. ..................................................... 9

USDOL Field Operations Handbook, § 30d05(a) ............................................... 22

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................... 2

Fed. R. Civ. P. 56(c)(1)(A) ..................................................................................... 2

L.R. 56.1(a)(1) ......................................................................................................... 2

**Regulations**

29 C.F.R. § 516.2 ............................................................................................ 14, 15

29 C.F.R. § 531.35 ............................................................................................. 1, 21

29 C.F.R. § 531.50(b) ............................................................................................ 18

29 C.F.R. § 531.54 ................................................................................................... 1

29 C.F.R. § 531.59 .................................................................................. 18, 19, 20, 21

29 C.F.R. § 531.59(b) ........................................................................................ 18

29 C.F.R. § 779.206 ............................................................................................. 9

29 C.F.R. § 779.213 ........................................................................................... 10

29 C.F.R. § 779.215 ........................................................................................... 10

29 C.F.R. § 779.217 ........................................................................................... 10

29 C.F.R. § 779.221 ........................................................................................... 10

29 C.F.R. § 779.223 ........................................................................................... 10

29 C.F.R. § 791.2(a) ........................................................................................ 4, 5

29 C.F.R. § 791.2(b) ........................................................................................... 4

## I.    INTRODUCTION

Plaintiff Laura Pontones ("Plaintiff") asserts that San Jose Restaurants; Hector Flores; Alberto Flores; Josue Flores; Jose Perez; Vicente Perez; Pablo Meza; Edgardo Flores; and Edgar Flores et al.,[1] (collectively "Defendants") failed to compensate Plaintiff, opt-in Plaintiffs, and Fed. R. Civ. P. 23 ("R.23") putative class members (collectively "Plaintiffs") as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1, *et seq*.  (1) by failing to pay Plaintiffs for all hours worked; (2) failing to pay Plaintiffs all owed and/or earned wages such as minimum wage, overtime; and (3) subjecting Plaintiffs (servers) to unlawful deductions or three percent (3%) of daily total food and beverage sales for each shift and workweek; and (4) violating statutory record-keeping provisions.

Succinctly, this case presents eight (8) core issues: (1) An employer/employee relationship exists/existed between Plaintiffs and Defendants; (2) Defendants are both corporate and individual joint employers; (3) Plaintiffs are *individually* covered due to the interstate commerce work they performed, and Defendants consist of a common enterprise compromised of Mexican Restaurants; (4) Defendants' are liable for failing to compensate Plaintiffs at the statutory minimum wage rate under 29 U.S.C. § 206, 29 U.S.C. § 203(m), and N.C. Gen. Stat. § 95-25.6; (5) Defendants' are liable for misappropriating Plaintiffs' tips and making illegal deductions, in violation of 29 C.F.R. § 531.35, 29 C.F.R. § 531.54, N.C. Gen. Stat. § 95-25.6, and N.C. Gen. Stat. § 95-25.8; (6) Defendants are liable for failing to compensate Plaintiffs' all overtime wages owed at time and one-half for all hours worked in excess of forty (40) each week, as required under 29 U.S.C. § 207 and N.C. Gen. Stat. § 95-25.6; (7) Given Defendants' repeat violations, they cannot establish that they acted in good faith, entitling Plaintiffs to liquidated damages in an amount equal to unpaid wages, as provided under 29 U.S.C. §

---

[1] In the interest of efficiency and brevity, Plaintiff does not identify all defendants by name, but they are found in the first amended complaint.  *See* Dkt. 7.

216(b) and N.C. Gen. Stat. § 95-25.22; and (8) Defendants' willful violation of the FLSA, entitling

Plaintiffs to recovery of unpaid wages for up to three (3) years rather than two (2) years, as provided

under 29 U.S.C. § 255(a). Ultimately, the tips received by Plaintiffs, their only source of income while

working for Defendants, should not qualify as "wages" under the FLSA and NCWHA, and, as such,

Defendants failed to satisfy their statutory obligations. Accordingly, this Court should grant summary

judgment on all of these counts to Plaintiff.

## II.    STATEMENT OF FACTS

The undisputed material facts are fully set forth in Plaintiff's Statement of Undisputed Material

Facts in Support of Her Motion for Summary Judgment (hereinafter referred to as "Rule 56.1

Statement"), pursuant to L.R. 56.1(a)(1), and are thus fully incorporated herein.

## III.   ARGUMENT

### A.    Standard for Summary Judgment

Fed. R. Civ. P. 56 requires that summary judgment be granted when there is no genuine issue

as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *In re Apex Express Corp.*, 190

F.3d 624, 633 (4th Cir. 1999). A "genuine" issue of material fact exists "if the evidence is such that a

reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). The moving party must support its assertion that a fact cannot be genuinely

disputed by "citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ.

P. 56(c)(1)(A). When ruling on a motion for summary judgment, courts must view the evidence in the

light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S 574, 587 (1986); *see also United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary

judgment is "an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

speedy, and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586. The "mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat summary judgment. *Anderson*, 477 U.S. at 252. Rather, the non-movant must come forward with "specific facts" and "concrete . . . ***affirmative evidence***" showing there is a genuine dispute for trial. *Id.* at 250-52, 256-57; *see also Bouchat v. Balt. Ravens Football Club*, 346 F.3d 514, 526 (4th Cir. 2003) (requiring the non-moving party to produce "specific, non-speculative evidence" in order to survive a motion for summary judgment).

B. <u>Corporate and Individual Defendants Jointly Employed Plaintiffs Under the Fair Labor Standards Act and the North Carolina Wage and Hour Act.</u>

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Likewise, "employee" is defined as "any individual employed by an employer." *Id.* at § 203(e)(1). The term "employ" is defined simply as "to suffer or permit to work." *Id.* at § 203(g). According to the Supreme Court, this definition has "striking breadth," and it effectively "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *See Nationwide Mut. Inc. Co. v. Darden*, 503 U.S. 318, 326 (1992). The Supreme Court has instructed courts to construe the terms "employer" and "employee" expansively under the FLSA. *See id.*; *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). Courts have interpreted the statutory definition of "employer" as permitting one or more joint employers. *See Folk v. Brennan*, 414 U.S. 190, 165 (1973) (recognizing that the maintenance workers were employees of *both* the building owners and the company rendering management services for the owners). While the FLSA does not preclude an employee from being separately employed by multiple, distinct employers, any "determination of whether the employment by the employers is to be considered joint employment or separate and

distinct employment for purposes of the act depends upon all the facts in the particular case." 29 C.F.R.

§ 791.2(a).   In pertinent part, the regulation states:

> . . . [I]f the facts establish that the employee is employed jointly by *two or more* employers, i.e., that employment by one employer is *not completely disassociated* from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as *one* employment for purposes of the Act. In this event, *all* joint employers are responsible, *both individually and jointly*, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek.

*See    id.*    The    regulation    identifies    three,    non-exclusive    situations    where "a joint employment relationship generally will be considered to exist" when "the employee performs work which simultaneously benefits two or more employers or works for two or more employers at different times during the workweek." *Id.* § 791.2(b). Such a situation generally exists when "there is an arrangement between the employers to share the employee's services" or "one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee." *Id.* § 791.2(b)(1) and (2).   Similarly, such a situation generally exists when "the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." *Id.* § 791.2(b)(3).

As such, a single individual may stand in the relation of an employee to two or more employers at the same time" under the FLSA, in light of the "expansive" statutory definitions of "employer" and "employee." *See Salinas v. Commercial Interiors, Inc*., 848 F.3d 125, 133 (4th Cir. 2017) (quotations omitted).   "[T]he joint employment doctrine: (1) treats a worker's employment by joint employers as 'one employment' for purposes of determining compliance with the FLSA's wage and hour requirements and (2) holds joint employers jointly and severally liable for any violations of the FLSA."

