IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-219-D

LAURA PONTONES, )
)
Plaintiff, )
)
v. )          **ORDER**
)
SAN JOSE RESTAURANT )
INCORPORATED, et al., )
)
Defendants. )

On May 17, 2018, Laura Pontones ("Pontones" or "plaintiff"), on behalf of herself and

similarly situated plaintiffs, filed a complaint against a group of individuals and Mexican restaurants

(collectively, "defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.

("FLSA"), and the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1, et seq.

("NCWHA") [D.E. 1]. On June 11, 2018, Pontones amended her complaint [D.E. 7]. On October

31, 2019, the court granted Pontones's motion for conditional class certification [D.E. 77].

On February 11, 2020, Pontones moved for summary judgment on all claims [D.E. 99] and

filed documents in support [D.E. 100, 101, 102]. On March 6, 2020, defendants responded in

opposition [D.E. 114]. On March 24, 2020, Pontones replied [D.E. 124].

On February 11, 2020, defendants moved for summary judgment on all claims [D.E. 103]

and filed documents in support [D.E. 104, 105]. On March 6, 2020, Pontones responded in

opposition [D.E. 117]. On March 24, 2020, defendants replied [D.E. 126].

On February 11, 2020, defendants moved for decertification [D.E. 106] and filed a memorandum in support [D.E. 107]. On March 6, 2020, Pontones responded in opposition [D.E. 118]. On March 24, 2020, defendants replied [D.E. 125].

On March 17, 2020, Pontones moved to strike affidavits of the restaurant defendants' store managers and corresponding exhibits [D.E. 119] and filed a memorandum in support [D.E. 120]. On March 27, 2020, defendants responded in opposition [D.E. 127]. On April 9, 2020, Pontones replied [D.E. 130].

On June 1, 2020, Pontones moved for equitable tolling [D.E. 136] and filed a memorandum in support [D.E. 137]. On June 18, 2020, defendants responded in opposition [D.E. 145]. On July 2, 2020, Pontones replied [D.E. 148].

On June 19, 2020, defendants moved to strike three declarations of opt-in plaintiffs and for sanctions [D.E. 146] and filed a memorandum in support [D.E. 147]. On July 10, 2020, Pontones responded in opposition [D.E. 149]. On July 24, 2020, defendants replied [D.E. 151].

On August 7, 2020, Pontones moved for sanctions [D.E. 155] and filed a memorandum in support [D.E. 156]. On August 28, 2020, defendants responded in opposition [D.E. 161]. On September 11, 2020, Pontones replied [D.E. 165].

As explained below, the court denies Pontones's motion for summary judgment, denies defendants' motion for summary judgment, denies defendants' motion for decertification, grants in part and denies in part Pontones's motion to strike, denies Pontones's motion for equitable tolling, grants in part and denies in part defendants' motion to strike and for sanctions, and denies Pontones's motion for sanctions.

2

I.

A.

Pursuant to Federal Rule of Civil Procedure 56(e), Pontones moves to strike affidavits and associated exhibits that defendants submitted with their motion for summary judgment from restaurant defendants' store managers and individuals associated with accounting firms for restaurant defendants. See Fed. R. Civ. P. 56(e); [D.E. 120] 6–9; [D.E. 105-1] 3–130. Specifically, Pontones seeks to exclude the affidavits and exhibits to tabs 1 to 14 of defendants' motion for summary judgment concerning receipts from restaurant defendants' point of sale computer systems, employee W-2 forms, and earning statements employees signed. See [D.E. 120] 11–12, 17; [D.E. 130] 7–9; [D.E. 105-1]; [D.E. 115-1]. Pontones makes two arguments in support: (1) the exhibits to tabs 1 to 14 of defendants' appendix are documents that defendants failed to disclose in discovery despite Pontones's requests for the documents at issue, and the exhibits are not in the record, both in violation of Federal Rules of Civil Procedure 26(a)(1)(A)(ii), 37(c)(1), 56(c)(1)(A), and 56(e); and (2) the affidavits at tabs 1 to 14 of defendants' appendix rely upon inadmissible evidence, false statements, or facts of which the affiant lacks personal knowledge in violation of Federal Rules of Civil Procedure 56(c)(4) and 56(e) and Federal Rule of Evidence 403. See [D.E. 120] 9, 12–26.

As for Pontones's arguments concerning defendants' exhibits, under Rule 26(a)(1), each party must provide "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). A party must supplement a disclosure under Rule

3

26(a) "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "If a party fails to [timely] provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The court has "broad discretion" to determine whether an untimely disclosure is substantially justified or harmless. Hill v. Coggins, 867 F.3d 499, 507 (4th Cir. 2017) (quotation omitted); see Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014); S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003). In determining whether to exclude untimely disclosure of documents, courts consider five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." S. States Rack & Fixture, 867 F.3d at 597. The court has broad discretion to select the appropriate remedy in light of the totality of the circumstances. See id. at 595; Fed. R. Civ. P. 37(c)(1). Furthermore, "[t]he burden of establishing [the Southern States] factors lies with the nondisclosing party." Wilkins, 751 F.3d at 222.

As for the first factor, defendants surprised Pontones with their disclosure of the documents attached as exhibits to tabs 1 to 14 of defendants' appendix in support of its motion for summary judgment. Defendants did not produce the documents in their initial disclosures, their supplemental

4

disclosures following Pontones's motion to compel, or their disclosures preceding the court-hosted settlement conference. Moreover, Pontones requested the documents in discovery, and defendants essentially concede that they did not produce the documents in response to Pontones's request.

As for the second factor, by producing the documents at the summary judgment stage, defendants ensured that Pontones could not rely on the documents when she filed her motion for summary judgment. The court would have to order a second round of summary judgment briefing to cure this surprise, thereby delaying resolution of this case and increasing the cost of litigation to both parties and wasting this court's judicial resources.

As for the third factor, allowing the documents into the record would not disrupt a trial in this case. As for the fourth factor, the documents are critical evidence to Pontones's FLSA and NCWHA claims. By producing the documents in conjunction with their motion for summary judgment, defendants implicitly concede the importance of such financial and time-keeping documents in this case.

As for the fifth factor, defendants' explanation for failing to disclose the documents is not satisfactory. Essentially, defendants assert that they disclosed all documents Pontones needed to move for summary judgment, and that the documents only concern potential damages if she is successful on her FLSA and NCWHA claims. See [D.E. 127] 8. Defendants, however, do not explain why the documents are not required disclosures under Rule 26(a). Likewise, defendants do not explain why they failed to disclose the documents despite Pontones's repeated requests.

