IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| LAURA PONTONES, on behalf of herself and all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Case No. 5:18-cv-219-D |
| SAN JOSE RESTAURANT, INCORPORATED, et. al; | ) ) ) | |
| *Defendants.* | ) ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE COLLECTIVE AND CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................1

II.    FACTUAL & PROCEDURAL HISTORY ...............................................1

       A.    The Nature of Plaintiff's Claims.............................................. 1

       B.    Procedural History of the Case ................................................ 3

       C.    Trial Preparation ...................................................................... 5

       D.    Settlement Negotiations and Mediation.................................... 5

       E.    Plaintiff's Motion for Preliminary Approval ........................... 6

III.   SUMMARY OF SETTLEMENT TERMS.................................................7

       A.    Monetary Awards ..................................................................... 7

             1.    Estimated Unpaid Wages ................................................ 8

       B.    Eligible Employees .................................................................. 9

       C.    Releases.................................................................................. 10

       D.    Tax Withholdings.................................................................... 10

       E.    Allocation Formula ................................................................ 11

       F.    Attorneys' Fees, Litigation Costs, and Service Award.......... 12

       G.    Settlement Claims Administrator............................................ 12

       H.    Confession of Judgment......................................................... 13

       I.    Defendant's Audit .................................................................. 14

IV.    FINAL APPROVAL OF THE SETTLEMENT ....................................14

       A.    The Proposed Settlement is Fair, Reasonable, and Adequate and Should be
             Approved in All Respects. ...................................................... 14

       B.    The Proposed Settlement is Procedurally Fair....................... 16

       C.    The Proposed Settlement is Substantively Fair ..................... 17

             1.    Litigation Through Trial Would be Complex, Costly, and Long

(*Grinnell* Factor 1) ................................................................. 18

2.    The Reaction of the Classes Has Been Positive (*Grinnell* Factor 2) ........ 19

3.    Litigation and Discovery Have Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)................... 20

4.    Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).................................................................... 21

5.    Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6) ................................................................ 22

6.    Defendant's Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7) ........................................... 22

7.    The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).................................................................. 22

V.    APPROVAL OF THE FLSA SETTLEMENT .................................................24

VI.    CONCLUSION.............................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946) ................................................................................................ 8

*Ansoumana v. Gristede's Operating Corp.*,
  201 F.R.D. 81 (S.D.N.Y. 2001) .............................................................................. 24

*Berry v. Schulman*,
  807 F.3d 600 (4th Cir. 2015) .................................................................................. 15

*Brown v. Delhaize Am.*,
  LLC, 2015 U.S. Dist. LEXIS 184265 (M.D.N.C. July 20, 2015) ......................... 21

*Chen v. XpresSpa at Terminal 4 JFK LLC*,
  2021 WL 4487835 (E.D.N.Y. Oct. 1, 2021) .......................................................... 19

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ............................................................................. passim

*Commissioners of Pub. Works of City of Charleston v. Costco Wholesale Corp.*,
  2022 WL 214531 (D.S.C. Jan. 24, 2022) ............................................................... 15

*de la Cruz v. Chopra*,
  2018 U.S. Dist. LEXIS 85213 (D. Md. May 21, 2018) ................................... 15, 24

*Deem v. Ames True Temper, Inc.*,
  2013 WL 2285972 (S.D.W. Va. May 23, 2013) .................................................... 19

*Equal Rights Ctr. v. Wash. Metro. Area Transit Auth.*
  573 F. Supp. 2d 205 (D.D.C. 2008) ....................................................................... 20

*Evans v. Jeff D.*,
  475 U.S. 717 (1986) ................................................................................................ 23

*Flinn v. FMC Corp.*
  528 F.2d 1169 (4th Cir. 1975) ................................................................................ 17

*Ford v. Cardinal Innovations Healthcare Sols.*,
  2022 WL 558376 (M.D.N.C. Jan. 21, 2022) ......................................................... 24

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) .............................................................. 22, 23, 24

*Hall v. Higher One Machs., Inc.*,
  2016 U.S. Dist. LEXIS 131009 (E.D.N.C. Sep. 26, 2016) .................................... 15

iv

*Hood v. Uber Techs., Inc.*,
    2019 WL 93546, (M.D.N.C. Jan. 3, 2019), aff'd sub nom. *Haskett v. Uber Techs., Inc.*, 780
    Fed. Appx. 25 (4th Cir. 2019) ........................................................................................... 16, 21

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................................................. 19

*In re Austrian & German Bank Holocaust Litig.*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................................... 20

*In re Dollar Gen. Stores FLSA Litig.*,
    2011 U.S. Dist. LEXIS 98162 (E.D.N.C. Aug. 22, 2011) .................................................... 16

*In re Jiffy Lube Secs. Litig.*,
    927 F.2d 155 (4th Cir. 1991) .......................................................................................... 15, 18

*In re MI Windows & Doors Prods. Liab. Litig.*,
    2015 U.S. Dist. LEXIS 95889 (D.S.C. July 23, 2015) ................................................... 21, 23

*In re Microstrategy, Inc. Sec. Litig.*,
    150 F. Supp. 2d 896 (E.D. Va. 2001) ............................................................................. 18, 19

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06 Civ. 5173, 2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) .......................... 19

*In re Vitamins Antitrust Litig.*
    305 F. Supp. 2d 100 (D.D.C. 2004) ..................................................................................... 20

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ................................................................................................ 15

*In re Warfarin*,
    391 F.3d 516 (3d Cir. 2004) ................................................................................................ 20

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000) ................................................................................................ 24

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
    2009 U.S. Dist. LEXIS 89136 (E.D. Va. June 23, 2009) ................................................. 16, 25

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) ...................................................................................... 15, 25

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................................. 19

*Marroquin v. Canales*,
    505 F. Supp. 2d 283 (D. Md. 2007) ....................................................................................... 8

v

*Martin v. Deiriggi*,
    985 F.2d 129 (4th Cir. 1992) ........................................................................ 8

*Matthews v. Cloud 10 Corp.*,
    2015 U.S. Dist. LEXIS 114586 (W.D.N.C. Aug. 27, 2015)................................. 16

*McKenna v. Champion Intern. Corp.*,
    747 F.2d 1211 (8th Cir. 1984), abrogated on other grounds by *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989) ........................................................................ 24

*McLaughlin v. McGee Bros. Co.*,
    681 F. Supp. 1117 (W.D.N.C. 1988) ................................................................ 8

*McMahon v. Olivier Cheng Catering & Events, LLC*,
    2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. 2010)............................................ 24, 25

*Mearidy v. Nthrive Sols., Inc.*,
    1:20CV387, Dkt. 45 (M.D.N.C. Nov. 30, 2021) .............................................. 19

