IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| LAURA PONTONES, on behalf of herself and all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>SAN JOSE RESTAURANT, INCORPORATED, et. al;<br><br>*Defendants.* | Case No. 5:18-cv-219-D |

## ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE COLLECTIVE AND CLASS ACTION SETTLEMENT, ORDER OF DISMISSAL WITH PREJUDICE

This matter is before the Court on the Unopposed Motion for Final Approval of the Collective and Class Action Settlement, (Dkt. 238). Also, before the Court are the Unopposed Motion for Attorneys' Fees and Reimbursement of Expenses (Dkt. 232), and the Unopposed Motion for Preliminary Approval of Service Award, (Dkt. 233).

Plaintiff Laura Pontones worked as a server for Defendants at their Raleigh Brier Creek North Carolina location and Raleigh Triangle Town Center Mall location. Plaintiff asserts claims on behalf of herself and all others similarly situated, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.6, 95- 25.22(a), (a1), and (d). Plaintiff claims that Defendants failed to pay servers all wages owed, earned and accrued, promised, straight-time, including minimum wage and overtime at a rate of one-and-one-half their regular rate of pay for worked performed in excess of forty (40) hours per week, unlawful deductions based on a percentage of daily total food and beverage sales for each shift and workweek, and violating statutory record-keeping provisions.

In addition to extensive and meaningful discovery, this case has already involved extensive litigation over a variety of motions. After the completion of full-class wide merits discovery and dispositive motions, and while parties were preparing for trial, the parties engaged in substantial negotiations. As Parties neared the commencement of trial, parties participated in a court-hosted settlement conference.

On February 28, 2022, the Parties attended the court-hosted settlement conference with United States Magistrate Judge James E. Gates. This was the third court-hosted settlement conference that the Parties had engaged in during the course of litigation. At the settlement conference, the Parties reached an agreement in principle. After furthering negotiated on various details, the Parties reached the Settlement Agreement described below on March 25, 2022. Dkt. 225-1.

On March 25, 2022, Plaintiff filed her Unopposed Motion for Preliminary Approval of Settlement consistent with the Parties' Settlement Agreement of Class and Collective Action and Release of Claims, to (1) provisionally grant preliminary approval of the proposed class and collective action settlement (the Parties' "Settlement Agreement"); (2) approve the appointment of Angeion Group LLC, as settlement administrator; and (3) approve the proposed notice of the settlement and claim form.

On March 29, 2022, the Court preliminarily approved, subject to further consideration thereof at the Final Approval Hearing, (1) the Parties' Settlement Agreement; (2) the proposed Notices for mailing, consistent with the procedures outlined in the Parties' Settlement Agreement; and (3) the appointment of Angeion as the Settlement Administrator. *See* Dkt. 231.

Also, consistent with the Parties' Settlement Agreement, the Court set the deadline for members of the certified class to opt out of the settlement or submit an objection. Dkt. 231.

Pursuant to Rule 23(e) of the Fed. R. Civ. P., the Court scheduled a Fairness Hearing originally scheduled for July 15, 2022, at 1:00 p.m., to determine whether the proposed Settlement Agreement is fair. *Id.* Due to an extension of thirty (30) days to accommodate forty-seven (47) individuals who did not receive the notice when originally mailed, the Court rescheduled the Fairness Hearing for August 19, 2022.

Finally, Angeion was appointed to serve as the neutral, third-party Settlement Administrator in this case, *id.*, and consistent with the Parties' Settlement Agreement, the Court ordered and authorized Angeion to perform the administrative duties as outlined in its March 29, 2022, Order.

Having considered the Plaintiff's Unopposed Motion for Final Approval, their Unopposed Motion for Attorneys' Fees and Expenses, their Unopposed Motion for Service Awards, and the supporting declarations, the oral argument presented at the fairness hearing, and the complete record in this action, for the reasons set forth therein and stated on the record at the August 19, 2022, fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1. Plaintiff's Unopposed Motion for Final Approval (Dkt. 238) is GRANTED and finally approves the settlement as set forth in the Parties' Stipulation and Settlement Agreement, (Dkt. 225-1) (the "Settlement Agreement).