*Id.* at 134 (quoting *Schultz v. Capital Int'l Sec., Inc.,* 466 F.3d 298, 305, 307, 310 (4th Cir. 2006)). In determining whether joint employment exists, courts should address the following factors:[2]

(1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;

(2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;

(3) The degree of permanency and duration of the relationship between the putative joint employers;

(4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

(5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

(6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Salinas,* 848 F.3d at 141–42. As Judge Easterbrook explained in *Reyes v. Remington Hybrid Seed Co.*, 495 F.3d 403 (7th Cir. 2007), "[a] score of 5 to 3 decides a baseball game," not whether two entities constitute joint employers under the relevant totality-of-the-circumstances test, 495 F.3d at 407. The Department of Labor regulation's focus on whether two entities are "*entirely* independent" or "not *completely* disassociated," 29 C.F.R. § 791.2(a) (emphasis added), indicates *that one factor alone* can serve as the basis for finding that two or more persons or entities are "not completely disassociated"

---

[2] The Fourth Circuit in *Salinas* made clear that *these six factors do not constitute an exhaustive list* of all potentially relevant considerations. To the extent that facts not captured by these factors speak to the fundamental threshold question that must be resolved in every joint employment case—whether a purported joint employer shares or codetermines the essential terms and conditions of a worker's employment—courts must consider those facts as well. *Salinas*, 848 F.3d 125 at 147.

with respect to a worker's employment if the facts supporting that factor demonstrate that the person or entity has a substantial role in determining the essential terms and conditions of a worker's employment. *See Salinas,* 848 F.3d at 142.

Moreover, while neither the Fourth Circuit nor the North Carolina Supreme Court has examined whether the joint employment doctrine applies for purposes of liability under the NCWHA, the Fourth Circuit, nevertheless, in *Salinas* held that resolution of the "FLSA joint employment question also resolves [a] [p]laintiffs' claims under the Maryland Wage and Hour Law, which defines 'employer' consistently with the FLSA." *Id.* at 131 n. 3. This reasoning applies with greater force here because the NCWHA is not only "consistent[ ]" with the FLSA, *id.,* but in fact it uses identical definitions of "employer" and "employee" as the FLSA. *See* N.C. Gen. Stat. § 95-25.2; 29 U.S.C. § 203. Furthermore, while the North Carolina Supreme Court has not addressed the issue, the North Carolina Court of Appeals has recognized that the NCWHA is "modeled after" the FLSA, and it has recognized the alignment of the policy of the NCWHA and FLSA when looking to federal case law to interpret identically defined terms in the NCWHA. *Laborers' Int'l Union of N. Am., AFL-CIO v. Case Farms, Inc.*, 127 N.C. App. 312, 314 (1997); *see, e.g., Leverette v. Labor Works Int'l, LLC,* 180 N.C. App. 102, 114 (2006) (looking to federal FLSA case law in interpreting meaning of "enterprise" within the meaning of the NCWHA).

Here, there is no question that Named Plaintiff has established through declarations, pleadings, previous federal and state investigations, and Defendant Hector Flores' own testimony that both Corporate and Individual Defendants *jointly* employ Plaintiffs.

As to the *first* factor, all Defendants jointly determine, share or allocate the power to direct, control, or supervise Plaintiffs through direct or indirect means, either through individual Defendants or their designated supervisors or restaurant managers. *See* SUF ¶ 35.

As to the *second* factor, all Defendants share or allocate the power to directly or indirectly hire and fire Plaintiffs or modify the terms or conditions of their employment. Defendants' historically

implemented common policies where they fired or threatened to fire Plaintiffs who did not comply with their policies, refused to pay them any wages, and deducted percentages, despite not paying them minimum wage, overtime or properly recording their hours worked. *See* SUF ¶¶ 2-4, 36. Moreover, Defendants share employees across various locations, directing employees to new restaurant locations as Defendants' deem necessary. *See* SUF ¶¶ 2-4, 39.

As to the *third* factor, Defendants maintain the most permanent and everlasting relationship between putative joint employers—Defendants are family members and collectively operate an enterprise honoring their San Jose restauranteur patriarch, their father, and more generally their shared heritage. The facts demonstrate a degree of permanency exists between all Defendants as Defendants own and operate a chain of Mexican restaurants that was started over thirty (30) years ago by the patriarch, Alberto Flores, with a common business goal – a successful restaurant chain. *See* SUF ¶¶ 6-27, 29, 32, 37. Defendants collectively promote all Restaurant Defendant locations on Defendants' websites, maintain nearly identical menus for each Restaurant Defendant location based on *family recipes*, and generally operate under the identical business name "San Jose" Mexican Restaurants. *See* SUF ¶¶ 6-27, 38, 40. Further emphasizing the permanent relationship among Defendants, Defendants operate multiple restaurant locations throughout the region and advertise to the public that all Restaurant Defendant locations are essentially one in the same. *See* SUF ¶¶ 38, 40.

Similarly, as it relates to the *fourth* factor, all *Individual* Defendants share an interest in the San Jose restaurant enterprise and all Restaurant Defendants are subject to common ownership among the Individual Defendants. *See* SUF ¶¶ 6-27, 30, 33. Specifically, the thirteen corporate Defendants are owned and operated by one family, comprised of Individual Defendants. *See* SUF ¶¶ 6-27, 30. Indeed, control and ownership of the restaurants is so unified and fluid between family members, even Defendants cannot consistently explain who owns which restaurant. *See id.; see also* SUF ¶ 31.

As for the *fifth* factor, Plaintiffs performed work on premises owned or controlled by one or more of the corporate and/or individual putative joint employers, independently or in connection with

one another and Defendants maintained a practice of transferring employees from one restaurant location to another. *See* SUF ¶¶ 2-4, 39.

Lastly, as for the *sixth* factor, all Defendants jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as delegating the handling of payroll to managers and providing the facilities, equipment, tools, or materials necessary to complete the work. *See* SUF ¶¶ 33, 35-36, 39. Thus, as the evidence provides support for each factor of joint employment, when merely one factor would suffice, Plaintiffs have more than met the burden establishing that *all* Defendants employ Plaintiffs. Conclusively, the Individual Defendants and Corporate Defendants qualify as joint employers of Named, Opt-in, and putative Plaintiff.

**C.**   **Because Both Individual and Enterprise Coverage Exists, Plaintiffs Are Entitled to the Protections of the FLSA.**

Coverage under the overtime provision of the FLSA, 29 U.S.C. § 207(a)(1), is predicated on the employee either engaging in commerce or in the production of goods for commerce or being "employed in an enterprise engaged in commerce or in the production of goods for commerce." Courts refer to these two coverage alternatives as "individual coverage" for the employee's own actions and as "enterprise coverage" for being employed in an enterprise engaged in such activities. *See Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992). Either type of coverage is sufficient to invoke the protections under the FLSA. *See id.*

In § 203(s)(1), the FLSA also defines an employer as an "[e]nterprise engaged in commerce or in the production of goods for commerce." For purposes of this case, two grounds for coverage provided in that section are particularly relevant. An enterprise meets the definition when it (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

8

*Id.* § 203(s)(1)(A). Given this expansive definition added to the FLSA by amendment in 1974, [courts] have indicated that the FLSA essentially covers *every* enterprise that meets the dollar volume of business. *See Dunlop v. Indus. Am. Corp.*, 516 F.2d 498, 501-02, n.8 (5th Cir. 1975).