Having reviewed the five factors, the factors weigh in Pontones's favor. See Hill, 867 F.3d at 507; Wilkins, 751 F.3d at 222; S. States Rack & Fixture, 318 F.3d at 597. Accordingly, the court

5

grants Pontones's motion to strike documents attached as exhibits to tabs 1 to 14 of defendants' appendix to their statement of material facts in support of their motion for summary judgment.

As for Pontones' arguments concerning defendants' affidavits, Rule 56(e) provides remedies a court may employ if a party fails to support or address a fact when arguing for or against summary judgment. See, e.g., Fed. R. Civ. P. 56(e); Blackmon v. G.UB.MK Constructors, No. 7:14-CV-258-D, 2016 WL 8674646, at *2 (E.D.N.C. Nov. 11, 2016) (unpublished). However, Rule 56(e) does not address the form or content of affidavits. See Velasquez v. Salsas & Beer Rest., Inc., 5:15-CV-146-D, 2017 WL 4322814, at *6 (E.D.N.C. Sept. 28, 2017) (unpublished).[1] Thus, Rule 56(e) does not support Pontones's arguments.

As for Pontones's arguments under Federal Rule of Evidence 403, Rule 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Pontones does not argue that the affidavits are not probative. Rather, Pontones argues that the affidavits would confuse the jury because some of the affiants' statements allegedly contradict "[d]efendants' own payroll records, sworn statements by servers themselves, both the NCDOL and the USDOL, independently, and admissions by [d]efendant Hector Flores." [D.E. 120] 22. Assuming without deciding that such a contradiction exists, Pontones's argument concerns impeachment, not prejudice. See, e.g., Gordon v. United States, 344 U.S. 414, 420–21 (1953). Alternatively, the alleged prejudice does not substantially outweigh the affidavits' probative value. The affiants provide testimony concerning

---

[1] Before an amendment to Rule 56 in 2010, subsection (e) contained rules regarding the form of affidavits. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

Case 5:18-cv-00219-D   Document 166   Filed 11/02/20   Page 6 of 33

the operations and policies at the applicable restaurant defendants. The affiants are responsible for administering those operations and policies, and those operations and policies gave rise to Pontones's FLSA and NCWHA claims. Moreover, a jury can, as it often does, resolve any contradiction Pontones may elicit concerning affiants' testimony. Accordingly, the court denies Pontones's motion to strike the affidavits at issue.

B.

Defendants move to strike as untimely the declarations of opt-in plaintiffs Angel Berber, Olivia Pineda Owens, and Sandy Johnson. See [D.E. 146]; see also [D.E. 141, 142, 143]. In support, defendants cite the court's scheduling order and the Federal Rules of Civil Procedure.

The scheduling order set numerous deadlines for the parties. Dispositive motions were due on February 7, 2020. See [D.E. 42] 1. On November 19, 2018, the parties jointly moved to extend the deadline to complete discovery. See [D.E. 43]. On November 20, 2018, the court granted the parties' motion, and extended the deadline for discovery to February 15, 2019. See [D.E. 44]. On December 4, 2019, Pontones moved to extend the deadline for the parties to submit a proposed notice to class members. See [D.E. 82]. On the same date, the court granted Pontones's motion, and extended the deadline to file proposed notice until January 31, 2020. See [D.E. 83]. On January 31, 2020, the parties filed a joint motion to extend by two days the deadline to file a proposed notice to class members. See [D.E. 93]. On February 6, 2020, the parties jointly moved to extend the deadline for filing dispositive motions. See [D.E. 96]. On February 10, 2020, the court granted the parties' motion to extend the dispositive motions deadline and the deadline to file proposed notice, and extended the deadline to file dispositive motions to February 11, 2020. See [D.E. 97, 98]. On

7

February 11, 2020, the parties cross-moved for summary judgment. See [D.E. 99, 103]. On June

12, 2020, Pontones filed the declarations of opt-in plaintiffs Angel Berber and Olivia Pineda Owens.

See [D.E. 141, 142]. On June 15, 2020, Pontones filed the declaration of opt-in plaintiff Sandy

Johnson. See [D.E. 143]. Pontones's filings state that the declarations are in support of her motion

for summary judgment. See [D.E. 141, 142, 143]. Pontones did not explain why she filed the

declarations over four months after dispositive motions were due, and did not move this court to

consider the declarations in conjunction with her motion for summary judgment.

Under Federal Rule of Civil Procedure 56(c), a party moving for summary judgment may

support its argument by "citing to particular parts of materials in the record." Fed. R. Civ. P.

56(c)(1)(A). Additionally, "[t]he court need consider only the cited materials, but it may consider

other materials in the record." Fed. R. Civ. P. 56(c)(3). Generally, a party must serve a declaration

in support of a motion with the motion. See Fed. R. Civ. P. 6(c)(2). Under Federal Rule of Civil

Procedure 6(b), however, the court may consider an untimely declaration if the proponent

demonstrates good cause for the late filing under two specific circumstances. See Fed. R. Civ. P.

6(b). First, the court may act to consider an untimely declaration "with or without motion or notice"

if a party requests the court to so act before the deadline for filing the declaration passes. See Fed.

R. Civ. P. 6(b)(1)(A). Second, if the deadline for filing has passed, the proponent must ask the court

to consider the declaration and the proponent must demonstrate good cause and excusable neglect

for the late filing. See Fed. R. Civ. P. 6(b)(1)(B); Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871,

895–97 (1990). Moreover, the court has broad discretion concerning whether the proponent of the

late-filed declaration demonstrates good cause or excusable neglect. See Lujan, 497 U.S. at 895–97;

8

B&J Enters., Ltd. v. Giordano, 329 F. App'x 411, 415 (4th Cir. 2009) (per curiam) (unpublished); Lovelace v. Lee, 472 F.3d 174, 203–04 (4th Cir. 2006); Orsi v. Kirkwood, 999 F.2d 86, 91–92 (4th Cir. 1993).

As for defendants' motion, Pontones did not move for admission of the declarations of opt-in plaintiffs Angel Berber, Olivia Pineda Owens, and Sandy Johnson. See [D.E. 141, 142, 143]. Rather, she merely filed the declarations and the opt-in plaintiffs' notice forms concerning participation in the conditionally certified FLSA collective action. See id. Additionally, Pontones filed the declarations after the deadline passed. See Fed. R. Civ. P. 6(c)(2). Thus, Pontones fails to satisfy the requirements for the court's consideration of the untimely declarations. See Fed. R. Civ. P. 6(b)(1)(B). Accordingly, the court grants defendants' motion to strike the declarations, and the court will not consider the declarations at summary judgment.