*Muhammad v. Nat'l City Mortg., Inc.*,
    2008 U.S. Dist. LEXIS 103534 (S.D. W. Va. Dec. 19, 2008).............................. 16

*Mumbower v. Callicott*,
    526 F.2d 1183 (8th Cir. 1975) ........................................................................ 8

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)........................................................................... 23

*Reich v. S. Md. Hosp.*,
    43 F.3d 949 (4th Cir. 1995) ........................................................................... 8

*Riddle v. City of Anderson*,
    2015 U.S. Dist. LEXIS 192079 (D.S.C. Jan. 26, 2015)................................. 20, 21

*Robinson v. Harrison Transp. Servs., Inc.*,
    2016 U.S. Dist. LEXIS 86294 (E.D.N.C. June 30, 2016)................................... 16

*Saman v. LBDP, Inc.*,
    2013 U.S. Dist. LEXIS 83414 (D. Md. June 13, 2013)...................................... 16

*Sharp Farms v. Speaks*,
    917 F.3d 276 (4th Cir. 2019) ......................................................................... 15

*Turner v. Human Genome Sciences, Inc.*,
    292 F. Supp. 2d 738 (D. Md. 2003)................................................................. 8

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016)................................................................................... 8

*Vaughns v. Bd. of Educ.*,
  18 F. Supp. 2d 569 (D. Md. 1998) ........................................................................ 18

*Velasquez-Monterrosa  v. Mi Casita Restaurants*
  No. 5:14-CV-448-BO, Dkt. 121 (E.D.N.C. September 26, 2017) ........................................ 22

*Velazquez v. Burch Equip., LLC*,
  2016 U.S. Dist. LEXIS 29426 (E.D.N.C. Mar. 8, 2016) .................................................. 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) .......................................................................................... 15

**Statutes**

29 U.S.C. § 201 ................................................................................................................... 2, 10

29 U.S.C. § 211(c) ...................................................................................................................... 8

29 U.S.C. § 216(b) ...................................................................................................................... 3

N.C. Gen. Stat. § 24-1 ................................................................................................................ 9

N.C. Gen. Stat. §§ 95-25.1 .......................................................................................................... 2

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................................... 3

Fed. R. Civ. P. 23(e) ............................................................................................................. 6, 15

Fed. R. Civ. P. 23(e)(2) ............................................................................................................ 16

Fed. R. Civ. P. 23(f) ................................................................................................................... 3

**Regulations**

13 NCAC 12.0801 ...................................................................................................................... 8

29 C.F.R. § 516.2 ....................................................................................................................... 8

# I. <u>INTRODUCTION</u>

Plaintiff submits this Memorandum of Law in support of her Unopposed Motion for Final Approval of the Collective and Class Action Settlement ("Motion")[1]. The Parties' settlement of this wage and hour class and collective action satisfies the criteria for final approval. Plaintiff seeks an Order approving as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Agreement of Class and Collective Action and Release of Claims[2] ("Settlement Agreement") as well as approval of Plaintiff's unopposed motions for attorneys' fees and expenses and a service award. *See* Dkts. 224-230. On March 29, 2022, the Court granted preliminary approval, directing notice be mailed to Class Members, and setting the date for the final fairness hearing as well as approving attorneys' fees and expenses and the requested service award. *See* Dkts. 231-233. To date, no Class Members have opted out of the settlement, and none have objected to it.[3] With overwhelming support, and for the reasons stated below, the Court should grant final approval.

# II. <u>FACTUAL & PROCEDURAL HISTORY</u>

## A. <u>The Nature of Plaintiff's Claims</u>

In pertinent part, Defendants operate approximately thirteen (13) restaurants across North Carolina, with more locations across South Carolina and Virginia. *Id.* Dkt. 7, ¶ 46. Named Plaintiff Laura Pontones ("Named Plaintiff" or "Plaintiff Pontones"), Opt-in Plaintiffs, and Rule 23 class members ("Plaintiffs") were employed as servers for Defendants at all locations, from

---

[1] Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

[2] For simplicity's sake, this Memorandum will refer to Plaintiff's certified class claims under the NCWHA as "the Rule 23 class," and Plaintiff's FLSA collective as "the FLSA class.

[3] *See* Declaration of Fasika Hailmichael, Angeion Group ("Angeion") Project Manager (hereinafter, "Angeion Decl."), attached here to as Exhibit 1.

1

approximately May 2015 to the present. Named Plaintiff was employed at the Raleigh Brier Creek North Carolina location from October 2, 2016, to January 22, 2017. She also worked at the Raleigh Triangle Town Center Mall location, from January 23, 2017, to April 2017, and then from approximately July 2017 until August 2017. Dkt. 7 ¶ 47. While Defendants admit that Named Plaintiff was employed by Defendants Plaza Azteca Raleigh, Inc. and San Jose Mexican Restaurant of Raleigh, Inc. (Dkt. 13, ¶ 14), they deny that Defendants are joint employers for Named, Opt-ins, and Rule 23 class members. *Id.*

Named Plaintiff asserts that San Jose Restaurants; Hector Flores; Alberto Flores; Josue Flores; Jose Perez; Vicente Perez; Pablo Meza; Edgardo Flores; and Edgar Flores et al.,[4] (collectively "Defendants") failed to compensate Plaintiffs as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by (1) failing to pay Plaintiffs for statutory overtime pursuant to federal law for hours worked in excess of forty (40) per week at time one-half; and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1, *et seq.*, by (1) failing to pay Plaintiffs for all hours worked consistent with Defendants' written policies and practices; in particular, for (a) failing to pay Plaintiffs all promised owed and/or earned wages such as minimum wage and overtime wages, in light of Defendants' tip credit violations for failing to pay servers any wages and allowing them to work for tips only; (b) subjecting Plaintiffs (servers) to unlawful deductions or a percentage of daily total food and beverage sales for each shift and workweek; and (c) violating statutory record-keeping provisions. *See generally* Dkt. 7. More specifically, Plaintiffs allege that Defendants failed to pay Plaintiffs all owed, earned, and accrued minimum wages, and/or promised overtime wages, in violation of the NCWHA, and the violation of the NCWHA was willful. *Id.* ¶¶ 82-92. Furthermore, Plaintiffs allege that Defendants

---

[4] In the interest of efficiency and brevity, Plaintiff does not identify all defendants by name, but they are found in the first amended complaint. *See* Dkt. 7.

intentionally refused to pay all lawful, promised wages on their regular pay date and took tips from Plaintiffs to lower their overhead costs and pay other employees in violation of the NCWHA. *Id.* ¶¶ 93-102.