### Final Settlement Approval

2. "It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992); *see also Reynolds v. Fid. Investments Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 91874, at *3 (M.D.N.C. Jan 8, 2020); *In re Paine Webber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial

3

policy in favor of settlements, particularly in the action context."); *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (quoting same); William B. Rubenstein, 4 Newberg on Class Actions § 13.44, n1 (5th ed. Dec. 2019) (collecting cases).

3. The Court may approve a class settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "In applying this standard, the Fourth Circuit has bifurcated the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-0400-BR, 2009 WL 2208131, at 23 (E.D.N.C. July 22, 2009) (citing e.g., *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-159 (4th Cir. 1991)). The Court acts as a fiduciary of the class members. *Sharp Farms v. Speaks*, 917 F.3d 276, 293-94 (4th Cir. 2019).

## Procedural Fairness

4. The proposed settlement is procedurally fair and was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiff's claims. *See West v. Const'l Inc.*, No., 3:16-cv-00502-FDW-DSC, 2018 WL 1146642, at *4 (W.D.N.C. Feb. 5, 2018) (unpublished) ("The [s]ettlement was not hastily arrived at. Indeed, the [s]ettlement followed lengthy discussions and considerable dialogue between the [p]arties, as well as arms-length negotiations involving extensive argument and counterargument."); *Matthews v. Cloud 10 Corp.*, No. 4:13-cv-646-FDW-DSC, 2015 U.S. Dist. LEXIS 114586, at *8 (W.D.N.C. Aug. 27, 2015) (unpublished); *Saman v. LBDP, Inc.*, No. DKC 12-1083, 2013 WL 294047, at *4 (D. Md. June 13, 2013) (unpublished); *In re Dollar Gen. Stores FLSA Litig.*, 2011 U.S. Dist. LEXIS 98162, at *12 (E.D.N.C. Aug. 22, 2011); *see also Toure v. Amerigroup Corp.*, No. 10 Civ.

4

5391 (RLM), 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (unpublished) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation... [and] enlisted the services of an experienced employment [law] mediator.

5. Class Counsel conducted thorough investigations and evaluated the claims and defenses, engaged in substantial informal discovery, and reached a settlement after a mediation between the Parties. *See generally* Dkt. 225-1.

6. On February 28, 2022, the Parties participated in a day long mediation session with a highly regarded, skillful, and experienced United States Magistrate Judge. Dkt. 225-1, at 12. Over the next several days, the Parties continued to negotiate additional terms of the settlement, which they memorialized in the Settlement Agreement. *See id.* These arm's-length negotiations involved counsel and a magistrate judge well-versed in wage and hour law, raising a presumption that the Settlement meets the requirements of due process. Moreover, there is no evidence whatsoever of any coercion or collusion or any other improper dealing that would lead to a finding that the negotiations were in any way unfair. *See West*, WL 1146642, at *5 ("[T]here is no evidence in the record before the court, nor has there been any suggestion by anyone, that there has been any fraud or collusion among the parties or their attorneys at the terms of this Settlement.").

### Fair, Adequate, and Reasonable

7. The settlement is substantively fair and meets all factors that illuminate this analysis. *See Sharm Farms*, 917 F.3d at 299; *Berry*, 807 F3d at 614; *In re Jiffy Lube Sec., Litig.*, 927 F.2d at 158-59; *see also Detroit v. Grinnell Corp.*, 495 F.2d 448, 452 (2d. Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

8. The factors this Court considers are: (1) the posture of the case at the time the

5

settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in FLSA class action litigation. *See Berry*, 807 F3d at 614; *Scardelletti v. Debarr*, 43 F. App'x 525, 528 (4th Cir. 2002) (per curiam) (unpublished); *In re Jiffy Lube Secs. Litig.*, 927 F.2d at 158-59.

9. Litigation through trial would be complex, expensive, and uncertain. Thus, the posture of the case at the time the settlement was proposed weighs in favor of final approval.