<ol><li value="1"><u>A Common Enterprise Exists Irrespective of Any Distinct Corporate Legal Entities.</u></li></ol>

Throughout this litigation, Defendants have insisted that they do not constitute one single common enterprise subject to the FLSA. *See* SUF ¶ 28. Despite uncontroverted evidence, Defendants engage in misrepresentations to the Court, as the evidence abundantly shows Defendants' position to be plainly false and misleading. *See* SUF ¶ 6-46. The minimum wage and overtime provisions of the FLSA apply to employees engaged in commerce or in the production of goods for commerce or employed in an enterprise that is engaged in commerce or in the production of goods for commerce. *See* 29 U.S.C. §§ 206(a), 207(a)(1). The FLSA defines "enterprise" as

> [T]he related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, [including] all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements . . .

29 U.S.C. § 203(r)(1) (emphasis added). Given this statutory language, even distinct corporate entities may constitute a "single enterprise," bringing all of their employees under the minimum wage and overtime protections of the FLSA, if the separate entities meet three elements:

(1) They perform related activities;[3]

---

[3] Though the FLSA does not define the term "related activities," the legislative history indicates that they are activities which are "the same or similar," and/or "all activities which are performed as part of the unified business operation." *See* 29 C.F.R. § 779.206(a) (citing Senate Report No. 145, 87th Cong., 1st Sess., Page 41). The Senate Report on the 1966 amendments adds that "related, even if somewhat different, business activities can frequently be part of the same enterprise," and that "activities having a reasonable connection with the major purpose of an enterprise would be considered related." *See id.* (citing Senate Report No. 1487, 89th Cong., 2d Sess., Page 7). Ultimately, "the answer to the question whether particular activities are "related" or not, will depend in each case upon whether the activities serve a business purpose common to all the activities of the enterprise, or whether they serve a separate and unrelated business purpose." *See* 29 C.F.R. § 779.206(b). Thus, the regulations provide, entities as distant as a retail store and a construction business may be "related" under the FLSA if there is a sufficient connection between the two businesses. *See id.*

(2) Under unified operations or common control;[4] and

(3) For a common business purpose.[5] ;

*See Martin v. Deiriggi*, 985 F.2d 129, 133 (4th Cir. 1992) (citing 29 U.S.C. § 203(r)); *see also Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689, 692-93 (4th Cir. 1990) (discussing each element).

Applying this standard, the Fourth Circuit in *Brock v. Hamad* found that companies that were owned by the same family, managed from the same location, serviced the same clientele, and engaged in similar activities (renting residential properties) constituted a "single enterprise" under the FLSA. *See* 867 F.2d 804, 806-07 (4th Cir. 1989). The court used the "single enterprise" finding to bring both entities under the FLSA's "gross volume of sales made or business done" threshold under 29 U.S.C. § 203(s)(1), since each entity, independently, did not satisfy the sufficient amount. *See id.* at 808. The court reached this conclusion even though the entities had different names (Hamad Realty and Greenfield Properties), included properties that were owned by the defendant, his wife, or his mother, and comprised otherwise legally distinct entities. *See id.* at 807-08. Similarly, courts within the Fourth Circuit have repeatedly found that entities operating one or more closely related restaurants fall under the "single enterprise" purview of the FLSA. *See, e.g., Mendoza v. Mo's Fisherman Exch., Inc.*, 2016 U.S. Dist. LEXIS 81764, at *49-50 (D. Md. June 22, 2016) (finding a "single enterprise" for six restaurants that were separate legal entities, where they all had common ownership/control, operated in the food service industry, utilized a similar name, and were located in the same city); *Giegerich v. Watershed, LLC*, 2016 U.S. Dist. LEXIS 39159, at *12-14 (D. Md. Mar. 24, 2016) (finding that four

---

[4] "Unified operation" and "common control" are stated in the alternative – thus, if one, but not the other, is shown to exist, this element will be satisfied (even though the two frequently exist together). *See* 29 C.F.R. § 779.215(a). ***The terms do not refer to ownership, and control may exist in the absence of any ownership, although ownership may weigh in favor of control.*** *See* 29 C.F.R. § 779.215(b); 29 C.F.R. § 779.223. "Unified operation" refers to related activities, and includes separate segments of a business that, as a unit, advance a common business purpose. *See* 29 C.F.R. § 779.217. "***Common control*** *exists where activities "are controlled by one person or by a number of persons, corporations, or other organizational units acting together." See* 29 C.F.R. § 779.221.

[5] "***Common business purpose*** *refers to activities performed by multiple individuals, corporations, or other business organizations, which are directed to the same or similar business objectives.* *See* 29 C.F.R. § 779.213.

different corporations, owning establishments selling food and drink in different locations, were an enterprise where (1) food was prepared at one restaurant for the benefit of another; (2) employees interviewed at one location and then worked at another restaurant; (3) employees were transferred between restaurants without having to complete new employment paperwork; and (4) the individual defendants had authority over the operations of each establishment); *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 891-92 (D. Md. 2011) (holding that two taverns, while owned by distinct corporate entities, were a single enterprise when they serviced the same neighborhood and the same clientele, were controlled by the same individual, and shared a business objective of selling food and drink).[6]

<ol start="2">
<li>The Facts Overwhelmingly Support A Finding That Defendants Constitute A Common Enterprise.</li>
</ol>

In the instant case, the evidence astoundingly supports the finding of a "single enterprise" between all Defendants in this action, since there were (1) related activities; (2) unified operations or common control; and (3) a common business purpose. *See Martin*, 985 F.2d at 133; *see also* SUF ¶¶ 19-26. First, Defendants operate the *same* type of business (a Mexican restaurant), utilize common control as brothers, father, and cousins, exercise common control and ownership despite maintaining distinct legal entities, but an identical business name, (explaining the ownership percentages for family

---

[6] *See Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 604 (D. Md. 2014), where an employee was able to prove single enterprise because three otherwise distinct retailers sold the same product, catered to similar clientele, and operated under the same name); *id.* (citing *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) and *Pearson v. Prof'l 50 States Prot., LLC*, 2010 U.S. Dist. LEXIS 113859 (D. Md. Oct. 26, 2010) for the proposition that the term "employer" is interpreted broadly under the FLSA); *id.* at 6 (citing *Martin*, 985 F.2d at 133, *Dole*, 912 F.2d at 692, and *Brock*, 867 F.2d at 806, to provide the three "single enterprise" elements under 29 U.S.C. § 203(r)). Despite Defendants' efforts to appeal this Court's decision in granting conditional and class certification, including, but not limited to, sufficiently finding common enterprise, Defendants have not cited to a single case that rejected a "single enterprise" theory, nor did they cite to any cases that refute or distinguish any of the elements that make up a "single enterprise" finding as they relate to the facts in this case. *See Pontones v. San Jose Rest. Inc.*, No. 19-445 (4th Cir. Nov. 14, 2019). Defendants ignore that the FLSA definition of "enterprise," and all of the case law that they cite to, explicitly provides that an enterprise may include "one *or more* corporate or other organizational units." *See* 29 U.S.C. § 203(r)(1) (emphasis added).

members of all restaurants, ) providing the *same* type of food and drink, using the same or similar menus, to the *same* clientele, under the *same* business name – San Jose Mexican Restaurant, in the *same* geographical area – North Carolina, with the common business purpose to sell food and drink, thereby increasing their sales and wealth. *See* SUF ¶¶ 5-37.