Alternatively, Pontones fails to demonstrate good cause or excusable neglect concerning the declarations. "[I]nadvertence, ignorance of the rules or mistakes construing the rules do not usually constitute 'excusable neglect.'" Thompson v. E.I. DuPont de Nemours & Co., 76 F.3d 530, 533 (4th Cir. 1996); see Symbionics Inc. v. Ortlieb, 432 F. App'x 216, 220 (4th Cir. 2011) (per curiam) (unpublished). Excusable neglect is "not easily demonstrated" and applies "only in the extraordinary cases where injustice would otherwise result." Symbionics, 432 F. App'x at 220 (quotation omitted); Thompson, 76 F.3d at 534. Relevant factors for determining excusable neglect include the danger of prejudice, the length of delay and potential impact, the reason for the delay, whether the delay was within the reasonable control of the movant, and whether the movant acted in good faith. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993); Thompson,

9

76 F.3d at 533. In analyzing excusable neglect, the most important factor is the reason for failing to timely file. See, e.g., Thompson, 76 F.3d at 534.

Pontones argues that she could not have filed the declarations sooner because she only learned of opt-in plaintiffs once the parties sent notice to potential class plaintiffs on May 11, 2020. See [D.E. 149] 10–12. Essentially, Pontones argues that because she was not aware of opt-in plaintiffs, she could not have filed the declarations any sooner than she did. See id.

The court rejects Pontones's argument. As discussed, Pontones did not seek to extend the deadline for filing dispositive motions to obtain declarations from other servers. Instead, Pontones moved for summary judgment based on evidence in the record at the time she filed her motion. Moreover, Pontones's late filing of the declarations was due to an absence of the evidence, not "neglect." Even if the court considered Pontones's late filing a result of her neglect, when she filed the declarations, Pontones did not offer any explanation for the filings or explain to the court why it should consider the declarations in conjunction with her summary judgment motion. Pontones's ultimate explanation in response to defendants' motion to strike comes too late.

To allow Pontones's submission of untimely declarations contravenes the orderly administration of this case and others. On these facts, the court declines to exercise its discretion to allow Pontones to rely on the declarations in conjunction with her motion for summary judgment. See Lujan, 497 U.S. at 895–97; Giordano, 329 F. App'x at 415; Lee, 472 F.3d at 203–04; Kirkwood, 999 F.2d at 91–92. Accordingly, the court grants defendants' motion to strike the declarations and does not consider the declarations concerning the parties' motions for summary judgment.

II.

A.

Pontones resides in Wendell, North Carolina. From October 2016 to January 2017, Pontones worked as a server at Plaza Azteca of Raleigh, Inc., d/b/a San Jose Tacos and Tequila ("Plaza Azteca"). From January to April 2017, and again from July to August 2017, Pontones worked as a server at San Jose Mexican Restaurant of Raleigh Inc. ("Poyner Village"). See Pontones Decl. [D.E. 67-5] ¶ 1. Opt-in plaintiff Oscar Eduardo Torres ("Torres") worked as a server at Poyner Village from January to November 2016, and at San Jose Wakefield, Inc. d/b/a San Jose Tacos and Tequila ("Wakefield") from November 2016 to June 2018. See Torres Decl. [D.E. 74] ¶ 1. The nine defendant restaurants at which Pontones or Torres did not work are located throughout North Carolina. See Am. Compl. [D.E. 7] ¶¶ 17–29. Each defendant restaurant serves Mexican cuisine, and exceeded $500,000 in annual gross volume of sales for each year in the relevant period. See [D.E. 67-3]; Hector Flores Dep. [D.E. 67-2] 25–26; [D.E. 55] 10. Various restaurant defendants appear on websites that defendants operate. See Ex. B [D.E. 102-2]. Additionally, each restaurant defendant uses an identical employee handbook. See [D.E. 116-2]. Defendant restaurants concede that each is a "covered enterprise" under the FLSA. See [D.E. 55] 10.

The individual defendants hold various positions at some of the restaurant defendants. Individual defendant Hector Flores is the President of defendant San Jose Restaurant, Inc., Vice President and Secretary of defendant San Jose Management, Inc., Secretary of defendant San Jose Mexican Restaurant of Elizabethtown, Inc., Secretary of defendant San Jose Mexican Restaurant of N.C. Inc., Secretary of defendant San Jose Mexican Restaurant of Pembroke, NC, Inc., President of

11

defendant Poyner Village, Treasurer of defendant San Jose Mexican Restaurant of Shallotte, Inc., President of defendant San Jose of Rocky Mount #2 Inc., President of defendant San Jose of Zebulon, Inc., and President of defendant San Jose of Roanoke Rapids, Inc.

Hector Flores testified that a store manager operates each individual restaurant defendant, and the store managers operate the different San Jose locations with little oversight from the owners. See Hector Flores Dep. 10, 12–13, 28. He also admitted that before the time period applicable to this case the United States Department of Labor ("USDOL") and North Carolina Department of Labor ("NCDOL") had investigated certain restaurant defendants and found that those restaurants failed to pay servers any wages besides tips, which resulted in minimum wage and overtime violations. See id. at 15. Hector Flores, however, did not know what policies and practices existed at the restaurants. See id. at 27, 29, 37–38. Moreover, he did not know what the FLSA or NCWHA required. See id. at 13, 30. Hector Flores also testified that he personally had done nothing to remedy the alleged violations at the restaurant defendants that USDOL and NCDOL investigated, and that the managers were responsible for ensuring compliance. See id. at 40.

Individual defendant Alberto Flores is the Vice President of defendant San Jose Restaurant, Inc., Vice President of defendant San Jose Mexican Restaurant of Pembroke, NC, Inc., Vice President of defendant San Jose of Rocky Mount #2 Inc., and Treasurer of defendant San Jose of Roanoke Rapids, Inc. Individual defendant Josue Flores is the Treasurer of defendant San Jose Restaurant, Inc., President of defendant San Jose Management, Inc., Vice President of defendant San Jose Mexican Restaurant of Elizabethtown, Inc., Vice President of defendant Poyner Village, Secretary of defendant San Jose Mexican Restaurant of Shallotte, Inc., Secretary of defendant San

12

Jose of Rocky Mount #2 Inc., Vice President of defendant San Jose of Zebulon, Inc., and President of Plaza Azteca.

Individual defendant Jose Perez is the Vice President of defendant San Jose Mexican Restaurant #2 of Lumberton, Inc., and Vice President of defendant San Jose Mexican Restaurant of N.C. Inc. Individual defendant Vicente Perez is the Secretary of defendant San Jose Mexican Restaurant #2 of Lumberton, Inc. Individual defendant Pablo Meza is the Treasurer of defendant San Jose Mexican Restaurant of Elizabethtown, Inc.