### B. Procedural History of the Case

Named Plaintiff filed her initial Complaint on May 17, 2018. *See* Dkt. 1.[5] On June 26, 2018, Defendants filed their Answer to Plaintiff's Collective and Class Action Complaint. Dkt. 130. Following the Court's Case Management Order ("CMO"), (Dkt. 42), on August 29, 2018, Plaintiff served Defendants with Plaintiff's Initial Disclosures, First Set of Request for Production of Documents, and First Set of Interrogatories to Defendants. See Dkt. 50; Dkt. 50-1. After an underwhelming initial production of documents and responses by Defendants, the Parties engaged in substantial briefing and efforts to address Defendants' repeated dilatory and nonresponsive document production. Dkt. 120, at 9-11 (summarizing communications and discovery disputes).

On April 26, 2019, pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23, Named Plaintiff moved for conditional collective certification and/or class certification of this action, and to issue notice to all similarly situated persons, so that those similarly situated current and former employees will have the opportunity to exercise their rights under the Fair Labor Standards Act ("FLSA"). Dkt. 66. The Court granted Plaintiff's motion for conditional collective and class certification on October 31, 2019. Dkt. 77. On November 14, 2019, Defendants filed a Rule 23(f) Petition for Leave to Appeal the Court's Order granting certification. Approximately one month later, the Fourth Circuit subsequently denied Defendants' petition for permission to appeal on December 10, 2019. Dkt. 85-1. On January 10, 2020, the discovery period closed, without Defendants providing any meaningful supplemental production of employment records. *See id.*;

---

[5] Plaintiff filed her First Amended Collective/Class Action Complaint on June 11, 2018. Dkt. 7.

*see also* Dkt. 42.

On February 11, 2020, Named Plaintiff filed her motion for summary judgment. Dkts. 99, 100, 101. The same day, Defendants filed their motion for summary judgment as well as a motion for decertification. Dkts. 106, 103. On November 2, 2020, this Court entered its order denying Plaintiff's motion for summary judgment, as well as both Defendants' motion for summary judgment and motion for decertification. Dkt. 169. Thereafter, Defendants filed a motion for evidentiary hearing, to address the joint employment issue, which the Court ultimately denied, noting the Court could fashion questions for the jury concerning joint employment to resolve the factual issues concerning the joint employment parts of trial and Plaintiffs' claims. Dkts. 169,185.

As to notice of the lawsuit, following substantial coordination and oral arguments by the Parties on the substance and method of notice to be issued to class members (Dkts. 94, 108, 128, 129), on May 11, 2020, through the Claims' Administrator (Angeion Group), Plaintiff sent, via U.S. mail, notice of settlement with instructions for sending back the claim form, requesting exclusion from the settlement, and/or objecting to the Parties' proposed Settlement Agreement to all identified FLSA collective and Rule 23 class members. Dkt. 134. Prior to the resolution of this matter and the distribution of notice of settlement, there were approximately 52 opt-in Plaintiffs who had joined this action and have worked across the majority, if not all, of Defendants' locations.[6] In addition to the current Opt-in Plaintiffs, there are approximately 667 Rule 23 class members.[7]

---

[6] *See* Dkts. 135-1, 135-2, 135-3, 135-4, 135-5, 135-6, 135-7, 135-8; 140-1, 140-2,140-3, 140-4, 140-5, 140-6; 144-1, 144-2, 144-3; 150-1, 150-2, 150-3, 150-4, 150-5, 150-6, 150-7, 150-8, 150-9, 150-10, 150-11, 150-12, 150-13, 150-14; 154-1, 154-2, 154-3, 154-4, 154-5, 154-6, 154-7, 154-8, 154-9, 154-10, 154-11, 154-12, 154-13, 154-14, 154-15, 154-16; 158-1, 158-2, 158-3, 158-4; 160-1; 162-1, 162-2, 162-3; and 163-1.

[7] Unfortunately, given the transient nature of these workers in the restaurant industry, it is impossible to confirm whether the claims or settlement administrator had the best addresses for them.

4

### C.    <u>Trial Preparation</u>

On October 18, 2021, this Court entered its Case Management Order, scheduling trial in this matter to begin March 1, 2022. Dkt. 194. Accordingly, the Parties worked diligently to abide by the Court's pretrial deadlines. On January 7, 2022, the Parties filed their respective Motions in Limine. Dkts. 195, 196. On February 1, 2022, Defendants filed a motion to dismiss time-barred plaintiffs and to strike untimely consents to opt-in, which Plaintiff adamantly opposed. Dkts. 200, 203. The Parties also exchanged pretrial disclosures and memoranda of authorities, proposed voir dire questions, as well as diligently coordinated on drafting proposed jury instructions and proposed pretrial order.

On February 6, 2022, Defendants produced thousands of new pages of documents and identified over 14,000 additional documents never-produced during discovery. Dkt. 205-2. Plaintiff immediately filed a motion for an emergency telephonic hearing to address the untimely production. Dkt. 205. On February 11, 2022, the Court held an emergency telephonic hearing, wherein the Court provided Defendants an opportunity to explain its action, and ultimately determined the belated production was highly prejudicial to Plaintiff and entered a ruling excluding those documents at trial. Dkt. 212.

Soon thereafter, on February 16, 2022, the Parties attended a Pretrial Conference with the Court, wherein the Court issued rulings on the Parties' motions in limine and denied Defendants' motion to dismiss time-barred plaintiffs and untimely consent forms. The Court also held the jury would receive an instruction regarding permissible adverse inferences against Defendants regarding the failure to produce documents.

### D.    <u>Settlement Negotiations and Mediation</u>

On January 21, 2020, this Court hosted the Parties' first settlement conference. Dkt. 87. Despite Plaintiff's best efforts and the assistance of Magistrate Judge Gates, the parties were

unable to reach an agreement. After more than a year of further litigation, the Parties participated in a second Court-hosted settlement conference on September 27, 2021. Dkt. 188. Again, the Parties were unable to reach an agreement.

Following the February 16, 2022, Pretrial Conference, the Parties agreed as to the potential value of attending a third Court-hosted settlement conference before the scheduled trial. In anticipation of the same, counsel for the Parties worked diligently in continuing communications and productive negotiations, in an effort to reach a fair, reasonable agreement. On February 23, 2022, the Parties attended a Court-Hosted Settlement Conference, and were able to successfully reach an agreement through the assistance of Magistrate Judge Gates. Dkt. 222.

### E.  Plaintiff's Motion for Preliminary Approval

On March 25, 2022, Named Plaintiff filed an Unopposed Motion for Preliminary Approval of Settlement consistent with the Parties' Settlement Agreement, to (1) approve the appointment of Angeion Group LLC, as settlement administrator; and (2) approve the proposed notice of the settlement and claim form. Dkt. 224.