10. The class members' reaction to the settlement was positive. The form of the Court-approved notice sent to the Rule 23 Settlement Class also informed such individuals of their right to object to or exclude themselves from the Settlement and explained how to do so. No Settlement Class Member objected to the proposed settlement, and no settlement class member requested exclusion. Additionally, over 109 of Settlement Class Members returned a claim form, and over 85% of the net settlement fund was claimed. *See* Dkt. 239-1. This favorable response demonstrates the class approves the settlement, which further supports final approval. *See e.g., West*, 2018 WL 1146642, R *6 ("No objections have been filed in this case. It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." (internal quotations omitted); *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 WL 2285972, at *2 (S.D.W. Va. May 23, 2013) (unpublished); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (collecting cases).

11. The parties have completed voluminous discovery, which supports settlement. The proper question is whether "Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." West, 2018 WL 1146642, at *4; *see Riddle v. City of Anderson*, No. 8:12-cv-03480-TMC, 2015 WL 12830369,

at *6 (D.S.C. Jan. 26, 2015) (unpublished). They did. The parties engaged in extensive written discovery. Plaintiff conducted one (1) 30(b)(6) depositions and shared an extensive amount of information during the duration of discovery. Defendants produced some payroll records, paystubs, and restaurant documents either during and even after discovery closed. Class counsel have also had the benefit of informal discovery from the opt-in Plaintiff and Rule 23 class members. Moreover, briefing on Plaintiff's motion for conditional and class certification provided Plaintiff and her counsel with a greater wealth of information, all of which allowed them to evaluate the strengths and weaknesses of their case. Thus, the second factor weighs in favor of final approval.

12. "In complex, multi-year class actions, the risks inherent in the litigation are immense." *In re MI Windows & Doors Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 95889, at *8 (D.S.C. July 23, 2015) (citations omitted). Indeed, "settlement must be evaluated taking into account the uncertainty and risks involved in litigation and in light of the strength of the claims and possible defenses." *Id.*, 2015 WL 12850547, at *12 (D.S.C. July 22, 2015) (unpublished) (quotation omitted). Plaintiffs have to overcome probable attempts to decertify the FLSA collective action and certification of the Rule 23 Classes, as well as summary judgment. As other cases predicated on similar theories of liability suggest, this threat is real. Moreover, Plaintiff would still have to overcome Defendants' arguments including whether Defendants were "joint employers," whether certain plaintiffs were time-barred from recovering damages, whether Defendants owed unpaid wages, whether amounts withheld from plaintiff's wages were proper deductions under the FLSA.

13. There is no evidence whether Defendants could withstand a greater judgment. However, even if Defendants could withstand a greater judgment, a "defendant['s] ability to

7

withstand a greater judgment standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005); *see In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000). Thus, given that all of the factors weigh in favor of the proposed settlement, this factor is not an obstacle to final approval.

14. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is adequate and reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (quotation omitted). This Court considers (1) the relative strength of the plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. *See Sharp Farms*, 917 F.3d at 299; *In re Jiffy Lube Secs. Litig.*, 927 F.2d at 159; *West*, 2018 WL 1146642, at *4. The first two factors are the most important. *See Sharp Farms*, 917 F.3d at 299. As discussed, the Settlement Agreement meets these factors.

## APPROVAL OF THE FLSA SETTLEMENT

15. The Court hereby approves the FLSA collective action settlement.

16. Settling parties routinely seek judicial approval of a proposed settlement to ensure fairness and to give effect to the FLSA releases. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *McMahon v. Olivier Cheng Catering & Events LLC*, 08 Civ. 8713 (PGG), U.S. Dist. LEXIS 18913, at *15. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of a settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a

8

reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *McMahon,* 2010 U.S. Dist. LEXIS 18913, at *15.

17. Here, the settlement was the result of a formal mediation at a court host-settlement conference, involving arm's length settlement negotiations. *See* Dkt. 225-1 at 4-5. . During the entire process, Plaintiff and Defendants were represented by counsel experienced in wage and hour law. Accordingly, the Settlement Agreement resolves an actual dispute under the circumstances supporting a finding that is fair and reasonable.