All Defendant San Jose Restaurants are part of a larger family business that operate under the same or similar name, offer the same or similar menu and specialty food options based on family recipes, maintain the same or similar décor, and share the same basic grouping of officers and owners. *See* SUF ¶¶ 28-37 (explaining that Defendants are part of a larger family business that operate under the same or similar name, "San Jose" Mexican Restaurant which pays homage to individual defendants' shared family origins); all restaurant defendants are owned and operated by some combination of the same family members and Individual Defendants; all locations are owned by a majority of family members, and the chain started with the patriarch, Alberto Flores; Defendant Edgar Flores usually handles and responds to any investigations or litigation on behalf of any and all Individual *and* Restaurant defendants; all San Jose Restaurant Defendants offer the same or similar menu and specialty food options based on family recipes; all San Jose Restaurant Defendants share employees between various locations, wherein employees may easily transfer from one restaurant location to another; and defendants advertise and identify various restaurant defendant locations across defendants' enterprise websites. *See id.* Given the plethora of facts supporting a common enterprise, coverage pursuant to the FLSA exists.

3. <u>The USDOL – Wage and Hour Division's Investigative Findings Disclosed That Defendants Constitute A Single Common Enterprise.</u>

In **2011** the Department of Labor ("DOL") initiated an investigation into Defendants' Shallotte, NC restaurant operation (the "DOL investigation"), followed by a series of subsequent

investigations through March 21, 2014 of *all* Defendants' operations.[7]  As a result of this latter investigation into Defendants' eleven restaurant locations, the DOL determined that, given the common control and common business purpose, all restaurants constitute a *single* enterprise. *See* SUF ¶¶ 41-48 (specifically identifying restaurants found to be part of the common enterprise;  Defendants' counsel did not object to these findings; summarizing Narrative Findings from the Department of Labor provided to Defendants Hector Flores, Edgar Flores, Josue Flores and their counsel regarding a "common, single enterprise" finding).[8]

Moreover, on or about July 10, 2015 (and within the relevant time period in *this* matter), Defendants, in the interest of the unified business operation, signed an agreement with the USDOL, agreeing to pay over $500,000 in back wages to shared employees working for all Restaurant Defendants' locations and to comply prospectively with labor requirements in a uniform fashion across all Restaurant Defendants' locations.  *See* SUF ¶ 45.  Similarly, co-lead defense counsel, Hipolito Goico, involved in this matter, *represented all* Defendants before the USDOL investigations, where the government established that the restaurants constituted a single enterprise and did not object to such finding.  *See* SUF ¶ 44.  Based on the foregoing, *all* restaurant locations, including, but not limited to, the locations where Named and Opt-in Plaintiff worked, constitute *one* enterprise pursuant to the FLSA.  Thus, all current and former employees of Defendants are covered pursuant to the FLSA and the NCWHA.[9]

---

[7] Pursuant to the Freedom of Information Act ("FOIA"), Plaintiff was able to obtain reports on DOL's investigations of Defendants' restaurants. *See* SUF ¶¶ 41-48 (DOL Cover Letter regarding Plaintiff's FOIA request).

[8] DOL held its final conference (to discuss the Agency's findings with Defendants) on July 10, 2015 and within the relevant time period of this action.

[9] As the NCWHA is modeled after the FLSA, *Laborers' Int'l Union of N. Am., AFL-CIO v. Case Farms, Inc.,* 127 N.C. App. 312, 314 (1997); *see, e.g., Leverette v. Labor Works Int'l, LLC*, 180 N.C. App. 102, 114 (2006) (looking to federal FLSA case law in interpreting meaning of "enterprise" within the meaning of the NCWHA), Defendants would also constitute a common enterprise consistent with the FLSA. *Compare* N.C. Gen. Stat. § 95-25.2(18), *with* 29 U.S.C. § 203(r)(1) (incorporating identical language to define "enterprise").

**D. Defendants' Are Liable Under the FLSA and NCWHA For All Unpaid Wages and Reimbursement of Unlawfully Deducted Tips.**

    1. Defendants Failed to Maintain Required Records of Hours Worked and Wages Earned by Plaintiff, Shifting the Burden of Proof from Plaintiffs to Defendants.

Under the FLSA, employers are required to retain records indicating, among other things, hours worked each workday by employees, total daily or weekly straight-time earnings or wages due, premium pay for overtime hours, total additions to or deductions from wages, total wages paid each period, and date of payment. *See* 29 U.S.C. § 211(c); C.F.R. § 516.2 et seq (providing FLSA record-keeping requirements); *see also Reich v. S. Md. Hosp.*, 43 F.3d 949, 951 (4th Cir. 1995) (providing that employers must keep records under the FLSA). "[R]ecords of wages, hours, and other conditions and practices of employment" must be kept because "compliance with the FLSA is [otherwise] impossible." *Gionfriddo*, 769 F. Supp. 2d at 889. The record-keeping requirements are "fundamental underpinnings" of the FLSA, since without records, its provisions cannot be enforced. *McLaughlin v. McGee Bros. Co.*, 681 F. Supp. 1117, 1134 (W.D.N.C. 1988).

The Supreme Court has held that when an employer fails to keep proper and accurate records, an employee's burden of proving improper compensation under the FLSA is met if the employee merely produces evidence that he in fact performed work, and evidence of the amount and extent of that work is enough to satisfy a "just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). The burden for employees when employers do not provide records is not high—several jurisdictions, including those within the Fourth Circuit, have held that a plaintiff may satisfy this burden by relying on his or her recollection alone. *See, e.g., Mumbower v. Callicott*, 526 F.2d 1183, 1186 (8th Cir. 1975) (stating that relying on an employee's recollection is proper to avoid the occurrence of employers benefitting from their failure to maintain records); *Marroquin v. Canales*, 505 F. Supp. 2d 283, 297 (D. Md. 2007) (providing that a plaintiffs' burden of proof can be met "through an employee's testimony giving his recollection of hours worked"); *Turner v. Human*

*Genome Sciences, Inc.,* 292 F. Supp. 2d 738, 748 (D. Md. 2003) (holding that plaintiffs' recollection alone, without corroborating evidence, satisfied their burden of proof); *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 336 (S.D.N.Y. 2005). The burden then shifts to the employer to provide detailed evidence to negate the plaintiff's rudimentary evidence. *See Mt. Clemens Pottery*, 328 U.S. at 687-88. If the employer cannot meet its burden, "the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688.

The Fourth Circuit, likewise, has held that a plaintiff's burden of showing the extent of uncompensated work is significantly reduced when an employer cannot provide complete and accurate wage and hour records. *See Martin v. Deiriggi*, 985 F.2d 129, 132 (4th Cir. 1992). The Supreme Court restated its stance:

> [W]hen employers violate their statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work, the remedial nature of the FLSA and the great public policy which it embodies . . . militate against making the burden of proving uncompensated work an impossible hurdle for the employee. Instead of punishing the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference . . . The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016) (citations omitted). In *Tyson*, the Supreme Court found that where employers failed to keep adequate records, plaintiffs were able to introduce mere statistical evidence to draw inferences for the hours worked of thousands of employees. *See id.* at 1047-49.

In this case, Defendants failed to maintain accurate records documenting Plaintiffs' wages earned, hours worked, total tips received, and other terms and conditions of employment required to be recorded under the FLSA. *See generally* SUF ¶¶ 57-78; *see also* 29 U.S.C. § 211(c); C.F.R. § 516.2 et seq. Though Defendants have provided some employment records for various restaurant locations,

such records are inconsistent, demonstrate various amounts of hours worked by Plaintiffs for the same time period, and have been confirmed by both Plaintiffs and Defendants as not accurately reflecting the hours worked by Plaintiff. *See* SUF ¶¶ 68-73, 77. Indeed, during the relevant time period, Plaintiffs did not regularly receive payroll records, including paychecks, paystubs, or W-2s documenting hours worked, supposed wages earned, or any withholdings throughout the course of their employment with Defendants. *See* SUF ¶¶ 61, 73. Despite Named Plaintiff asking Defendants for copies of federal tax returns, Defendants have provided no such documents, even when W-2s or records of wage withholdings would readily corroborate these purported earning statements. *See* SUF ¶ 78. Further, as recently as February 2018, Defendants have been investigated and found to have violated recordkeeping provisions, specifically failing to document hours worked and tips received. *See* SUF ¶¶ 61, 75, 81. Only now during litigation have Defendants created and produced employment records to feign compliance following the USDOL's investigation. Significantly, Defendants have a history of falsifying the very documents needed to defeat Plaintiffs' allegations. *See* SUF ¶¶ 57-59, 61, 70. Defendants repeatedly falsified any such records, even with the assistance of a Certified Public Accountant, during both the United States Department of Labor's investigation of Defendants' restaurant chain *and* this litigation. *See* SUF ¶ 59. Even among Defendants' limited production of payroll documents in this matter, Defendants have produced inconsistent paystubs and payroll reports, reporting *different hours* for *the same pay period* for Named Plaintiff. *See* SUF ¶¶ 71-73.