Individual defendant Edgar Flores[2] is President of defendant San Jose Mexican Restaurant of Elizabethtown, Inc., President of defendant San Jose Mexican Restaurant of N.C. Inc., President of defendant San Jose Mexican Restaurant of Shallotte, Inc., Treasurer of defendant San Jose of Rocky Mount #2 Inc., vice president of defendant San Jose of Roanoke Rapids, Inc., President of defendant San Jose Mexican Restaurant #2 of Lumberton, Inc., and President of defendant San Jose Mexican Restaurant of Pembroke, NC, Inc. See Am. Compl. ¶¶ 31–38; [D.E. 68-1] 9–10; Hector Flores Dep. 6–14.

Restaurant defendants are owned by individual defendants and other individuals not party to this litigation. Ownership of San Jose Mexican Restaurant Elizabethtown, Inc., is divided among Edgar Flores, Hector Flores, Josue Flores, Fernando Ayala (non-party), Pablo Meza, and Alberto Flores. See [D.E. 68-1] 11. Ownership of San Jose Mexican Restaurant of N.C., Inc., is divided among Edgar Flores, Hector Flores, Alberto Flores, Jose Perez, and Vicente Perez. See id. Edgar

---

[2] "Edgardo Flores" and "Edgar Flores" are the same individual. See [D.E. 105-1] 142; Hector Flores Dep. 21.

Flores owns San Jose Mexican Restaurant No. 2 of Lumberton, Inc. See id. Ownership of San Jose Mexican Restaurant of Pembroke, Inc., is divided among Edgar Flores, Alberto Flores, Hector Flores, and Josue Flores. See id. at 11–12. Ownership of Poyner Village is divided among Josue Flores, Ruben Leon (non-party), Hector Flores, Fernando Ayala (non-party), and Matilde Onate (non-party). See id. at 12. Ownership of San Jose of Roanoke Rapids, Inc., is divided among Alberto Flores, Hector Flores, Erica Alvarez (non-party), and Alberto C. Flores (non-party).[3] See id. Josue Flores owns San Jose Mexican Restaurant of Shallotte, Inc. See id. Ownership of San Jose Restaurant, Inc., is divided among Alberto Flores, Hector Flores, and Josue Flores. See id. Ownership of San Jose of Zebulon, Inc., is divided among Josue Flores and Fernando Ayala (non-party). See id. Ownership of Wakefield is divided among Ruben Leon (non-party), Josue Flores, and Fernando Ayala (non-party). See id. at 13. Ownership of Plaza Azteca is divided among Josue Flores, Hector Flores, and Stefani Barahona (non-party). See id. Ownership of San Jose of Rocky Mount #2, Inc., d/b/a San Jose Tacos and Tequila is divided among Hector Flores and Alberto Flores. See id.; see also [D.E. 68-2]. As for the restaurants at which Pontones and Torres worked, Edgar Flores, Jose Perez, Vincente Perez, and Pablo Meza did not have ownership interest in those restaurants. See [D.E. 68-1] 11–13. Some, but not all, individual restaurant owners are relatives. See Hector Flores Dep. 5–17.

The restaurant defendants employee three accounting firms. See [D.E. 105-1] 115–30. One of the accounting firms, Buena Vista Business Consulting, Inc., advised four restaurant defendants to install a "point of sale" ("POS") computer system at the restaurants. See id. at 123. The POS

---

[3] The parties did not clarify this individual's relationship, if any, to individual defendant Alberto Flores.

computer system serves as a cash register, credit card processor, time management system that records the beginning and end of an employee's work day, inventory control, and gift card management. See id. at 123–24. By 2016, all restaurant defendants had installed a POS computer system. See id. at 5, 14, 20, 26, 39, 49, 61, 74, 80, 92–93, 105. The restaurant defendants' managers send POS computer system data to the respective accounting firms so that the firms can prepare payroll. See id. at 7, 15, 21–22, 28, 41, 51, 63, 74, 82, 94, 107. After calculating payroll, individual restaurant defendants separately send funds to the respective accounting firms to cover payroll checks issued to employees. The accounting firms also file employee tax documents including, inter alia, Forms W-2, 941, and W-3. See id. at 118–19, 123, 129. The server's payroll checks are "frequently" $0.00 after relevant taxes are subtracted from gross wages. See id. at 124–25, 130; see also id. at 117–18. The store managers state that each restaurant defendant, including Plaza Azteca, Poyner Village, and Wakefield, "pays its servers an hourly rate of pay of no less than $2.13 for the first forty hours worked per work week, and no less than $5.76 overtime rate for any hours worked in excess of forty hours." Id. at 6; see id. at 15, 21, 27, 40, 50, 62, 73, 81, 93, 106.

Pontones seeks to represent a class composed of servers at each of those restaurants. See Order [D.E. 77]. Pontones's responsibilities as a server included taking customer orders, delivering those orders, cleaning tables, taking and processing payments, and maintenance tasks. See Am. Compl. ¶ 48. Some servers transferred to and from various restaurant defendants. See Pontones Decl. ¶ 7; See Torres Decl. ¶ 10. The restaurants at which Pontones and Torres worked had a POS computer system. At those restaurants, servers had to record when they began work, but did not have to record when the server stopped working. See Pontones Decl. ¶ 3; Torres Decl. ¶ 4.

15

At two defendant restaurants, the store manager discussed with a server his or her failure to record time in or out of work, and agreed with the server on how the server's time should be adjusted. See [D.E. 105-1] 26, 39. Pontones and Torres did not work at those restaurants. See id.

Pontones and Torres worked more than 40 hours per week. See Pontones Decl. ¶ 2; Torres Decl. ¶ 3. Specifically, Pontones worked 5 days per week for 7 to 12 hours per day at Plaza Azteca, and 5 days per week for 12 hours per day at Poyner Village. See Pontones Decl. ¶ 2. For example, POS records from Poyner Village show that for the two-week period from August 6 to August 19, 2017, Pontones recorded 72.71 regular hours and 8.46 overtime hours. See [D.E. 68-8] 2. Torres worked 6 days per week for 11 to 12 hours per day. See Torres Decl. ¶ 3.