On March 29, 2022, the Court preliminarily approved, subject to further consideration thereof at the Final Approval Hearing, (1) the Parties' Settlement Agreement of Class and Collective Action and Release of Claims; (2) the proposed Notices for mailing, consistent with the procedures outlined in the Parties' Settlement Agreement; and (3) the appointment of Angeion as the Settlement Administrator. *See* Dkt. 231. Consistent with the Parties' Settlement Agreement, the Court set the deadline of forty-five (45) days after the mailing of the notice of settlement for members of the certified class to submit opt out requests, comments, or objections to the settlement. *See id.* On April 27, 2022, the Court granted Plaintiff's Unopposed Motion for Extension of Deadline to Distribute Notice, making the deadline for members to submit claim forms June 17, 2022. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court

6

scheduled a fairness hearing for July 15, 2022, at 1:00 p.m., to determine whether the proposed Settlement Agreement is fair. *Id.*

However, on or about July 5, 2022, Class Counsel learned the Settlement Administrator Angeion inadvertently failed to perform skip-tracing for 130 individuals. Upon learning this information, Class Counsel immediately directed Angeion to perform skip-tracing consistent with the Parties' settlement terms. Once skip-tracing had been performed, Angeion was able to find new addresses for approximately forty-seven (47) Rule 23 class members. Immediately thereafter, Class Counsel reached out to Defendants' counsel to advise them of the same and requested an extension of another thirty (30) days beyond the original claim form deadline for those individuals. Since the Parties could not agree on whether to postpone the final fairness hearing, the Parties sought direction from the Court. On July 11, 2022, the Court reset the hearing date for August 19, 2022, to allow Rule 23 class members an opportunity to send the claim form. As of August 12, 2022, an additional twenty-two (22) Rule 23 class members submitted claim forms. *See* Dkt. 230-1.

## III.   **SUMMARY OF SETTLEMENT TERMS**

### A.   **Monetary Awards**

The Settlement Agreement creates a final, "all in" settlement fund, in the gross settlement amount of $1,500,000, which covers all awards to Rule 23 Class and FLSA Class members, service awards to named and opt-in plaintiffs, attorneys' fees, settlement administration fees, and litigation costs. *See Id.* § II(A)(13). It provides that each member of the Settlement Class and Settlement Collective submitting a timely claim form shall receive a share of the Net Settlement Fund. *Id.* § III(C)(2). The Named and early Opt-in Plaintiffs were not required to send back a claim form to be considered Authorized Claimants, as they have already opted into the case and/or have been active participants. *See id.* § III(B). Each Participating FLSA Collective Member and Participating

7

Rule 23 Settlement Class Member who timely returned the claim form will be entitled to receive a share of the Net Settlement Amount, proportionate to their alleged estimated actual damages as compared to the total alleged estimated damages for the entire class/collective. For members of the Settlement Class or Collective who do not timely return a claim form or choose to opt-out, Defendants shall retain any settlement amount allocated to that individual, not to exceed $300,000.00. *See id.* § III(B)(2)(b). Plaintiff estimates the average award class members participating in the settlement will be approximately $ 4,775.06. *See* Dkt. 240 at ¶ 10.

        1.    <u>Estimated Unpaid Wages</u>

Plaintiff used payroll information from Plaintiffs (Named, opt-in, and class members), as well as information provided by Defendants, to create a damages model. For the servers, because Defendants did not maintain accurate records,[8] Plaintiff calculated the average weekly hours for each sever using Plaintiffs' information, which came out to an estimated 53.23 hours weekly.[9]

---

[8] To determine "hours worked," federal and state wage and hour laws require employers maintain accurate records. *See* 29 C.F.R. § 516.2, *et seq.* (providing FLSA record-keeping requirements); *see also* 13 NCAC 12.0801 (providing NCWHA recordkeeping requirements); The burden is *on Defendant*, *not* Plaintiff to show any or all of the time documented as "hours worked" was not time worked.. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). In practice, employers must retain records indicating, among other things, hours worked each workday by employees, and *total* daily or weekly straight-time earnings or wages due. *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.2, *et seq.* (providing FLSA record-keeping requirements); *see also Reich v. S. Md. Hosp.*, 43 F.3d 949, 951 (4th Cir. 1995). The record-keeping requirements are "fundamental underpinnings" of the FLSA, since without records, its provisions cannot be enforced. *McLaughlin v. McGee Bros. Co.*, 681 F. Supp. 1117, 1134 (W.D.N.C. 1988); *see generally Martin v. Deiriggi*, 985 F.2d 129, 132 (4th Cir. 1992) (noting plaintiffs' burden is reduced when an employer cannot provide complete and proper records).

[9] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047-49 (2016) (finding Plaintiffs and class members are able to introduce mere statistical evidence to draw inferences for the hours worked of thousands of employees); *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (*Mumbower v. Callicott*, 526 F.2d 1183, 1186 (8th Cir. 1975) (relying on an employee's recollection is proper to avoid the occurrence of employers benefitting from their failure to maintain records); *Marroquin v. Canales*, 505 F. Supp. 2d 283, 297 (D. Md. 2007) ( "[]plaintiffs' burden of proof can be met "through an employee's testimony giving his recollection of hours worked"); *Turner v. Human Genome Sciences, Inc.,* 292 F. Supp. 2d 738, 748 (D. Md. 2003) (same).

Using the data provided, Plaintiffs calculated the number of workweeks during each period worked by each individual or used the full two years if there was no employment period data or if the provided data was unreliable. The calculated average weeks worked for each server using Plaintiffs' information came out to 52.18 weeks. According to information available, there are approximately 667 individuals who would be entitled to receive payment under the settlement. Damages were calculated pursuant to a two-year statute of limitations as provided under federal wage and hour law. Thus, damages were assessed from May 17, 2016, through the present (if applicable).

First, Plaintiff calculated Plaintiffs' uncompensated hours for the relevant period, and then multiplied hours worked by $7.25 per hour because servers worked for tips only, and time and one-half for hours over 40 per week. Because Defendants did not pay *any* wages, the tip credit cannot be invoked, and Plaintiff necessarily used hours from Plaintiffs' recollection along with approximate calculations of weeks worked within the relevant period and multiplied for the actual amount of wages owed to Plaintiffs. Then, Plaintiff calculated damages as to the unlawful deductions of averaged three percent (3%) of daily total food and beverage sales for each shift and workweek. To accomplish this, and given Defendants' failure to maintain proper records, Plaintiff again relied on the recollection of Opt-in Plaintiffs, as to the average deduction Defendants would assess them per shift, then averaged these amounts to determine an average deduction for all Plaintiffs per shift and used this average and extrapolated for the entire class to determine the class-wide damages. The total estimated damages encapsulate the sum of wages owed, including damages for unlawful deductions, as well as interest at the rate set forth in N.C. Gen. Stat. § 24-1 and liquidated damages.