18. The Court hereby approves the Rule 23 class action settlement.

19. Courts generally approve Rule 23 class action settlements when they are fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e). After due consideration and inquiry into the circumstances surrounding the proposed settlement of Plaintiff's collective FLSA claims and Rule 23 class claims under the NCWHA against Defendants, and review of the Settlement Agreement, the Court finds and concludes that the proposed settlement in this case meets the standard for approval as it reflects a reasonable compromise of a bona fide dispute. The Court finds and concludes that the proposed settlement is just and reasonable and in the best interest of the Parties. The Court further finds the settlement to have been reached in good faith. The Court further finds that the Parties' Settlement Agreement is fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23 (e). The Court finds that the approved class representative, Laura Pontones and Class Counsel have adequately represented the class and that the settlement proposal was negotiated at arm's length. The Court further finds that the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of the proposed award of attorneys' fees, including timing of payment; and (iv) the Parties' Settlement Agreement. The

9

Court also finds that the settlement proposal treats class members equitably relative to each other. See Fed. R. Civ. P. 23(e)(2)(A)-(D).

## **DISSEMINATION OF NOTICE**

20. Pursuant to the Court's order preliminarily approving the Parties' settlement, (Dkt. Dkt. 231) and its order dated March 29, 2022, all Rule 23 Settlement Members, were sent court-approved notices by email and first-class mail at his or her last known address.

21. The Notices fairly and adequately advised Settlement Class Members of the terms of the settlement, as well as the right of Rule 23 Settlement Class Members to opt-out of or to object to the settlement, and to appear at the fairness hearing conducted on August 19, 2022, at 3 p.m. Settlement Class Members were provided with the best notice practicable under the circumstances.

22. The Notices and their distribution met with all constitutional requirements, including due process.

## **AWARD OF FEES AND COSTS TO CLASS COUNSEL AND SERVICE AWARDS TO PLAINTIFF AND EARLY OPT-IN**

23. The court hereby grants Plaintiff's Motion for Attorneys' Fees and awards Class Counsel $500,000, which is one-third of the Gross Settlement Amount.

24. Class Counsel's request for one-third of the Gross Settlement Amount is reasonable. *See Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978) (articulating factors to consider in analyzing whether a request for attorneys' fees in class action litigation is reasonable); *In re Outer Banks Power Outage Litig.*, No. 4:17-CV-141- D, 2018 U.S. Dist. LEXIS 161714, at *6-10 (E.D.N.C. Sept. 21, 2018) (unpublished) (collecting cases); *Hall,* 2016 WL 5416582, at *7; *Ferris v. Sprint Comme'nc Co.*, No. 5:11- cv-667-H, 2012 WL 12915716, at *3-4 (E.D.N.C. Dec. 13, 2012); *Phillips v. Triad Guar., Inc.*, 2016 U.S. Dist. LEXIS 60950, at *5

10

(M.D.N.C. May 9, 2016) (unpublished); *In re The Mills Corp., Secs. Litig.*, 265 F.R.D. 246, 261, 264 (E.D. Va. 2009) (same); *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 758 (S.D. W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases."); *see also Hess v. Sprint Communs. Co. L.P.*, 2012 U.S. Dist. LEXIS 168963, at *6 (N.D.W. Va. Nov. 26, 2012) (unpublished).

25. In applying the common fund method, the Supreme Court and Circuit Courts across the country have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the defendant. *See Boeing Co. v. Van Gernert, et al.*, 444 U.S. 472, 481-82 (1980); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007); *Waters v. International Precious Metals Corp.*, 190 F.3d. 1291, 1296-97 (11th Cir. 1999).

26. No Class Member objected to Class Counsel's request for one-third of the fund, which also provides support for Class Counsel's fee request. *See e.g., In re Outer Banks Power Outage Litig.*, 2018 U.S. Dist. LEXIS 161714, at *9.

27. Additionally, Class Counsel's request for one-third of the proposed settlement Fund -- $ 500,000 -- is *less* than their calculated "lodestar." Lodestar multipliers of less than 2, as is the have been found to be "modest" in the Fourth Circuit, further supporting Class Counsel's requested award. *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, at *1–3 (M.D.N.C. Jan. 10, 2007) (approving a "modest" multiplier of 1.6); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, No. 1:16-CV-01088, 2018 WL 6718948, at *5 (M.D.N.C. Dec. 18, 2018) (finding a multiplier of 1.8 "well within the normal range of lodestar multipliers); *Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *4–5 (M.D.N.C. Sept. 29, 2016) (approving a one-third fee of 3.69 times the lodestar). The current request for fees less than the lodestar is certainly

11

reasonable. *See also Binotti v. Duke Univ.*, No. 1:20-CV-470, 2021 WL 5366877, at *4 (M.D.N.C. Aug. 30, 2021)

28. The Court also awards Class Counsel reimbursement of $14,573.33 in litigation costs or expenses in addition to fees.

29. The attorneys' fees and the amount in reimbursement of expenses shall be paid from the Gross Settlement Fund in accordance with the Settlement Agreement.