Further discrediting Defendants' current production of employment records, Plaintiffs were not required to record all hours worked. *See* SUF ¶ 63-68. Rather, Defendants only required Plaintiffs to clock into work at the start of their shift so that Defendants would know who arrived to work on time. *See* SUF ¶ 65. Plaintiffs were not required to clock out at the end of shift. *See* SUF ¶ 66. In fact, Plaintiffs understood that because they were only compensated via tips, any recording of hours was meaningless and therefore the employees did not document all hours worked. *See* SUF ¶ 67. As

a result, no veritable records exist that document hours worked, compensation earned, or wages paid to Plaintiff. *See* SUF ¶ 68.

Since Defendants cannot produce verifiable or reliable employment records, especially in light of Defendants established history of falsifying payroll records, Plaintiff's burden is met upon a mere presentation of evidence sufficient to satisfy a "just and reasonable inference" of her work performed. *See Mt. Clemens Pottery*, 328 U.S. at 687. Plaintiffs have easily met this burden, held by several jurisdictions to be satisfied with mere recollection. *See* SUF ¶¶ 96-97; *see also, e.g., Turner*, 292 F. Supp. at 748 (providing that recollection is enough to satisfy an employee's burden when an employer has failed to keep adequate records). For example, Named Plaintiff worked five (5) days a week Tuesday through Saturday, working seven (7) to twelve (12) hour shifts. *See* SUF ¶ 96. Similarly, Opt-in Plaintiff Torres worked six (6) days a week, working eleven (11) to twelve (12) hour shifts. *See* SUF ¶ 97. Defendants are unable to negate Plaintiff's evidence, as required by the Supreme Court, and as a result, the burden of proof on these issues rests squarely with Defendants, while Plaintiff's evidence remains operative. *See Tyson Foods*, 136 S. Ct. at 1047; *Mt. Clemens Pottery*, 328 U.S. at 687-88. The remainder of this Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment should be read with this burden shift in mind.

2. <u>Defendants Illegally Failed to Pay Plaintiffs Any Wages, Either as Required for Tipped Employees Under the Tip Credit, or as Required for All Other Covered Employees, and, as a Result, Must Pay Full Minimum Wage.</u>

The FLSA requires employers to pay all covered employees a minimum wage for each hour worked. 29 U.S.C. § 206. The current minimum wage rate is $7.25 per hour. *Id.* The NCWHA, modeled after the FLSA, requires payment of all owed and promised wages. *See* N.C. Gen. Stat. § 95-25.6; *see also Hedrick v. S. States Coop., Inc.*, 2010 U.S. Dist. LEXIS 104495, at *21 (E.D.N.C. Sep. 29, 2010) (stating that the NCWHA is modeled after the FLSA); *Whitehead v. Sparrow Enter.*, 167 N.C. App. 178, 181, 605 S.E.2d 234, 237 (2004) (same). An exception to the general requirement of

the employer paying $7.25 per hour exists if the employer properly takes a "tip credit" allowance under § 203(m). *See* 29 U.S.C. § 203(m). The "tip credit" allowance is only eligible for employers of "tipped employees," defined as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 C.F.R. § 531.50(b); *cf.* N.C. Gen. Stat. § 95-25.2 (defining "tipped employee" under the NCWHA to include those employees receiving more than $20 a month in tips). Under the "tip credit" allowance, an employer is permitted to count tips received by eligible employees toward the employer's minimum wage obligations with respect to that employee, with a maximum credit claimed for each employee of $5.12 per hour. 29 C.F.R. § 531.59. In other words, under the "tip credit" allowance, an employer must pay tipped employees $2.13 per hour no matter what, but the employer may be exempted from paying the remaining $5.12 per hour if the employee's tips, combined with the employer's direct wages of $2.13 per hour, equal or exceed the federal minimum wage of $7.25 per hour. *See id.*

In order to take the "tip credit" allowance, an employer must meet two additional statutory requirements: (1) the employer must inform the employee of the provisions in § 203(m), and that those provisions were being claimed; and (2) the employer must allow the employee to retain "all tips received by such employee" (notwithstanding valid tip pooling practices). *See* 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b) ("[A]n employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit"); *see also Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 680-81 (D. Md. 2012). "These two additional requirements in [§] 203(m) are strictly construed, and must be satisfied even if the employee received tips at least equivalent to the minimum wage." *Id.* at 681 (citations omitted). It is not sufficient that employees be aware of the tip credit provision; rather, the employer must affirmatively inform employees of the provision and its intention to treat tips as satisfying a part of the employer's minimum wage obligations. *See id.*

When an employer fails to meet any of its obligations under the "tip credit" allowance, including either paying the required $2.13 per hour as described in 29 C.F.R. § 531.59, or satisfying

the two aforementioned requirements under § 203(m), the employer forfeits all benefits under the "tip credit," and must instead pay employees the full minimum wage of $7.25.  *See McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 246 (4th Cir. 2016) ("The clubs paid the dancers no compensation of any kind and afforded them no notice.  They cannot therefore claim the 'tip credit.'"); *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977) ("[I]f the employer does not follow the command of [§ 203(m)], he gets no credit . . .  [T]he conclusion is . . . payment of the applicable minimum wage in full."); *Steele v. Leasing Enters.*, 826 F.3d 237, 245-46 (5th Cir. 2016) (divesting the employer of its tip credit and awarding employees full minimum wage where the employer paid $2.13 per hour, but retained less than 1% in excess of applicable credit card issuer fees); *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979) (holding that employees were entitled to full minimum wage where their employer did not inform them of the tip credit and where the employees retained less than all tips paid to them); *Heng Chan v. Sung Yue Tung Corp.*, 2007 U.S. Dist. LEXIS 7770, at *54 (S.D.N.Y. Feb. 1, 2007) ("Employers who wish to qualify for this credit must comply strictly with these requirements.  If they fail to do so, they must pay the full minimum hourly wage, not the reduced amount permitted when the tip credit is available.").  In sum, for the 203(m) tip credit to apply, an employer must (1) pay employees at lest $2.13 per hour; (2) inform the employee of the provisions in § 203(m) and that they will be compensated accordingly; and (3) permit the employee to retain all tips.  *See* 29 U.S.C. § 203(m).

In this case, Defendants failed to do any of the aforementioned in order to claim the tip credit.  First, Defendants did not pay *any* compensation to Plaintiff.  *See* SUF ¶ 79.  They failed to pay either the $7.25 per hour federal minimum wage *or* the $2.13 per hour required under the "tip credit" provision.  *See id.*; *see also* 29 U.S.C. § 206; 29 C.F.R. § 531.59.  Defendants also failed to pay the promised wages represented in the FLSA and NCWHA posters they agreed to post in all San Jose restaurants, in order to come into compliance with the FLSA.  *See* SUF ¶ 45; *see also* N.C. Gen. Stat. § 95-25.6.