Servers at Pontones's and Torres's restaurants used the POS computer system to enter customer transactions and to "reconcile their sales and tips" when finished working. Servers were able to print documents from the POS computer system detailing the server's sales, transactions, credit card tips, and a 3% deduction of the server's food and beverage purchases and any deficiency concerning the 3% deduction. See [D.E. 105-1] 15–16, 21–22, 106–07. While working as servers, Torres and Pontones allege that their income came only from customer tips (i.e., neither Torres nor Pontones regularly received, or ever received, a cash wage per hour worked). See Pontones Decl. ¶ 5; Torres Decl. ¶¶ 3, 5. Specifically, Pontones and Torres state that neither received "any compensation for regular hours or overtime hours worked." Torres Decl. ¶ 10; see Pontones Decl. ¶ 5. However, POS computer system records and pay stub records from Poyner Village reflect that for the two-week period from August 6 to August 19, 2019, Pontones was paid $2.13 per hour,

reported cash tips, and was paid an overtime rate of $3.95 per hour. See [D.E. 68-8] 2; [D.E. 68-3] 8.

Pontones and Torres testified that defendants did not require servers to record tips paid in cash. See Torres Decl. ¶ 4; Pontones Supp. Decl. [D.E. 73] ¶ 2. As for documents concerning wages, Torres received a "few" checks for minimal amounts of cash wages earned and one earning statement, but did not receive a time sheet and did not "regularly receive paystubs." See Torres Decl. ¶¶ 5–7. Additionally, Torres "usually worked" 55 hours or more per week. However, an earning statement from February 6 to 19, 2017, listed 55 hours worked for a two-week period. See id. at ¶ 8; [D.E. 74-1]. Pontones received three checks during her employment. One check was paid at an $8.00 per hour rate, and two checks paid $0.00. Pontones did not receive paystubs while working at Plaza Azteca or Poyner Village. See Pontones Decl. ¶ 7.

At Plaza Azteca, Poyner Village, and Wakefield, servers had to deduct 3% of food and beverage purchases made by cash or credit card. The deducted amounts were paid to defendants, and defendants used the amounts to pay salaries of chip and busboy personnel. See Pontones Decl. ¶ 6; Torres Decl. ¶ 9. The store managers at Plaza Azteca and Poyner Village describe this arrangement as a "tip pool," and the amount paid to chip and busboy personnel as "tip share amount." See [D.E. 105-1] 16, 22. Moreover, the store manager at Plaza Azteca paid the 3% deduction "as tips." Id. at 16. The 3% deduction was not authorized in writing, and neither Pontones nor Torres were provided the opportunity to refuse to pay the deduction. If Pontones or Torres could not pay the deduction amount with their tips, they had to pay the deducted amount with personal funds. See Pontones Decl. ¶ 6; Torres Decl. ¶ 9. Additionally, Pontones paid a "tip out"

17

to bartenders at a flat rate. See Pontones Decl. ¶ 6; [D.E. 105-1] 16, 22. The parties dispute whether the tip pool was required or voluntary. See Pontones Decl. ¶ 6; [D.E. 105-1] 16, 22.

According to Pontones and Torres, they personally observed, worked with, or talked to servers employed at restaurant defendants other than Poyner Village, Plaza Azteca, and Wakefield, and opine that their experiences described above were common among servers at all restaurant defendants. See Pontones Decl. ¶¶ 7–10; Pontones Supp. Decl. ¶¶ 1, 5–6; Torres Decl. ¶¶ 10–13. In response, defendants argue that Pontones's and Torres's statements concerning policies and practices at defendant restaurants other than those at which they worked are "based on inadmissible hearsay," and, alternatively, that Pontones and Torres do not have personal knowledge concerning defendant restaurants other than those at which they worked. See [D.E. 114] 18–22.

The court agrees with defendants. The paragraphs in Pontones's and Torres's declarations cited above lack proper foundation and contain inadmissible hearsay. As for proper foundation, Pontones and Torres state that they "personally observ[ed]" and "work[ed] with" servers at "various restaurant locations," and that those observations and work experiences formed their knowledge concerning restaurant defendants' pay and hourly practices. Pontones Decl. ¶¶ 7–10; see Pontones Supp. Decl. ¶¶ 1, 5–6; Torres Decl. ¶¶ 10–13. Pontones and Torres do not explain how either "observed" that a restaurant defendant, inter alia, did not pay a server $2.13 in hourly wages (or any other payment practice). Nor do they explain how, when, where, and whom they observed working overtime hours.

Additionally, the paragraphs in Pontones's and Torres's declarations cited above are hearsay within hearsay, and do not fall under any exception. Under Federal Rule of Evidence 801, hearsay

Case 5:18-cv-00219-D   Document 166   Filed 11/02/20   Page 18 of 33

is an out-of-court statement (e.g., a "person's oral assertion") offered to prove the truth of the matter asserted therein. See Fed. R. Evid. 801(a), (c). Hearsay within hearsay is inadmissible unless the proponent of the testimony demonstrates that each statement satisfies a hearsay exception. See Fed. R. Evid. 805. Pontones and Torres state that they individually "talk[ed] to" other servers, and that those other servers confirmed that the practices and policies Pontones and Torres experienced while working at respective restaurant defendants were consistent with "various" other restaurant defendants. Pontones Decl. ¶¶ 7–10; see Pontones Supp. Decl. ¶¶ 1, 5–6; Torres Decl. ¶¶ 10–13. The statements of unidentified servers to whom Pontones and Torres talked are hearsay without an exception. Indeed, Pontones essentially concedes that point. See [D.E. 124] 11.

In opposition, Pontones argues that the court can consider the paragraphs in Pontones's and Torres's declarations and cites United States Department of Housing and Urban Development v. Cost Control Marketing & Sales Management, 64 F.3d 920 (4th Cir. 1995). See [D.E. 124] 11. The court rejects the argument. In Cost Control, the Fourth Circuit held that sufficient admissible evidence provided proper foundation for a declaration concerning damages. See Cost Control, 64 F.3d at 926–27. Not so here. Pontones fails to identify any admissible evidence to support the statements in the declaration paragraphs at issue. Accordingly, the court will not consider the substance of paragraphs 7 through 10 of Pontones's declaration, paragraphs 10 through 13 of Torres's declaration, and paragraphs 1, 5, or 6 of Pontones's supplemental declaration in deciding the parties' summary judgment motions and defendants' decertification motion.

B.

Plaintiffs cite several USDOL reports (collectively, the "reports") in support of their claims.

19

See Am. Compl. ¶¶ 59–60; [D.E. 67-1]. Defendants argue that the reports state legal conclusions concerning joint employment, and that those legal conclusions are inadmissible under Federal Rule of Evidence 803(8), Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 165–70 (1988), and its Fourth Circuit progeny. Defendants also argue that the reports are untrustworthy and inadmissable under Rule 803(8) . See [D.E. 114] 7–13; [D.E. 67-1] (reports).