### B. <u>Eligible Employees</u>

The Settlement Agreement defines the classes of persons who were eligible to submit

claims under this settlement as:

> (i) "NCWHA Class," which corresponds to Plaintiffs' NCWHA Rule 23 class claims, means all current and/or former employees of Defendants in North Carolina whose primary duty is/was non-exempt work, who are/were not paid for all of their hours worked, including promised regular and/or overtime wages, and who are/were subjected to unlawful deductions of a fixed percentage of all credit and cash purchases made by Defendants' customers, at any time within the two (2) year period prior to the filing of this lawsuit.

> (ii) FLSA Collective," which corresponds to Plaintiffs' FLSA Collective claims, means all current and/or former servers of Defendants whose primary duty is/was non-exempt work, who were not paid minimum wage and/or overtime, and who are/were subjected to deductions of a fixed percentage of all credit and cash purchases made by Defendants' customers, at any time within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b).

*See* Dkt. 225-1, § II(A) (32-33) (hereinafter "Settlement Classes"). The proposed Rule 23 Settlement Class recognizes the shorter two-year statute of limitations applicable to the state wage claims asserted pursuant to Rule 23.

### C. <u>Releases</u>

Upon approval by the Court, the Settlement Agreement shall bind the Named Plaintiff, Early Opt-Ins, Participating FLSA Collective Members, and Rule 23 Settlement Class Members to all terms set forth in the Settlement Agreement, as described herein in Dkt. 225-1, § VI(A)(1)-(2) so long as such individual has not timely opted out of settlement pursuant to the opt-out procedures described in *Id.* § V(A)(4) of the Settlement Agreement. *See id.* However, Members of a Settlement Class who did not submit a consent to sue form as part of the FLSA collective shall not waive their claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. *Id.*

### D. <u>Tax Withholdings</u>

Each Authorized Claimant shall receive their payment, separated into two equal amounts, with 50% allocated for unpaid overtime and unpaid wages and 50% allocated for liquidated

damages and other relief under the FLSA and NCWHA. Dkt. 225-1, § III(D). The Settlement Administrator will report the portion of the Settlement Payment made to each Authorized Claimant attributable to wages on an I.R.S. Form W-2, and the portion of the Settlement Payment attributable to non-wages on an I.R.S. Form 1099. The Settlement Administrator shall be responsible for issuing the settlement checks, less required withholdings and deductions required by law, to each Authorized Claimant and mailing the settlement checks, Form W-2s, and Form 1099s to each such individual. However, Defendants will remain responsible for paying the employer's share of all required payroll taxes, and the amount of such taxes is not included in the Gross Settlement Amount. The portion of each Settlement Payment allocated to liquidated damages and interest shall be reported as non-wage income to the recipient. Named and Opt-in Plaintiffs' Service Payments shall be reported as non-wage income to the recipients.

### E.     Allocation Formula

As stated *supra,* the actual amount that each participating Opt-in Plaintiff will receive will be determined pursuant to an allocation formula, that reflects the relative value of their claims under Plaintiff's theory of the case and is based on Plaintiff's estimate of hours worked and compensation would have been paid had all hours been reported and properly calculated, as well as Plaintiff's estimate unlawful deductions taken from Plaintiff's pay. Dkt 225-1§ III(C)(1).  Each Authorized Claimant who returned the claim form will be entitled to receive a share of the Revised Gross Settlement Fund, proportionate to their estimated actual damages as compared to the total estimated damages for the entire class. Specifically, funds will be allocated on a pro rata basis. *Id.* § III(C)(2).  To the extent any member of the Rule 23 Settlement Class did not submit the required claim form, chooses to opt out of the settlement, or otherwise elects not to accept their designated share of the Revised Gross Settlement Amount, their share will remain the sole and exclusive

11

property of Defendant not to exceed $300,000. Dkt. 225-1. § III(B). Under no circumstances will Named and Opt-in Plaintiffs' damages remit back to Defendant. *Id.*

### F. <u>Attorneys' Fees, Litigation Costs, and Service Award</u>

Class Counsel filed a Motion for Attorneys' Fees and Reimbursement of Expenses, in addition to a Motion for Approval of Service Awards, both of which the Court preliminarily approved on March 25, 2022. *See* Dkts. 232-233. The Court indicated that at the scheduled fairness hearing it will determine whether and in what amounts it will grant Plaintiff's motion for service awards, attorneys' fees, and costs. *See* Dkts. 231-233. While Plaintiff has sought fees as a percentage of the common fund, as is the norm in the Fourth Circuit, if the Court is inclined to consider a lodestar cross-check, the lodestar now totals $738,260.08 in fees and $14,573.33 in expenses. *See* Dkt. 240, at ¶¶ 12-15.

### G. <u>Settlement Claims Administrator</u>

As stated, *supra*, the Court approved Angeion as the Parties' settlement administrator and authorized it to perform administrative duties outlined in its March 29, 2022, Order. Dkt. 231.

On April 27, 2022, Defendants' counsel provided Angeion and Class Counsel with a spreadsheet ("Class List") containing, among other things, the names and last known addresses for approximately 779 Class Members.[10] Dkt. 239-1 at ¶ 6. Angeion thereafter formatted the Notices so that they were personalized for each recipient. On May 3, 2022 (the "Notice Date"), Angeion mailed the Notices, a claim form, and a postage pre-paid envelope. Dkt. 239-2 at ¶ 7. Moreover, Angeion also texted the Notices to class members who had valid telephone numbers. *Id.* at ¶¶ 13-

---

[10] Defendants provided multiple spreadsheets. For example, during the notice period, Defendants' excel spreadsheet was for approximately 667 putative Rule 23 class members. However, for notice of settlement, the spreadsheet originally listed 944 records; however, 165 names were duplicates. Ex. 1 ¶ 6.

14.

As of August 15, 2022, forty-seven (47) Notices were returned to Angeion as undeliverable, without forwarding address information. *Id.* at ¶ 8. For Class members whose Notices were returned as undeliverable through June 30, 2022, Angeion undertook additional public record research to deliver those Notices and possible new addresses were obtained for forty-seven (47) of them. *Id.* at ¶ 10. Angeion re-mailed Notices to these forty-seven (47) possible new addresses; twenty-two (22) were returned. *Id.* at ¶ 12. A total of 154 Settlement Class Members (or approximately 19.8% of the settlement class) have Notice mailings that remain classified as undeliverable. *Id.* As of August 15, 2022, 183 text message notices were sent, with zero (0) coming back as undeliverable, either because the intended phone number was not in operation, or the number did not belong to the intended class member. *Id.* at ¶¶ 13-14.