30. The Court finds reasonable an award for Named Plaintiff Laura Pontones in the amount of $50,000.00 for her service award as Named Plaintiff/Class Representative for the asserted FLSA/Rule 23 collective/class wage and hour claims; opt-in plaintiffs Angel Berber and Vicente Urbina in the amount of $30,000 respectively, for their agreement to be trial witnesses and the contribution made to the case; opt-in plaintiffs Jackie Bullard, Tianya Locklear, Imran Shafiq Khan in the amount of $20,000 respectively, for their agreement to be trial witnesses and the contribution made to the case; opt-in plaintiffs Carolina San Augustin, Oscar Torres, Olivia Pineda, Sandy Johnson, Kathi Johnson in the amount of $1,000 respectively, for each of their participation in litigation, including providing declarations for motions for summary judgment, sanctions, and to strike, as well as providing information to counsel during litigation. The service awards are in recognition of these Plaintiffs' assistance to Class Counsel and reflect their contribution to achieving the Settlement on behalf of the Rule 23 Settlement Class and all Participating FLSA Collective Members. These amounts shall be paid from the Gross Maximum Settlement Amount in accordance with the terms of the Settlement Agreement.

31. Consistent with the terms of the Settlement Agreement, the "Effective Date" of the settlement shall be as defined in the Settlement Agreement. This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

## SETTLEMENT ADMINISTRATOR

32. The Court confirms its prior Order appointing Angeion as the Settlement Administrator in this case, Dkt. 231, and the duties Angeion was previously ordered to perform therein in conjunction with any order granting final approval to the Settlement in this action.

33. Consistent with the Court's prior Order appointing Angeion as Settlement Administrator, Angeion shall determine the total amount of its services and expenses in connection with the administration of the settlement in this action prior to the distribution of any amounts form the Qualified Settlement Fund it established in connection with this Settlement.

34. Within five (5) days after the Effective Date as defined in the Settlement Agreement, the Settlement Administrator will establish and maintain a qualifying designated settlement fund pursuant to Section 468(B) of the Internal Revenue Code ("Qualified Settlement Fund" or "QSF") in accordance with the terms of the Settlement Agreement.

35. Within five (5) calendar days after the Effective Date of the Settlement Agreement, Defendant shall deposit into the Qualified Settlement Amount ($200,000.00), in a Qualified Settlement Fund account to be established by Angeion. This amount will constitute partial payment for Plaintiff's Attorneys' Fees, Litigation Expenses, and/or Settlement Expense.

36. Following Defendants' initial payment, the Settlement Administrator will issue the first check of $200,000 to Class Counsel, as partial payment for Plaintiff's Attorneys' fees and Litigation Expenses. Plaintiff's Attorneys' Fees and Plaintiff's Litigation Expenses will be paid by the Settlement Administrator from the Settlement Fund within five (5) calendar days of when Defendants' Initial Payment of the portion of the Gross Settlement Amount. The Settlement Administrator will continue to make payments towards the remaining balances for Plaintiff's Attorney Fees and Litigation Expenses on either a semi-annual or annual basis, until both have

13

been paid in its entirety.

37. Following Defendants' initial partial payment, the remaining amount of the Gross Settlement Fund will be ($1,300,000.00). Defendant shall make monthly payments of at least ($36,142.86) beginning on the first day of each month following the Effective Date, or within thirty (30) calendar days following Defendants' initial payment of ($200,000.00), whichever is later. Defendants will continue with this payment structure until the entire balance of ($1,300,000.00) is paid in full. However, should any money revert back to Defendants, the Settlement Administrator will determine such reversion, not exceeding $300,000.00 and will inform Defendants when the Settlement Fund is fully paid, and that Defendants may stop payment.