Second, there is no evidence on the record of Defendants informing Plaintiffs that § 203(m) was being used, a direct violation of the FLSA. *See generally* SUF ¶ 81; *see also* 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b) (setting forth the requirement). To the contrary, Defendants explicitly informed Plaintiffs they would only be compensated through tips. *See* SUF ¶¶ 80-82. Indeed, the single source of compensation received by Plaintiffs consisted of tips left by customers—from which Defendants also illegally deducted a percentage of *all* sales from Plaintiffs each day, violating the third requirement for the tip credit to apply. *See* SUF ¶¶83, 87; *see also infra* Section III(D)(3) (discussing Defendants' illegal tip deduction policy).

Since Defendants in this case failed to pay Plaintiffs any wages whatsoever, failed to inform Plaintiffs of the provisions of § 203(m) and their intention to take a "tip credit" allowance, *and* failed to allow Plaintiffs to retain all of their tips, *see generally* SUF ¶¶ 79-90, Defendants are required to pay Plaintiffs the full minimum wage of $7.25 per hour, as provided by Fourth Circuit and other federal jurisprudence. *See McFeeley*, 825 F. 3d at 246; *Richard*, 549 F.2d at 305; *Steele*, 826 F.3d at 245-46; *Barcellona*, 597 F.2d at 467; *Heng Chan*, 2007 U.S. Dist. LEXIS 7770, at *54. Just as the Fourth Circuit held in both *McFeeley* and *Richard*, each with analogous facts of employees only receiving tips, not being informed of § 203(m)'s provisions, and not receiving any wages directly from their employers, Defendants here cannot utilize Plaintiffs' tips[10] as a credit toward minimum wage, and must instead pay the full minimum wage of $7.25 per hour for all applicable hours worked by Plaintiffs. *See McFeeley*, 825 F. 3d at 246; *Richard*, 549 F.2d at 305. Therefore, as a result of Defendants' violation of the FLSA, Plaintiffs are entitled to recover wages at the appropriate rate that they should have received under statutory minimum wage and overtime requirements.

3.  <u>Defendants Illegally Misappropriated Part of Plaintiffs' Tips to Pay Other, Non-Tipped Employees.</u>

---

[10] Indeed, should Defendants attempt to seek a tip credit as to the total hourly wages owed to Plaintiff, Defendants will be unable to provide authentic and accurate documentation reflecting all tips earned. *See supra* Section III(C)(1).

*Defendants Violated FLSA by Misappropriating Part of Plaintiffs' Tips, and Defendants Cannot Succeed on a Claim That This Practice Constituted a Valid Tip Pool.*

As discussed, under the FLSA, employers must pay the full statutory minimum wage of $7.25 per hour, 29 U.S.C. § 206, or, alternatively, they may opt for the "tip credit" allowance, requiring them to pay only $2.13 per hour (so long as the aggregate of wages and tips equal or exceed minimum wage). 29 C.F.R. § 531.59. If an employer opts to use the "tip credit" allowance, it is a requirement that "all tips received by [the] employee have been retained by the employee." 29 U.S.C. § 203(m). Further, regardless of whether an employer takes the "tip credit" allowance, when an employer requires one employee to remit a portion of earned tips to another employee, that act is akin to the employer taking the money for itself – thereby lowering the employee's wages, possibly below and in violation of minimum wage requirements. *See* 29 C.F.R. § 531.35 ("The wage requirements of the Act will not be met where the employee 'kicks-back' [wages] directly or indirectly to the employer or to another person for the employer's benefit . . . ."); *see also Shultz v. Hinojosa*, 432 F.2d 259, 267 (5th Cir. 1970) (finding that the employers' mandatory deductions brought employees' pay below minimum wage, violating the FLSA); *Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 257 (S.D.N.Y. 2008) (holding that an employee's wages were deducted where the employee was required to pay funds to kitchen staff employees).

The sole exception to the requirement that employees retain all earned tips, available only if an employer *validly* uses the "tip credit" allowance, is where there is a lawful tip pool, wherein employees split tips with other employees who customarily receive tips. 29 U.S.C. § 203(m). Further, "an employer may deduct a fixed composite amount from credit card tips, as long as the composite amount does not exceed the total expenditures on credit card issuer fees, and still maintain a tip credit." *Rivera v. Mo's Fisherman Exch., Inc.*, 2018 WL 2020423, at *15 (D. Md. May 1, 2018) (*quoting Steele*, 826 F.3d at 237 ). In other words, "the *employer must prove* that its total deductions from employees' tip incomes did not enrich it, but instead, *at most*, merely restored it to the approximate financial posture it would have occupied had it not collected tips via credit card." *Id.* (*quoting Myers v. Copper Cellar*

*Corp.*, 192 F.3d 546, 554 (6th Cir. 1999)).  The USDOL Field Operations Handbook further clarifies that where a credit card company charges a 3% processing fee on all sales *charged* to its credit service, the employer may pay the employee 97% of the tips without violating the FLSA.  *See* USDOL Field Operations Handbook, § 30d05(a).  In other words, an employer may deduct 3% of tips received via credit card payments *only* where such calculation is based on tips charged, *not total sales*, and *only if* such deductions do not exceed the transactional fee.

During the relevant time period, Defendants never paid Plaintiffs (servers) direct wages of $2.13 per hour or operated a tip pool.  *See* SUF ¶¶ 79-80, 82-83.  Instead, Plaintiffs were compensated only with the tips they received from customers, *see* SUF ¶ 83, and Defendants deducted a portion of Plaintiffs' earned tips.  *See* SUF ¶¶ 87, 90.  Specifically, Plaintiffs were required to remit a percentage of the total number of credit card *and* cash sales per day to be paid directly to Defendants.  *See* SUF ¶¶ 87-88.  If Plaintiffs did not receive enough tips during a shift to cover the mandatory, daily deductions, Plaintiffs were required to pay Defendants from their personal money.  *See* SUF ¶ 93.  While Defendants informed Plaintiffs such deductions were to cover the salaries of busboys and chip runners, no evidence exists to show the busboys or chip runners received the deductions paid by Plaintiffs.  *See* SUF ¶ 89.  Nevertheless, as a result of Defendants' practice of deducting a percentage of *all sales* from Plaintiffs' tips, and even at times Plaintiffs' personal money, Defendants deductions from plaintiffs' tips was higher than any charge Defendants would have incurred for any credit card processing fee.  Further evidencing Defendants disregard for Plaintiffs' right to retain tips, as required under the FLSA, Defendants required Plaintiffs to pay a fixed rate from her tips to each bartender each shift.  *See* SUF ¶ 90.  Such a deduction, in light of Defendants' failure to compensate Plaintiffs *any hourly wages*, does not qualify as a valid tip pool arrangement, and as such must be remitted to Plaintiff.  *See McFeeley*, 825 F.3d at 246.  Even if Defendants had properly paid Plaintiffs $2.13 per hour pursuant to the 203(m) tip credit, (though the evidence clearly shows Defendants did not pay any hourly wages), like the employees in *Shultz* and *Ke*, the daily deductions from Plaintiffs' pay subtracted from earned tips, which

lowered Plaintiffs' hourly rate to even further below the minimum wage. *See Shultz*, 432 F.2d at 267; *Ke*, 595 F. Supp. 2d at 257; *see also supra* Section III(D)(2).

Ultimately, the deductions taken from Plaintiffs' earned tips were unlawful. The evidence demonstrates that Plaintiffs were subjected to daily deductions of a fixed percentage of all credit card and cash purchases, regardless of whether a customer paid in cash or with a credit card and regardless of whether Defendants paid a processing fee. Moreover, the 3% deduction Defendants required Plaintiffs pay directly to Defendants was calculated based on the total sales for the restaurant rather than simply 3% of the total tips charged. Consequently, the mandatory, unlawful deductions taken from Plaintiffs' tips by Defendants invalidates any asserted argument that Defendants operated a legitimate tip pool.