Public records or statements are excluded from the rule against hearsay if the record is offered in a civil case, the record sets out "factual findings from a legally authorized investigation," and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8). As for trustworthiness, courts must consider four factors: "(1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation." Rainey, 488 U.S. at 167 n.11; see Kennedy v. Joy Techs., Inc., 269 F. App'x 302, 309–10 (4th Cir. 2008) (per curiam) (unpublished); cf. Ellis v. Int'l Playtex, Inc., 745 F.2d 292, 300–01 (4th Cir. 1984). A public record is presumed admissible, and "the party opposing the admission of such a report bears the burden of establishing its unreliability." Kennedy, 269 F. App'x at 310; Ellis, 745 F.2d at 301; see Rainey, 488 U.S. at 169; Zeus Enters., Inc. v. Alphin Aircraft, Inc., 190 F.3d 238, 241 (4th Cir. 1999).

"[S]ufficient negative factors" demonstrate that the reports are untrustworthy. Zeus, 190 F.3d at 241. The reports are not timely in this case. First, the most recent report documents an investigation that ended on March 21, 2014. See [D.E. 67-1] 14. However, as Pontones admits, the "relevant time period for her FLSA claims is May 17, 2015" to today. See [D.E. 124] 8. Moreover,

even if defendants and the USDOL met in July 2015 concerning that report, such a meeting does not alter the analysis. As for the second factor, the court cannot evaluate the investigator's skill or experience because the reports do not offer any facts concerning the investigator. Furthermore, the analysis focuses on the investigator, not the department conducting the investigation. See Rainey, 488 U.S. at 167 n.11. As for the third factor, the reports do not indicate that the USDOL held a hearing concerning the reports, and Pontones does not state that there was a hearing. As for the fourth factor, the investigator prepared the reports, at the very least, with a view to possible enforcement actions (including, inter alia, litigation) concerning defendants' alleged violations of various labor laws as documented in the reports. Whether the reports are biased (or not) does not change the analysis. See id. Notably, the United States Court of Appeals for the Ninth Circuit upheld a district court's decision not to consider a USDOL report under strikingly similar circumstances. See Sullivan v. Dollar Tree Stores, Inc., 623 F.3d 770, 778 (9th Cir. 2010). Accordingly, the court finds the reports inadmissible under Rule 803(8) and will not consider them at summary judgment. See Fed. R. Civ. P. 56(c)(4).

Alternatively, the reports are inadmissible under Rule 403. The reports concern USDOL investigations at various defendant restaurants, but not all defendant restaurants. See [D.E. 67-1]. The most recent investigation concluded on March 21, 2014. In contrast, the relevant time period for Pontones's FLSA claims begins on May 17, 2015. Moreover, the most recent report documents not only alleged FLSA violations, but also alleged FMLA violations. To be sure, certain individual defendants met with USDOL representatives for a conference in July 2015 to discuss the most recent report. On balance, however, the reports' probative value is small, and the prejudicial effect is large.

21

The reports are likely to mislead jurors as to the FLSA claims in this case by introducing multiple, past alleged FLSA violations that USDOL found outside of the relevant time period for Pontones's FLSA claim. At the very least, such evidence invites the impermissible inference that because certain defendants violated the FLSA in the past, all defendants in this case violated the FLSA concerning Pontones. Cf. Fed. R. Evid. 404(b)(1). Balancing the facts of this case, the reports are inadmissible under Rule 403. Cf. Fry v. Rand Constr. Corp., 964 F.3d 239, 249–50 (4th Cir. 2020) (noting a district court's "wide discretion under Rule 403" (quotation omitted)); PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 125 (4th Cir. 2011) ("[A] district court's decision to admit [or exclude] evidence over a Rule 403 objection will not be overturned except under the most extraordinary circumstances, where that discretion has been plainly abused.") (quotation omitted); United States v. Udeozor, 515 F.3d 260, 265 (4th Cir. 2008) ("District judges enjoy wide discretion to determine what evidence is admissible under [Rule 403].");  Garraghty v. Jordan, 830 F.2d 1295, 1298 (4th Cir. 1987); United States v. Penello, 668 F.2d 789, 790 (4th Cir. 1982) (per curiam).

### III.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials

in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of plaintiff's position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

Pontones's NCWHA claim requires this court to apply North Carolina law. In resolving any disputed issue of state law, the court must determine how the Supreme Court of North Carolina would rule. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). If the Supreme Court of North Carolina "has spoken neither directly nor indirectly on the particular issue," this court must "predict how [it] would rule if presented with the issue." Id. (quotations omitted). In making that prediction, the court "may consider lower court opinions[,]

23

. . . treatises, and the practices of other states." Id. (quotation omitted).[4] When predicting an outcome under state law, a federal court "should not create or expand [a] [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (quotation omitted); see Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

## A.

In her motion for summary judgment, Pontones argues that all defendants jointly employed her and opt-in plaintiffs under the FLSA and NCWHA. See [D.E. 100] 12–17. The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA, in turn, defines an "employee" as "any individual employed by an employer." Id. § 203(e)(1). To "employ" is "to suffer or permit to work." Id. § 203(g). "FLSA conditions liability on the existence of an employer-employee relationship, and the employee bears the burden of alleging and proving the existence of that relationship." Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 83 (4th Cir. 2016); see Dellinger v. Sci. Applications Int'l Corp., 649 F.3d 226, 227–28 (4th Cir. 2011); Benshoff v. City of Va. Beach, 180 F.3d 136, 140 (4th Cir. 1999); Isaacson v. Penn Comm. Servs., Inc., 450 F.2d 1306, 1308 (4th Cir. 1971).

Separate entities or individuals that share control over an individual worker can be joint employers. See, e.g., Schultz v. Cap. Int'l Sec., Inc., 466 F.3d 298, 305–06 (4th Cir. 2006); Luna-Reyes v. RFI Constr., LLC, 109 F. Supp. 3d 744, 749 (M.D.N.C. 2015); 29 C.F.R. § 791.2(a). Joint employment exists when "(1) two or more persons or entities share, agree to allocate responsibility

---

[4] North Carolina does not have a mechanism for certifying questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

24

for, or otherwise codetermine the essential terms and conditions of a worker's employment and (2) the worker is an 'employee' within the meaning of the FLSA." Salinas v. Com. Interiors, Inc., 848 F.3d 125, 140 n.8 (4th Cir. 2017). Step one of the analysis focuses on whether two or more entities or individuals are "not completely disassociated." Id. at 141–42; see 29 C.F.R. § 791.2(a). In making this determination, courts may consider six non-exhaustive factors:

> 1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;

> (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;

> (3) The degree of permanency and duration of the relationship between the putative joint employers;

> (4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

> (5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

> (6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

Salinas, 848 F.3d at 141–42. Although no factor is dispositive, one factor alone may be sufficient to find either for or against a joint-employment relationship. See id. A court must assess joint employment "based upon the circumstances of the whole activity." Id. at 142 (quotation omitted).