Both the Opt-in Notice and the Rule 23 Notice provided a deadline of June 17, 2022, for Settlement Class Members to object to the Settlement by filing an objection with the Court and serving counsel for the respective parties. *Id* at 20-21. The Rule 23 Notice provided a deadline of June 17, 2022, for those Class Members to submit requests for exclusion. *Id.* As of August 15, 2022, no Class Members have requested exclusion, and none have objected to the settlement. *Id.*

As of August 15, 2022, a total of 109 Class Members (between those who opted into the litigation early and those who sent back the claim forms), have submitted timely and complete claim forms. *Id.* ¶ 17. Indeed, $649,408.41 of the net settlement fund or 87% of the allocated net settlement fund has been claimed. *See* Ex. 1, Declaration of Angeion.

### H.    Confession of Judgment

Defendants have executed a Confession of Judgment in the amount of $1,500,000.00. Dkt. 225-1, at 65-66. Under the terms of the agreement Class Counsel will maintain possession and control of the Confession of Judgment. Dkt. 225-1 § VI.B. Plaintiffs will only file the Confession

13

of Judgment with the appropriate court if there is a default under the terms of the settlement agreement. *Id.*

If any of the payments as described in the Settlement Agreement are more than five (5) business days overdue, Plaintiff may send a demand letter, requesting immediate payment of the overdue amount, to Defendant's counsel and Registered Agent. Defendants will have thirty (30) business days to pay any overdue payments laid out in the demand letter. *Id.* Upon Defendants' failure to pay these outstanding payments Plaintiff may file the Confession of Judgment in a court with competent jurisdiction, "which judgment shall be for an amount equal to $1,500,000.00 less any amounts that have been paid by Defendants pursuant to the terms of this Agreement." *Id.* The Confession of Judgment can be entered by the court without any motion from Plaintiff, though Plaintiff will file an unopposed motion if required. *Id.* Once Defendants pay the outstanding balance Class Counsel will return the Confession of Judgment to Defendants' Counsel. *Id.*

## I. Defendant's Audit

Defendants have agreed to retain Dawn Farias to act as an independent wage and hour consultant. Dkt. 225-1 § VI.C. Ms. Farias had worked in wage and hour for nearly two decades and her retainment was agreed upon after the Parties conferred on possible candidates. As a consultant, Ms. Farias will conduct an audit of Defendants' wage and hour practices and policies. *Id.* The purpose of the audit is to ensure Defendants' future compliance with both the FLSA and NCWHA. *Id.* Upon Ms. Farias' completion of her audit, she will provide notice to Class Counsel of the same. *Id.*

## IV. FINAL APPROVAL OF THE SETTLEMENT

### A. The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved in All Respects.

As this settlement is both procedurally and substantively fair and adequate, the Court

should grant final approval of the settlement.

Rule 23(e) requires court approval for a class action settlement to ensure it is procedurally and substantively "fair, reasonable and adequate." Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine "the negotiating process leading to the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *see Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (stating that Rule 23(e) "is intended primarily to ensure that a settlement is reached as a result of good-faith bargaining at arm's length, without collusion"); *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) (same); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable. *See Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019); *Berry*, 807 F.3d at 614; *In re Jiffy Lube Secs. Litig.*, 927 F3d at 158; *Commissioners of Pub. Works of City of Charleston v. Costco Wholesale Corp.*, No. 2:21-CV-42-RMG, 2022 WL 214531, at *4 (D.S.C. Jan. 24, 2022).

Courts within the Fourth Circuit favor compromise and settlement of class action suits. *See de la Cruz v. Chopra*, Civil Action No. DKC 18-0337, 2018 U.S. Dist. LEXIS 85213, at *3 (D. Md. May 21, 2018) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)) (stating FLSA settlement agreements should generally be accepted if it is fair and reasonable); *Hall v. Higher One Machs., Inc.*, 2016 U.S. Dist. LEXIS 131009, at *5 (E.D.N.C. Sep. 26, 2016) (providing, in a hybrid FLSA and NCWHA action, that there is a "strong judicial policy in favor of settlements, particularly in the class action context.") (citations omitted);

*Velazquez v. Burch Equip., LLC*, 2016 U.S. Dist. LEXIS 29426, at *3 (E.D.N.C. Mar. 8, 2016) (same); *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89136, at *27 (E.D. Va. June 23, 2009) ("... there is an overriding public interest in favor of settlement, particularly in class action suits."); *Muhammad v. Nat'l City Mortg., Inc.*, 2008 U.S. Dist. LEXIS 103534, at *13 (S.D. W. Va. Dec. 19, 2008) (same). A court may approve a proposed class action settlement if the court determines that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Because the settlement agreement reached in the instant case is both procedurally and substantively fair, the Court should grant Plaintiff's Motion for Final Approval.

### B. The Proposed Settlement is Procedurally Fair.

The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiff's claims. *Hood v. Uber Techs., Inc.*, No. 1:16-CV-998, 2019 WL 93546, at *5 (M.D.N.C. Jan. 3, 2019), aff'd sub nom. *Haskett v. Uber Techs., Inc.*, 780 Fed. Appx. 25 (4th Cir. 2019); *Robinson v. Harrison Transp. Servs., Inc.*, 2016 U.S. Dist. LEXIS 86294, at *6 (E.D.N.C. June 30, 2016); *In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at *12 (E.D.N.C. Aug. 22, 2011). *See Robinson v. Harrison Transp. Servs., Inc.*, 2016 U.S. Dist. LEXIS 86294, at *6 (E.D.N.C. June 30, 2016); *Saman v. LBDP, Inc.*, 2013 U.S. Dist. LEXIS 83414, at *12 (D. Md. June 13, 2013). Where negotiations are conducted at arms-length and in the presence of both counsel and an experienced mediator, there is a presumption that the settlement they achieved meets the requirements of due process." *See Matthews v. Cloud 10 Corp.*, 2015 U.S. Dist. LEXIS 114586, at *4 (W.D.N.C. Aug. 27, 2015); *see also Robinson*, 2016 U.S. Dist. LEXIS 86294, at *6.

Here, the settlement was reached via arms-length negotiations, conducted by experienced counsel, with the assistance of a highly qualified and respectable magistrate judge who had worked with the Parties multiple times, enabling the parties in reaching a resolution. *See* Dkt. 230, ¶¶ 25-

26. The parties participated in one full-day court hosted settlement conference. *Id*. Over the next several weeks, the parties continued to negotiate additional terms of the settlement, which they memorialized in the Settlement Agreement. *See* Dkt. 225-1 (filed March 25, 2022). These arm's-length negotiations involved counsel and a respectable magistrate judge well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. There is no suggestion of any coercion or collusion or any other improper dealing that would lead to a finding that the negotiations were in any way unfair. *Cf. Robinson*, 2016 U.S. Dist. LEXIS 86294, at *5-6 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.") (quotations omitted). As discussed below, the settlement reached is substantively fair to all parties. Thus, the settlement should be found procedurally fair.