38. Following Defendants' monthly payments into the Gross Settlement Fund, the Settlement Administrator will pay the Named and Select Opt-In Plaintiffs' Service Awards as order by the Court, on either a semi-annual or annual basis until the Service Awards have been paid in their entirety. At an appropriate time, following the issuance of such Named and Select Opt-in Plaintiffs' Service Awards, the Settlement Administrator will issue to each recipient an I.R.S. Form 1099 that accounts for the payment of the Named and Select Opt-In Plaintiffs' Service Awards.

39. Following Defendants' initial payment, the Settlement Administrator will pay the Authorized Claimants on either a semi-annual or annual basis until the completion of Authorized Claimants Settlement Payments have been completed in their entirety. Any member of the Settlement Class or Collective, who is not a Named Plaintiff or an Opt-in Plaintiff, and who did not timely return a Claim Form is not an Authorized Claimant and is not entitled to any Settlement Payments.

40. Upon the Effective Date, this litigation shall be dismissed with prejudice, and all

14

Rule 23 Class Members who did not timely exclude themselves from the settlement, Opt-in Plaintiff, and the Named Plaintiffs shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the settlement. Specifically, as stated in the Settlement Agreement, this means:

> - As of the Effective Date, Named Plaintiff, Select Opt-In Plaintiffs, and Authorized Claimants and Members of a Settlement Class ("Releasors") hereby forever completely settle, compromise, release, and discharge Defendants from any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Releasor has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to hours worked or the payment of wages arising on or before the date of the Court's final approval of the settlement, except to the extent that any such claim may not be waived as a matter of law.

Dkt. 225-1, § VI.A.I.

41. As further explained by the Settlement Agreement, the claims released by both Named Plaintiff and the Settlement Class Members,

> specifically include without limitation (i) any and all claims asserted in the Litigation; (ii) any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, tips received, deductions to wages made, retaliation for complaining about wages or for asserting wage-related claims and/or any other claims of any kind, or any other wage-related or recordkeeping-related claims, damages or relief of any kind, including but not limited to the federal FLSA, 29 U.S.C. § 201, *et seq.*, any and all claims under North Carolina state law, including but not limited to the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, et seq.; or any other statutes and/or regulations regulating hours of work, wages, the payment of wages, wage-related or recordkeeping-related claims,

15

the payment of minimum wages, and/or the payment of overtime compensation; (iii) any and all claims under state and federal law for earned wages, overtime, and/or missed or interrupted meal breaks, including such claims for breach of express contract or labor agreement, implied contract, money had and received in *assumpsit, quantum meruit*/unjust enrichment, fraud, negligent misrepresentation, equitable estoppel, promissory estoppel, conversion, and failure to keep accurate records. The settlements, compromises, releases, and discharges described in this paragraph shall extend to any such claims that arose at any time up to the date on which the Court grants final approval of the settlement. The settlements, compromises, releases, and discharges described in this paragraph have no application to any claim by any Releasor, except for Named and Opt-in Plaintiff (who have received service awards and therefore do release any and all claims whatsoever), for discrimination in violation of state or federal law, or any claim of any type arising on or after the date on which the Court grants preliminary approval of this Agreement. In addition, the Named Plaintiff and Select Opt-in Plaintiffs will release all known and unknown claims of any type against the Defendants, except to the extent that any such claim may not be waived as a matter of law. This Release has no application to any claim of any type arising on or after the Effective Date of this Agreement.

Dkt. 225-1, § VI.A.I.

42. Pursuant to the Settlement Agreement, the Named Plaintiff, Opt-in Plaintiff, and all Rule 23 Settlement Class Members who did not timely request exclusion are further barred from accepting, recovering, or receiving any back pay, liquidated damages, or other damages, or any other form of relief based on any claims asserted or settled in this action which may arise out of, or in connection with any other individual, class, collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against Defendant, and are enjoined from pursuing any claim released as part of this settlement. (Dkt. 225-1, § V(A)(1)), with the exception that for those Rule 23 Settlement Class Members who did not opt into the FLSA action, their FLSA claims are preserved. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The Parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

16

SO ORDERED. This 19 day of August, 2022.

                                                  JAMES C. DEVER III
                                                  United States District Judge

17

Case 5:18-cv-00219-D  Document 243  Filed 08/19/22  Page 17 of 17