As such, the "tip credit" does not apply in this case for the reasons outlined above. *See supra* Section III(D)(2) (explaining that Defendants did not pay Plaintiffs $2.13 per hour, did not explain the application of § 203(m), and did not allow Plaintiffs to keep all tips earned). Accordingly, Defendants cannot claim that they took the tip credit under § 203(m) and must compensate Plaintiffs at the appropriate rate for all hours worked, and return all tips unlawfully remitted.

> ii.  *Defendants Violated the NCWHA by Misappropriating and Illegally Deducting Part of Plaintiffs' Tips.*

The NCWHA requires payment of all owed and promised wages. *See* N.C. Gen. Stat. § 95-25.6. The NCWHA also contains certain restrictions and requirements regarding when an employer is permitted to withhold and deduct from an employee's wages. *See generally* N.C. Gen. Stat. § 95-25.8. For example, when the amount of the proposed deduction is known and agreed upon in advance, the employer must receive written authorization from the affected employee that (i) is signed on or prior to each payday for each pay period; (ii) indicates the reason for the deduction; and (iii) states the actual dollar amount or percentage of wages that is being deducted. *Id.* When the amount of the proposed deduction is not known and agreed upon in advance, the employer must receive written authorization

from the employee that again is both signed and contains the reason for the deduction, but the employee must also (i) receive advance written notice of the actual amount to be deducted; (ii) receive written notice of their right to withdraw the authorization, and (iii) be given a reasonable opportunity to withdraw the authorization in writing. *Id.*; *see also Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 709-10 (E.D.N.C. 2009) (finding an employer in violation of § 95-25.8 when it "substantially complied" with the statute's requirements, but did not comply with all technical requirements of the statute); *Strickland v. MICA Information Systems*, 800 F. Supp. 1320, 1325 (M.D.N.C. 1992) (denying an employer's motion for summary judgment where the employee never authorized pay deductions in a signed writing, and the employer presented no evidence to the contrary).

In this case, Defendants did not pay Plaintiffs any wages, including any minimum wages, and only enabled Plaintiffs to be compensated with tips—subject to daily deductions paid directly to Defendants. *See* SUF ¶¶ 79, 83, 87-88, 90. Defendants therein failed to pay the promised wages represented in the FLSA and NCWHA posters they promised to have kept in the San Jose restaurants, as part of their agreement to come into compliance with the USDOL. *See* SUF ¶ 45; *see also* N.C. Gen. Stat. § 95-25.6.

Defendants also violated the deduction provisions specific to the NCWHA. *See generally* N.C. Gen. Stat. § 95-25.8. Nothing in the record indicates that Defendants received any signed authorization from Plaintiffs permitting the daily deduction, noting the deduction's purpose, or noting the amount to be deducted, as the NCWHA requires. *See* N.C. Gen. Stat. § 95-25.6; *see generally* SUF ¶¶ 91, 92. Likewise, there is no indication that Plaintiffs received any reasonable opportunity to withdraw written authorization, as such authorization did not even exist. *See generally id.* Since Defendants failed to pay promised wages, and since their deduction practices were in direct violation of the requirements of the NCWHA, their daily deductions were unlawful, and Plaintiffs are entitled to reimbursement. *See generally* N.C. Gen. Stat. § 95-25.6; N.C. Gen. Stat. § 95-25.8; *Garcia*, 644 F. Supp. at 709-10

(finding an employer in violation of § 95-25.8 when it "substantially complied" with the statute's requirements, but did not comply with all "technical requirements" of the statute).

4.    Defendants Illegally Failed to Pay Plaintiffs Overtime Wages, as Required Under the FLSA and NCWHA.

The FLSA requires employers to compensate non-exempt employees working in excess of forty (40) hours per week at a rate of one and one-half times the employee's regular hourly wage. *See* 29 U.S.C. § 207 (providing the requirement under the FLSA). The NCWHA requires payment of all owed and promised wages. *See* N.C. Gen. Stat. § 95-25.6. An employer claiming that an employee qualifies for exemption of the FLSA's overtime requirements bears the burden of proof and must prove such by clear and convincing evidence. *Williams v. Genex Servs., LLC*, 809 F.3d 103, 109 (4th Cir. 2015). Congress enacted this provision of the FLSA in part to compensate employees "for the burden of a long workweek." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). Further, when an employer fails to keep proper records, an employee's burden of proving improper overtime compensation can be met by simply establishing a "just and reasonable inference," for which recollection alone is sufficient. *See Mt. Clemens Pottery*, 328 U.S. at 687-88; *Mumbower*, 526 F.2d at 1186; *Marroquin*, 505 F. Supp. 2d at 297; *Turner*, 292 F. Supp. at 748; *see also Martin*, 985 F. 2d at 132; *see generally supra* Section III(D)(1).

In this case, Defendants did not pay Plaintiffs any wages at all, including overtime wages, even though Plaintiffs worked in excess of forty (40) hours per week. *See* SUF ¶¶ 94-98. This pay practice is in direct violation of both the FLSA, which requires overtime pay at time and one-half, and the NCWHA, which requires payment of owed and promised wages. *See* 29 U.S.C. § 207; N.C. Gen. Stat § 95-25.6. Nothing in the record indicates that Defendants have attempted to assert that they are exempt from paying Plaintiffs overtime, for which they would bear the burden of proof. *See Williams*, 809 F.3d at 109. To the extent that Defendants contest that Plaintiffs worked overtime hours, which would entitle Plaintiffs to overtime pay at time and one-half, Defendants have not produced any

veritable evidence or records of hours worked and have admitted to limited knowledge of any hours worked. *See* SUF ¶¶ 57-78. In fact, Defendant Hector Flores even conceded Defendants' knowledge of Plaintiffs' hours worked is limited, since he only visited San Jose sporadically and the various records Defendants have produced for Plaintiffs depict conflicting information. *See* SUF ¶¶ 70-73, 99. As such, and consistent with precedent, Plaintiffs' recollection alone should prove sufficient for the purpose of calculating overtime wages owed. *See Mt. Clemens Pottery*, 328 U.S. at 687-88; *Mumbower*, 526 F.2d at 1186; *Marroquin*, 505 F. Supp. 2d at 297; *Turner*, 292 F. Supp. at 748; *see also Martin*, 985 F. 2d at 132; *see generally supra* Section III(C)(1). Therefore, Plaintiffs are entitled to receive unpaid overtime wages for the overtime hours worked as an employee of Defendants. *See* SUF ¶ 95-99.

**E.    Defendants Acted Willfully, Entitling Plaintiffs to Collect Damages Under a Three (3) Year Statute of Limitations Period.**

1.    Because Defendants Cannot Establish That They Acted in Good Faith, Plaintiffs Are Entitled to Liquidated Damages Under the FLSA and NCWHA.

The FLSA provides that an employer who violates its minimum wage or overtime requirements owes not only unpaid minimum and overtime wages, but also "shall be liable . . . [for] an additional equal amount as liquidated damages." *See* 29 U.S.C. § 216(b). Similarly, the NCWHA requires unpaid amounts due, as well as liquidated damages "in an amount equal to the amount found to be due," for violations of promised and owed wages under N.C. Gen. Stat. § 95-25.6, and for violations of the statute's withholding and deduction requirements under N.C. Gen. Stat. § 95-25.8. *See* N.C. Gen. Stat. § 95-25.22. As the Fourth Circuit explained, the liquidated damages requirement acts as an essential type of penalty for non-compliant employers—if an employer were only liable for unpaid wages and overtime pay, "it might roll the dice by underpaying employees, reasoning all the while it could be no worse off even if the employees eventually prevailed in court." *McFeeley*, 825 F.3d at 245.