Viewing the evidence in a light most favorable to defendants, a genuine question of material

25

fact exists concerning whether defendants jointly employed Pontones and opt-in plaintiffs. Pontones and Torres worked at three of restaurant defendants, and their testimony concerning pay policies experienced at the respective restaurant defendants is very similar. Moreover, the defendant restaurants have identical employee handbooks and share a common website. Additionally, Hector Flores testified to the familial relationship among certain individual defendants, that the individual defendants own varying portions of certain restaurant defendants, and that the individual defendants hold positions at certain restaurant defendants. Furthermore, the restaurant defendants use the same three accounting firms. At the same time, however, Hector Flores testified that he has almost no role in the operation or policies of the restaurant defendants, despite his status as part-owner and officer of several restaurant defendants, and testified that the store managers are responsible for the respective restaurant defendants they manage. The individual store managers testified to that effect in their declarations. Accordingly, genuine issues of material fact exist concerning whether defendants jointly employed Pontones and opt-in plaintiffs. As discussed, Pontones must initially establish an employer-employee relationship to obtain relief under the FLSA. See Kerr, 824 F.3d at 83; Dellinger, 649 F.3d at 227–28; Benshoff, 180 F.3d at 140; Isaacson, 450 F.2d at 1308. Thus, the court denies Pontones's motion for summary judgment concerning her FLSA claim.

As for Pontones's NCWHA claim, the Supreme Court of North Carolina has not yet decided whether entities and individuals may jointly employ individuals for purposes of the NCWHA. The North Carolina Court of Appeals has recognized that "[t]he [NCWHA] is modeled after the [FLSA]," and has looked to federal case law to interpret the terms "employer" and "employee." Laborers' Int'l Union of N. Am., AFL-CIO v. Case Farms, Inc., 127 N.C. App. 312, 314, 488 S.E.2d

632, 634 (1997); see Powell v. P2Enterprises, LLC, 247 N.C. App. 731, 733–34, 786 S.E.2d 798, 800–01 (2016); Kornegay v. Aspen Asset Grp., LLC, 204 N.C. App. 213, 244, 693 S.E.2d 723, 744 (2010); Hyman v. Efficiency, Inc., 167 N.C. App. 134, 137, 605 S.E.2d 254, 257 (2004). When looking to the FLSA for guidance to interpret NCWHA provisions, North Carolina courts rely on Fourth Circuit jurisprudence. See, e.g., Powell, 247 N.C. App. at 733–35, 786 S.E.2d at 800–01. Accordingly, this court predicts that the Supreme Court of North Carolina would apply the joint-employment analysis of Salinas to Pontones's NCWHA claim. Thus, genuine issues of material fact exist concerning joint employment under the NCWHA. Moreover, Pontones's theory of employment concerning her NCWHA claim is limited to joint employment. See Horack v. S. Real Estate Co. of Charlotte, Inc., 150 N.C. App. 305, 309, 563 S.E.2d 47, 51 (2002); Case Farms, 127 N.C. App. at 314–15, 488 S.E.2d at 634; see also Kerr, 824 F.3d at 83; Dellinger, 649 F.3d at 227–28; Benshoff, 180 F.3d at 140; Isaacson, 450 F.2d at 1308. Accordingly, the court denies Pontones's motion for summary judgment concerning her NCWHA claim.

B.

Defendants move for summary judgment on Pontones's FLSA and NCWHA claims. Defendants argue, inter alia, that the individual defendants are not "employers" and that Pontones failed to produce evidence demonstrating that all defendants are "joint employers" under the FLSA and NCWHA. See [D.E. 104] 22–26. In opposition, Pontones argues that all defendants are joint employers. See [D.E. 117] 25–34.

Viewing the evidence in a light most favorable to Pontones, genuine issues of material fact exist concerning whether defendants are "joint employers" under the FLSA and NCWHA.

27

Accordingly, the court denies defendants' motion for summary judgment concerning Pontones's FLSA and NCWHA claims.

## IV.

Defendants move to decertify the FLSA conditional collective action and the NCWHA conditional class action. See [D.E. 106]. Under the FLSA, employees can bring suit on behalf of themselves and other similarly situated employees against employers for unpaid overtime and other claims. See 29 U.S.C. § 216(b). A collective action enables similarly situated employees to pool resources and promote judicial efficiency. See, e.g., Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 158 (S.D.N.Y. 2014); Faust v. Comcast Cable Commc'ns Mgmt., LLC, No. WMN–10–2336, 2011 WL 5244421, at *2 (D. Md. Nov. 1, 2011) (unpublished). The FLSA is a special form of collective action, separate from class actions under Rule 23 of the Federal Rules of Civil Procedure. See 29 U.S.C. § 216(b). For example, unlike class actions under Rule 23(b)(3), in which class members are bound by the judgment unless they opt out of the class, collective FLSA actions require plaintiffs to give "consent in writing to become such a party." Id. Thus, FLSA collective action plaintiffs must be "similarly situated" and opt in to the class by filing consent with the court. See id.; Sandoval-Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc., No. 5:13-CV-810-D, 2017 WL 4322404, at *4 (E.D.N.C. Sept. 28, 2017) (unpublished); Rosinbaum v. Flowers Foods, Inc., 238 F. Supp. 3d 738, 743 (E.D.N.C. 2017); Jackson, 298 F.R.D. at 158.

Courts generally follow a two-stage process in determining whether to grant certification for a collective action under section 216(b). See, e.g., Sandoval-Zelaya, 2017 WL 4322404, at *5; Rosinbaum, 238 F. Supp. 3d at 743; Faust, 2011 WL 5244421, at *2; Williams v. XE Servs., LLC,

28

No. 2:09–CV–59–D, 2011 WL 52353, at *2 (E.D.N.C. Jan. 4, 2011) (unpublished). "In the first stage, sometimes referred to as the 'notice stage,' the court makes a threshold determination of whether the plaintiffs have demonstrated that potential class members are 'similarly situated,' such that court-facilitated notice to the putative class members would be appropriate." Faust, 2011 WL 5244421, at *2 (quotation omitted); see Sandoval-Zelaya, 2017 WL 4322404, at *5; Rosinbaum, 238 F. Supp. 3d at 743; McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465, 469 (E.D.N.C. 2010); Parker v. Smithfield Packing Co., No. 7:07-CV-176-H, 2010 WL 11565605, at *3 (E.D.N.C. Aug. 23, 2010) (unpublished), report and recommendation adopted by 2010 WL 11565686 (E.D.N.C. Sept. 27, 2010) (unpublished). At the notice stage, this court granted Pontones's motion for conditional class certification concerning her FLSA claim. See [D.E. 77].