### C. <u>The Proposed Settlement is Substantively Fair</u>

The Fourth Circuit evaluates substantive fairness and adequacy considering the factors established by *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). *See DeWitt*, 2013 U.S. Dist. LEXIS 172624, at *9-10.[11] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495

---

[11] *Stone*, 749 F. Supp. at 1423; *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172-73 (4th Cir. 1975) (citing *Grinnell* with approval).

F.2d at 463.[12] Here, the balance of the *Grinnell* factors weighs in favor of approval.

1.    <u>Litigation Through Trial Would be Complex, Costly, and Long (<em>Grinnell</em> Factor 1)</u>

"Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources." *Stone*, 749 F. Supp. at 1423 (citations omitted); *see also Muhammad*, 2008 U.S. Dist. LEXIS 103534, at *14 ("The complexity, expense, and duration of class action litigation are factors that support approval of a settlement."); *Vaughns v. Bd. of Educ.*, 18 F. Supp. 2d 569, 579 (D. Md. 1998).

This litigation has already lasted over four years. *See* Dkt. 1 (filed May 17, 2018). As summarized above, there has been extensive briefing and argument regarding all aspects of this litigation, including Plaintiff's collective and class-wide wage and hour claims as well as the issue of joint employment. *See supra* § II.B. Indeed, nearly every issue in this case has been hotly contested by the parties and has been the subject of briefing and counter-briefing. It is reasonable to expect that the case will only become even more contentious and complex as the parties would have already completed a five (5) day trial, as well as addressing issues that arise immediately before, during, and after trial. In fact, even post-trial, the ultimate result—regardless of outcome—may be the subject of an appeal. In short, while this litigation is currently in the early stages, it

---

[12] Courts in this circuit also consider factors separately grouped under "fairness" (the posture of the case, the extent of discovery conducted, the circumstances surrounding the negotiations, and the experience of counsel) and "adequacy" ((1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strength of the defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expenses of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement). *Jiffy Lube Sec. Litig.*, 927 F.2d at 158-159; *see also In re MicroStrategy*, 148 F. Supp.2d at 665. With respect to fairness and adequacy, the factors correspond to the *Grinnel* factors. Thus, while the discussion is organized to correspond to the *Grinnell* factors, all *Jiffy Lube* factors are encompassed by the discussion as well.

would almost certainly become long, complex, and costly should the parties continue to litigate and proceed to trial. This factor thus weighs in favor of preliminary approval.

2. The Reaction of the Classes Has Been Positive (*Grinnell* Factor 2)

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citation omitted). The lack of class member objections weighs in favor of "the fairness of a settlement." *See In re Microstrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 903 (E.D. Va. 2001); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173, 2008 U.S. Dist. LEXIS 36093, at *19 (S.D.N.Y. May 1, 2008); *see also In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 257 (E.D. Va. 2009); *Deem v. Ames True Temper, Inc.*, 2013 WL 2285972, at *2 (S.D.W. Va. May 23, 2013); *Chen v. XpresSpa at Terminal 4 JFK LLC*, No. 15 CV 1347 (CLP), 2021 WL 4487835, at *5 (E.D.N.Y. Oct. 1, 2021) (finding that only one opt-out form and no objections points towards substantive fairness).

Here, the Notices sent to Class Members included a notice that according to Defendant's records they worked during the relevant time period for Defendants in North Carolina, a description of the claims they would be releasing as part of the settlement, and their right to object to or exclude themselves from the settlement, as well as an explanation of how to do so. *See* Dkt. 239-1, at Ex. A. No Class Members have requested exclusion, and none have objected to the settlement. *Id*; *see* Exhibit 2, November 30, 2021, *Mearidy* Order Granting Final Approval, *Mearidy v. Nthrive Sols., Inc.*, 1:20CV387, Dkt. 45, at 6-7 (M.D.N.C. Nov. 30, 2021) (holding that the absence of numerous objections creates a strong presumption that the settlement is favorable to the class members) citing *Deem*, No. 6:10-cv-01339, 2013 WL 2285972, at *2; *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (collecting cases).

19

3. <u>Litigation and Discovery Have Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)</u>

"[C]ourts have a duty to ensure that the settlement does not 'come too early to be suspicious nor too late to be a waste of resources,' and that it is at 'a desirable point in the litigation to reach an agreement without further delay, expense, and litigation.'" *Equal Rights Ctr. v. Wash. Metro. Area Transit Auth.*, 573 F. Supp. 2d 205, 212-13 (D.D.C. 2008) (quoting *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 105 (D.D.C. 2004)). The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin*, 391 F.3d at 537; *see also Riddle v. City of Anderson*, 2015 U.S. Dist. LEXIS 192079, at *16 (D.S.C. Jan. 26, 2015) (finding that because both sides were fully aware of the factual issues, sufficient discovery had taken place). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (citation and internal quotation marks omitted).

In this matter, the parties have completed discovery, dispositive motion, and decertification briefing and were days away from trial. *See generally* Dkts. 230. During discovery, parties engaged in in extensive written discovery, conducted a deposition, and overall exchanged copious amounts of information. Dkt, 225-1 § I.F.1 Defendants produced staggered payroll records, paystubs, and information about their restaurants during and after discovery had closed. *Id.* Further, the Parties exchanged lengthy analyses of the law and evidence prior to each of the three (3) court host-settlement conferences. Dkt. 230 ¶¶ 25-26. This activity provided Plaintiffs and their counsel with a wealth of information, all of which has allowed them to adequately evaluate the strengths and weaknesses of their case. Counsel was thus in a strong position to negotiate a

20

fair settlement and advise the Named Plaintiff of the advantages and disadvantages of litigating through trial. This factor thus weighs in favor of final approval. *See Hood*, 2019 WL 93546, at *5 (finding that the exchange of a 322,215-line spreadsheet and reviewing summary judgment records in parallel lawsuits over the same issue, without conducting formal discovery, was sufficient to "allow [] the parties to adequately assess the claims and defenses.").

4.     Plaintiffs Would Face Real Risks if the Case Proceeded
(*Grinnell* Factors 4 and 5)

"In complex, multi-year class actions, the risks inherent in the litigation are immense." *In re MI Windows & Doors Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 95889, at *8 (D.S.C. July 23, 2015) (citations omitted); *Brown v. Delhaize Am.*, LLC, 2015 U.S. Dist. LEXIS 184265, at *5 (M.D.N.C. July 20, 2015) (same); *Riddle*, 2015 U.S. Dist. at *18 (same). Indeed, "settlement must be evaluated taking into account the uncertainty and risks involved in litigation and in light of the strength of the claims and possible defenses." *In re MI Windows*, 2015 U.S. Dist. LEXIS 184471, at *38 (citations omitted). Notably, when considering the expense and delay inherent in prolonged litigation and possible appeals, settlement may be "an extremely viable alternative." *Riddle*, 2015 U.S. Dist. 192079, at *18. A court should consider "the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. *In re MI Windows*, 2015 U.S. Dist. LEXIS 184471, at *38 (citations omitted).