While liquidated damages are a matter of right, a court may find a defendant exempted from

the requirement if the defendant is successful in making an affirmative showing of good faith and reasonable grounds for believing its acts or omissions were not a violation of the FLSA. 29 U.S.C. § 260; *see also Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1118 (4th Cir. 1985); *cf.* N.C. Gen. Stat. § 95-25.22 (providing the same under the NCWHA). Courts within the Fourth Circuit have provided that the defense of good faith is a heavy burden that defendants are often unable to prove. *See Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997) ("We have previously interpreted the exemption entailed by § 260 to place a "*plain and substantial burden*" upon the employer to persuade the court that the "failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than [only] a compensatory verdict") (emphasis added); *Richard*, 549 F.2d at 306 (holding that the "limited exception" to escape the payment of liquidated damages places upon the employer a "*plain and substantial burden*" of convincing the court that the employer acted reasonably, in good faith, and that liquidated damages would be inequitable) (emphasis added); *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117, 129 (E.D.N.C. 2011) (same); *see also Lockwood v. Prince George's Cty.*, 2000 U.S. App. LEXIS 15302, at *17 (4th Cir. June 29, 2000) (stating that "the FLSA plainly envisions that liquidated damages . . . are the norm" and affirming the district court's award of liquidated damages where the employer took an "ostrichlike" approach to the FLSA by "remaining blissfully ignorant of FLSA requirements").

Here, Defendants *intentionally* and *deliberately* failed to meet their wage obligations under the FLSA and the NCWHA. *See generally supra* Sections III(D)(2)-(4). Previous to the instant litigation, Defendants settled a collective/class action with substantially similar issues that are present here, *during the relevant time period*, and had findings levied against them by both the U.S. Department of Labor ("USDOL") and the NC Department of Labor ("NCDOL"), again, for nearly identical issues. *See* SUF ¶¶ 57-61, 100-07. Following the DOL investigations, Defendants ostensibly promised to accurately record and properly pay for all hours worked. *See* SUF ¶ 45, 104. In practice, however, not only did this not happen, but Defendant Hector Flores' testimony revealed complete and utter apathy

or simple denial that he had any knowledge of the continued violations by stating that he had no knowledge of anything going on at his restaurants, as he preferred to spend time with his animals. *See* SUF ¶ 103. Ultimately, Defendants' apparent effort to track time and pay for hours worked appears to have been designed to fake compliance with the DOL's 2011 orders and to ensure Plaintiffs worked under the same illegal scheme as before. *See* SUF ¶¶ 57, 67-78, 100-107 ("During my time at both San Jose – Poyner Village and San Jose – Brier Creek, I received no wages for any of my hours worked. My only income came from customers' tips.").

Plaintiffs should therefore be entitled not only to compensatory damages, but liquidated damages in an equal amount. *See* 29 U.S.C. § 216(b); N.C. Gen. Stat. § 95-25.22. Defendants will not be able to affirmatively show good faith and reasonable grounds for believing that their actions were lawful, which might otherwise exempt them from paying liquidated damages. *See* 29 U.S.C. § 260; N.C. Gen. Stat. § 95-25.22. Such an affirmative defense would place a "substantial burden" on Defendants, requiring evidence that liquidated damages would be inequitable. *See Mayhew*, 125 F.3d at 220; *Richard*, 549 F.2d at 306; *Gaxiola*, 776 F. Supp. 2d at 129. Given Defendants' long history of legal and DOL proceedings dealing with exactly the same wage and hour violations this Court has before it, Defendants simply cannot defend their unlawful actions as errors in good faith, and therefore owe Plaintiffs liquidated damages.

2.   Defendants Acted Willfully, Entitling Plaintiffs to Collect Damages Under a Three (3) Year Statute of Limitations Period.

Congress has provided two separate limitations periods for FLSA violations: two (2) years for non-willful violations, and three (3) years for willful violations. 29 U.S.C. § 255(a). For conduct to be considered a willful violation of the FLSA, the employer must either have known or have exhibited reckless disregard as to whether its conduct was prohibited by the statute. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 129 (1988). The test for finding willfulness is not overly rigorous. *Marshall v. Sam Dell's Dodge Corp.*, 451 F. Supp. 294, 305 (N.D.N.Y. 1978). Previous wage and hour

investigations by the Department of Labor provide sufficient grounds for a finding of willfulness, since employers thereafter should know whether their conduct is prohibited by law. See *Herman v. Palo Grp. Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir. 1999) (finding willfulness where the defendant was previously investigated by the Department of Labor); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991) (holding that an employer willfully violated FLSA overtime requirements where it was previously investigated); see also *Williams v. Md. Office Relocators, LLC*, 485 F. Supp. 2d 616, 621 (D. Md. 2007); *In re Food Lion Effective Scheduling Litig.*, 861 F. Supp. 1263, 1275 (E.D.N.C. 1994).

As stated above, Defendants were previously subject to an investigation and penalties by the USDOL and NCDOL for failure to meet their minimum wage and overtime obligations to their employees. *See* SUF ¶¶ 57-61, 100-107. Like courts have provided in *Herman*, *Dole*, *Md. Office Relocators*, and *In re Food Lion*, such investigations justify a finding of willfulness. *See Herman*, 183 F.3d at 474; *Dole*, 942 F.2d at 967; *Md. Office Relocators*, 485 F. Supp. 2d at 621; *In re Food Lion*, 861 F. Supp. at 1275. Further, Defendants have stated that they knew that the NCWHA contains some sort of minimum wage requirement, indicating knowledge or reckless disregard of the law, since they ultimately did not pay minimum wage (or any wage). *See* SUF ¶¶ 79-85. Similarly, Defendants allegedly kept posters of the FLSA and NCWHA requirements in their restaurants for all employees to see, despite failing to follow the laws' provisions themselves. *See* SUF ¶ 45 (stating that Defendants promised to comply prospectively with labor requirements in a uniform fashion across all Restaurant Defendants' locations after USDOL investigation). For these reasons, Defendants' actions should support a finding of willfulness, permitting Plaintiffs to recover damages for a three (3) year period.

IV. **CONCLUSION**

On the basis of the foregoing, Plaintiff respectfully requests that Plaintiff's Motion for Summary Judgment be granted.

Respectfully submitted February 11, 2020.

/s/ Gilda Adriana Hernandez
Gilda A. Hernandez (NCSB No. 36812)
Charlotte C. Smith (NCSB No. 53616)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Dr. Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that on February 11, 2020 a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** was delivered via the CM/ECF system to the following:

Henry W. Jones, Jr.
Lori Peoples Jones
**JORDAN PRICE WALL GRAY JONES & CARLTON, PLLC**
P. O. Box 10669
1951 Clark Ave.
Raleigh, NC 27604
919-828-2501
919-834-8447 (fax)
hjones@jordanprice.com
ljones@jordanprice.com

James Larry Stine
**WIMBERLY, LAWSON, STECKEL, SCHNEIDER & STINE, P.C.**
3400 Peachtree Rd., NE
Suite 400, Lenox Towers
Atlanta, GA 30326
404-365-0900
404-261-3707 (fax)
jls@wimlaw.com

Albert J. Bolet (GA Bar No. 065785)
Hipolito M. Goico (GA Bar No. 299195)
**GOICO & BOLET, P.C.**
2021 North Druid Hills Road, N.E.
Suite 200
Brookhaven, GA 30329
404-320-3456
404-320-3026 (fax)
abolet@goicobolet.com
hbolet@goicobolet.com

*Attorneys for Defendants*

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Charlotte C. Smith (NCSB No. 53616)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Dr. Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853

ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

*Attorneys for Plaintiff*