The second stage generally occurs after discovery and requires the court to engage in a fact-intensive inquiry to determine whether the putative class is "similarly situated" and whether certification is appropriate. See, e.g., Sandoval-Zelaya, 2017 WL 4322404, at *5; Faust, 2011 WL 5244421, at *2. The defendant typically initiates the second stage, as here, by moving for "decertification" of the class. See, e.g., Faust, 2011 WL 5244421, at *2.

Under Federal Rule of Civil Procedure 23, "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). To this end, "an order certifying a class must be reversed if it becomes apparent, at any time during the pendency of the proceeding, that class treatment of the action is inappropriate." Stott v. Haworth, 916 F.2d 134, 139 (4th Cir. 1990); see Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982) (noting that "class determination generally involves considerations that are enmeshed in the factual and legal issues

29

comprising the plaintiff's cause of action" and that, accordingly, "the judge remains free to modify [class certification] in the light of subsequent developments in the litigation." (quotation omitted)); Cent. Wesleyan Coll. v. W.R. Grace & Co., 6 F.3d 177, 189–90 (4th Cir. 1993).

In support of decertification of the FLSA conditional collective action class, defendants make three arguments: (1) Pontones lacks standing to sue restaurant and individual defendants other than the restaurants and individuals for whom she worked directly because restaurant and individual defendants are not "joint employers"; (2) Pontones is not similarly situated to other potential members of the collective action because restaurant and individual defendants are "different employers" and the only commonality is that all potential members "waited tables at Mexican food restaurants"; and (3) the individual and restaurant defendants have different policies and practices, and thus proceeding as a collective action is "unfair" and procedurally improper. [D.E. 107] 13–21. Additionally, defendants argue the court should decertify the NCWHA Rule 23 conditional class action because Pontones cannot demonstrate numerosity, commonality, typicality, adequate representation, or a common question of law or fact based on the same underlying facts defendants offer in support of decertifying the FLSA conditional collective action. See id. at 21–28.

The court denies defendants' motion for decertification without prejudice to refiling following resolution of the joint-employment issue. As discussed, genuine issues of material fact exist concerning joint employment. The court cannot resolve the collective action analysis and Rule 23 class analysis until that dispute is resolved. Accordingly, the court denies without prejudice defendants' motion to decertify Pontones's conditional FLSA collective action and conditional NCWHA Rule 23 class action.

Case 5:18-cv-00219-D   Document 166   Filed 11/02/20   Page 30 of 33

## V.

As for defendants' and Pontones's motion for sanctions, the court has considered each motion and the parties' arguments under the governing standard. See Fed. R. Civ. P. 11. Defendants' motion was not filed separately from defendants' motion to strike. Thus, the court denies defendants' motion. See Fed. R. Civ. P. 11(c)(2). As for Pontones's motion, the court denies as meritless Pontones's motion.

## VI.

As for Pontones's motion to equitably toll the statute of limitations for her FLSA claim, a court may equitably toll a statute of limitations when: (1) a party did not file a claim during the statutory limitations period due to her adversary's misconduct; or (2) "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." Chao v. Va. Dep't of Transp., 291 F.3d 276, 283 (4th Cir. 2002) (quotations omitted); see Holland v. Florida, 560 U.S. 631, 649 (2010); Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 96 (1990); CVLR Performance Horses, Inc. v. Wynne, 792 F.3d 469, 476–77 (4th Cir. 2015); Cruz v. Maypa, 773 F.3d 138, 145 (4th Cir. 2014); Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000).

Pontones argues that an "unusual [12-month] delay in issuing notice" in this case constitutes exceptional circumstances beyond Pontones's control that warrant equitably tolling the FLSA statute of limitations. See [D.E. 137] 6–17. Pontones asserts that equitable tolling should begin on April 26, 2019 (i.e., the date on which Pontones filed her motion to certify a FLSA collective action) and end 90 days after notice was issued. See id. Pontones's requested start date extends the statutory period by 19 days. See [D.E. 148].

31

As for extraordinary circumstances, a plaintiff must show that he has "in some extraordinary way been prevented from asserting his . . . rights" by factors "external to the party's own conduct." Wynne, 792 F.3d at 477–78 (quotations omitted); see Harris, 209 F.3d at 330. "Any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Chao, 291 F.3d at 283 (quotation omitted); see Cruz, 773 F.3d at 145 (noting that equitable tolling is a "rare remedy"); Harris, 209 F.3d at 330.

The court rejects Pontones's arguments. Assuming without deciding that the delays Pontones complains about were not attributable to her, Pontones fails to show that such delays were "extraordinary." See Cruz, 773 F.3d at 145–46. To the contrary, this court timely addressed Pontones's motion for conditional class certification and timely addressed the arguments both parties raised concerning notice, in addition to addressing various other motions both parties raised in the interim. See [D.E. 77, 129]. Moreover, Pontones fails to identify the class of plaintiffs that would be eligible for the relief she seeks, despite issuing notice to prospective plaintiffs on May 11, 2020. See [D.E. 134]. Simply calling a delay unusual does not make it so, much less "extraordinary." Furthermore, the cases Pontones cites are neither persuasive nor binding. See [D.E. 137] 6–17. Here, Pontones has failed to demonstrate extraordinary circumstances to warrant equitable tolling. See Wynne, 792 F.3d at 477–78; Cruz, 773 F.3d at 145–46; Chao, 291 F.3d at 283; Harris, 209 F.3d at 330. Accordingly, the court denies Pontones's motion to equitably toll the statute of limitations for her FLSA claim.

32

## VI.

In sum, the court DENIES plaintiff's motion for summary judgment [D.E. 99], DENIES defendants' motion for summary judgment [D.E. 103], DENIES defendants' motion for decertification [D.E. 106], GRANTS IN PART and DENIES IN PART plaintiff's motion to strike [D.E. 119], DENIES plaintiff's motion for equitable tolling [D.E. 136], GRANTS IN PART and DENIES IN PART defendants' motion to strike and for sanctions [D.E. 146], and DENIES plaintiff's motion for sanctions [D.E. 155]. The parties shall participate in a court-hosted settlement conference with United States Magistrate Judge James Gates. If the case does not settle, the parties shall submit proposed trial dates.

SO ORDERED. This __2__ day of November 2020.

_____
JAMES C. DEVER III
United States District Judge

33