Here, a trial on the merits would involve significant risks for Plaintiffs. Plaintiff would have to overcome Defendants' opposition to joint employment, as well as attempts to decertify the FLSA collective and Rule 23 certification. Although Plaintiff is confident on the ability to prevail on liability, there are risks with respect to the magnitude of damages, as the amount of unpaid time and its proper calculation is in dispute, particularly due to the lack of documented evidence.

21

Plaintiff is also realistic and recognize the inherent risks associated with trial. Even if Plaintiff prevails, this victory could only be obtained after trial and appellate litigation, both of which are always full of uncertainty and factors beyond the Parties' control. These factors thus weigh very strongly in favor of preliminary approval.

5.     <u>Maintaining the Class Through Trial Would Not Be Simple</u>
          (<u><i>Grinnell</i> Factor 6)</u>

Plaintiffs are confident in their ability to maintain certification of the FLSA and Rule 23 classes. However, Plaintiffs and their counsel recognize that despite substantial briefing and argument, there will still be uncertainty, especially once more extensive discovery begins into potential individual variation, as provided above. *See Brown,* 2015 U.S. Dist. LEXIS 184265, at *5. This factor thus weighs in favor of approval.

6.     <u>Defendant's Ability to Withstand a Greater Judgment is Not</u>
          <u>Determinative (<i>Grinnell</i> Factor 7)</u>

There is no evidence here as to whether or not the Defendant could withstand a greater judgment, particularly where the COVID Pandemic has affected the restaurant industry in which Defendants operate. However, even if Defendant could withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9); *Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, Dkt. 121 (E.D.N.C. September 26, 2017). Thus, given that all of the other *Grinnell* Factors weigh in favor of the proposed settlement, this factor should not be an obstacle to final approval.

7.     <u>The Settlement Fund is Substantial, Even in Light of the Best</u>
          <u>Possible Recovery and the Attendant Risks of Litigation</u>
          (<u><i>Grinnell</i> Factors 8 and 9)</u>

Approval of a class action settlement as reasonable under the relevant circumstances is

22

within the sound discretion of the district court. *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). "[T]here is a strong initial presumption that the compromise is fair and reasonable." *Stone*, 139 F.R.D. at 339. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2.

Based on Plaintiffs' estimate and calculations of the probable amount of overtime that would be due to members of the FLSA and Rule 23 Settlement Class if Plaintiff prevailed on her claims, $1,500,000 is a reasonable settlement, particularly when factoring in the uncertainties of trial or whether Defendants could withstand judgment. For example, Defendants have asserted throughout this litigation that its servers have been paid hourly wages for all of their hours worked. If Defendants were to prevail, establishing Plaintiffs have been compensated at least some hourly wages, Plaintiffs' estimated damages would be reduced to an amount that is substantially less than the current settlement amount. Given this risk to Named, Opt-in/Current Participants and R.23 class members, this settlement is beneficial in that it provides a guaranteed monetary recovery that is potentially more generous than if the parties litigated this issue, and the jury ruled in favor of Defendants on one or more aspects of the claims.

Thus, the settlement amount here far exceeds the mere fraction of possible damages that has been approved in other cases in this Circuit. Because the settlement, on its face, is "'fair,

23

adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant final approval.

## V.    APPROVAL OF THE FLSA SETTLEMENT

Plaintiff also requests that the Court approve the settlement of their FLSA claims. They have brought their FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), abrogated on other grounds by *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 U.S. Dist. LEXIS 18913, at *15 (S.D.N.Y. 2010). Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See de la Cruz v. Chopra*, Civil Action No. DKC 18-0337, 2018 U.S. Dist. LEXIS 85213, at *3 (D. Md. May 21, 2018) (citing *Lynn's Food Stores, Inc.*, 679 F.2d 1350, 1355 (stating FLSA settlement agreements should generally be accepted if it is fair and reasonable); *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *16; *Ford v. Cardinal Innovations Healthcare Sols.*, No. 1:20-CV-736, 2022 WL 558376, at *2 (M.D.N.C. Jan. 21, 2022) ("There is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable.") (citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, No.

24

1:08CV1310(AJT/JFA), 2009 WL 3094955, at \*10 (E.D. Va. Sept. 28, 2009). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *McMahon*, 2010 U.S. Dist. LEXIS 18913, at \*16. Because the Settlement Agreement resolves a bona fide dispute and was reached after vigorous arm's-length settlement negotiations, it should be approved. Indeed, the Settlement satisfies the higher standard applicable to Rule 23 settlements, as discussed in section IV, *supra*, which should be conclusive in finding § 216(b) standards are satisfied

## VI.  **<u>CONCLUSION</u>**

For the reasons set forth above, Plaintiff respectfully requests that the Court grant final approval of the class settlement and the FLSA settlement.

Respectfully submitted this August 15, 2022.

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No.: 36812)
Charlotte C. Smith (NCSB No.: 53616)
**THE LAW OFFICES OF GILDA A.**
**HERNANDEZ, PLLC**
1020 Southhill Dr., Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2022, I electronically filed the foregoing true and accurate copy of **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE COLLECIVE AND CLASS ACTION SETTLEMENT** with the Court using the CM/ECF system, and have thereby electronically served the document to the following:

Henry W. Jones, Jr.
Lori Peoples Jones
**JORDAN PRICE WALL GRAY JONES & CARLTON, PLLC**
P. O. Box 10669
1951 Clark Ave.
Raleigh, NC 27604
919-828-2501
919-834-8447 (fax)
hjones@jordanprice.com
ljones@jordanprice.com

James Larry Stine
**WIMBERLY, LAWSON, STECKEL, SCHNEIDER & STINE, P.C.**
3400 Peachtree Rd., NE
Suite 400, Lenox Towers
Atlanta, GA 30326
404-365-0900
404-261-3707 (fax)
jls@wimlaw.com

Albert J. Bolet (GA Bar No. 065785)
Hipolito M. Goico (GA Bar No. 299195)
**GOICO & BOLET, P.C.**
2021 North Druid Hills Road, N.E.
Suite 200
Brookhaven, GA 30329
404-320-3456
404-320-3026 (fax)
abolet@goicobolet.com
hbolet@goicobolet.com
*Attorneys for Defendants*

/s/ Gilda Adriana Hernandez
Gilda A. Hernandez (NCSB No. 36812)
Charlotte C. Smith (NCSB No. 53616)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Dr. Ste. 130

26

Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

*Attorneys for Plaintiff*